1

GIBSON, DUNN & CRUTCHER LLP
TIMOTHY K. ROAKE, SBN 99539

2

troake@gibsondunn.com
SALLY J. BERENS, SBN 218880

3

sberens@gibsondunn.com
1881 Page Mill Road

4

Palo Alto, California  94304
Telephone: (650) 849-5300

5

Facsimile: (650) 849-5333

6

ETHAN D. DETTMER, SBN 196046

7

edettmer@gibsondunn.com
MATTHEW S. KAHN, SBN 261679
mkahn@gibsondunn.com

8

555 Mission Street, Suite 3000
San Francisco, California  94105

9

Telephone:  (415) 393-8200
Facsimile:  (415) 393-8306

10

11

Attorneys for Defendants
CADENCE DESIGN SYSTEMS, INC., MICHAEL

12

J. FISTER, KEVIN S. PALATNIK, WILLIAM
PORTER and KEVIN BUSHBY

13

14

UNITED STATES DISTRICT COURT

15

FOR THE NORTHERN DISTRICT OF CALIFORNIA

16

SAN FRANCISCO DIVISION

17

18

In re CADENCE DESIGN SYSTEMS, INC.
SECURITIES LITIGATION

CASE NO. C-08-4966

19

CLASS ACTION

20

21

This Document Relates To:

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF THEIR MOTION TO
DISMISS FIRST AMENDED COMPLAINT

22

ALL ACTIONS.

Date:    February 5, 2010
Time:    10:00 a.m.

23

Place:   450 Golden Gate Avenue
         San Francisco, California

24

Judge:   The Honorable Samuel Conti

25

26

27

28

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF CONTENTS**

2

Page

3

4

I.      INTRODUCTION ................................................................................................ 1

5

II.     ARGUMENT ....................................................................................................... 2

6

A.    Plaintiffs' "New" Scienter Allegations Omit Facts Necessary To Plead
              Defendants' Knowledge Of Relevant Facts And Are Based On
              Unreliable CW Statements. .................................................................... 2

7

8

1.    No Facts Are Plead That CW12 Has Personal Knowledge Of
                     His/Her Alleged Claims, And Those "Statements" Should Be
                     Disregarded. .................................................................................. 3

9

10

2.    CW14 Is Not Sufficiently Identified And Is Thus Unreliable. .......... 5

11

3.    Plaintiffs Have Failed to Allege Facts Sufficient To Establish
                     That CW15 Has Personal Knowledge Of His/Her Claimed
                     Statements. ..................................................................................... 6

12

13

4.    "New" CW Statements Only Restate Generic Scienter
                     Allegations This Court Previously Rejected. ................................... 6

14

15

B.    Unable To Bridge The Gap Between Customer Intentions And
              Knowledge Thereof By Cadence Senior Management, Plaintiffs Try To
              Distract The Court With Irrelevancies. .................................................. 7

16

17

1.    Plaintiffs' Allegations That Defendants "Surreptitiously"
                     Qualified The Internal Control Representation For Its Q1 2008
                     10-Q Filing Are Unfounded. ........................................................... 7

18

19

2.    Allegations Of "Deliberate Violation Of Regulation S-K"
                     Misstate The Law. .......................................................................... 8

20

21

3.    Plaintiffs' Allegations Regarding The Amendment Of
                     Defendants' Indemnification Agreements Are Yet Another Red
                     Herring. ......................................................................................... 8

22

4.    CW14's Whistleblowing Allegations Have Little Force. ................. 8

23

24

5.    Plaintiffs Mischaracterize Facts And Misinterpret Controlling
                     Law Regarding Individual Defendants' Supposed
                     "Admissions." ................................................................................ 9

25

C.    Plaintiffs' New Allegations Are Like Their Old Allegations:  They Do
              Not Create An Inference Of Scienter. ................................................... 10

26

27

1.    Allegations Regarding The Alleged Terminations Do Not Plead
                     Scienter........................................................................................ 10

28

Gibson, Dunn &
Crutcher LLP

i

1

**TABLE OF CONTENTS**   *(continued)*

2

Page

3

2.    Generic Allegations Regarding Access To Sales Data Do Not
            Plead Scienter.................................................................................... 11

4

5

3.    Allegations of GAAP Violations Are Still Insufficient To Plead
            Scienter............................................................................................. 12

6

4.    Motive Allegations Are Still Insufficient To Plead Scienter. ......................... 12

7

D.    The *South Ferry* Exceptions Do Not Apply, And Scienter Cannot Be
        Established Through The Core Operations Inference. ................................. 13

8

9

E.    Plaintiffs' Group-Based Allegations Must Be Rejected, Because The
        Group-Published Doctrine Did Not Survive The PLSRA. ......................... 14

10

F.    A Holistic Review Mandates Dismissal................................................... 15

11

III.    CONCLUSION ............................................................................................. 15

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT            CASE NO. C-08-4966

1

**TABLE OF AUTHORITIES**

Page(s)

2

**CASES**

3

*Ashcroft v. Iqbal,*
   566 U.S. __, 129 S. Ct. 1937 (2009) ................................................................ 1

4

*In re Adaptive Broadband Sec. Litig.,*
   No. C 01-1092 SC, 2002 U.S. Dist. LEXIS 5887 (N.D. Cal. Apr. 2, 2002) ............. 3, 12, 14

5

*In re Citigroup, Inc. Sec. Litig.,*
   330 F. Supp. 2d 367 (S.D.N.Y. 2004) ............................................................. 15

6

*In re Daou Sys. Sec. Litig.,*
   411 F.3d 1006 (9th Cir. 2005) ............................................................... 3, 4, 5

7

8

*In re Dot Hill Sys. Corp. Sec. Litig.,*
   No. 06-CV-228 JLS (WMc), 2009 U.S. Dist. LEXIS 22022 (S.D. Cal. Mar. 18,
   2009) ........................................................................................... 14

9

10

*In re Downey Sec. Litig.,*
   No. CV 08-3261-JFW (RZx), 2009 U.S. Dist. LEXIS 83443 (C.D. Cal. Aug.
   21, 2009) ..................................................................................... 9, 15

11

12

*In re Gilead Scis. Sec. Litig.,*
   No. C 03-4999 SI, 2009 U.S. Dist. LEXIS 95072 (N.D. Cal. Oct. 13, 2009) ............... 15

13

*In re Hansen Natural Corp. Sec. Litig.,*
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ........................................................ 7, 15

14

*In re New Century,*
   588 F. Supp. 2d 1206 (C.D. Cal. 2008) ......................................................... 14

15

*In re PMI Group, Inc. Sec. Litig.,*
   No. C 08-1405 SI, 2009 U.S. Dist. LEXIS 101582 (N.D. Cal. Nov. 2, 2009) ............... 14

16

*In re Silicon Graphics Sec. Litig.,*
   183 F.3d 970 (9th Cir. 1999) .................................................................. 12

17

*In re Sipex Corp. Sec. Litig.,*
   No. C 05-00392 WHA, 2005 U.S. Dist. LEXIS 30854 (N.D. Cal. 2005) ...................... 9

18

19

*In re UTStarcom, Inc. Sec. Litig.,*
   No. C 04-04908 JW, 2009 U.S. Dist. LEXIS 36864 (N.D. Cal. Mar. 27, 2009) ............. 12

20

*In re Vantive Corp. Sec. Litig.,*
   283 F. 3d 1079 (9th Cir. 2002) ................................................................. 1

21

*Konkol v. Diebold, Inc.,*
   No. 08-4572, 2009 U.S. App. LEXIS 28194 (6th Cir. Dec. 22, 2009) ...................... 2, 7

22

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.,*
   513 F.3d 702 (7th Cir. 2008) .................................................................. 14

23

24

*Metzler Inv. GmbH v. Corinthian Colleges, Inc.,*
   540 F.3d 1049 (9th Cir. 2008) .................................................................. 1

25

*Provenz v. Miller,*
   102 F.3d 1478 (9th Cir. 1996) ................................................................. 9

26

*Rudolph v. UTStarcom,*
   560 F. Supp. 2d 880 (N.D. Cal. 2008) ....................................................... 5, 12

27

28

Gibson, Dunn &
Crutcher LLP

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT        CASE NO. C-08-4966

## TABLE OF AUTHORITIES  *(continued)*

Page(s)

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir. 2004)............................................................................................ 14

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007)............................................................................................ 14

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)..................................................................................... passim

## REGULATIONS

17 C.F.R. § 229.101(c)(vii).................................................................................................... 8

Gibson, Dunn & Crutcher LLP

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT      CASE NO. C-08-4966

# I.    INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion to Dismiss First Amended Complaint ("Opposition" or "Opp.") attempts to distract the Court from what the First Amended Complaint ("Amended Complaint" or "FAC") does not and cannot allege: a strong inference that "Defendants knew (or at least suspected)" that (1) "the 1Q agreement was entered into in contemplation of a future subscription license, or that it involved a technology that was not yet released for commercial use," and (2) "the [Q2] licensee intended to retain certain rights to use technology, which it had enjoyed under a subscription license[] that it simultaneously cancelled." September 11, 2009 Order (the "Order") at 16. The Opposition never discusses the two matters that, when discovered in an investigation in the third quarter of 2008, led Cadence to restate its financial statements for the first two quarters of 2008, and does not identify a single link between any Defendant or senior management and knowledge of those facts *at the time the accounting determinations were made*.

The Opposition repeatedly claims that the Amended Complaint adds "new witness-based allegations," "stunning admissions," and "detailed facts linking defendants to both the 1Q08 and 2Q08 transactions," which supposedly offer "powerful direct and circumstantial evidence of [Defendants'] knowledge of falsity" and scienter. Opp. at 1, 7, 9-13. But their "detailed facts" are just a rehash of the conclusory allegations of the now-dismissed complaint. The so-called "new witness-based allegations" are either unreliable hearsay or irrelevant or both and still fail to allege that any Defendant was aware of information during the first two quarters of 2008 that would have required a different accounting treatment for the two Cadence contracts at issue. Plaintiffs' mischaracterizations of their own allegations, exhibits, and alleged confidential witnesses' statements cannot controvert the fact that this is one of the "countless fishing expeditions which the PSLRA was designed to deter." *In re Vantive Corp. Sec. Litig.*, 283 F. 3d 1079, 1087 (9th Cir. 2002).

Plaintiffs misunderstand—perhaps deliberately—the rules governing motions to dismiss and the parties' respective burdens of proof. Plaintiffs argue that "[a]t the pleading stage, plaintiffs' allegations are to be accepted as true." Opp. at 18. That is not the law. While *facts* pled must be taken as true, the Court must not credit Plaintiffs' conclusory allegations and unsupported assertions. *See Ashcroft v. Iqbal*, 566 U.S. __, 129 S. Ct. 1937, 1950 (2009); *Metzler Inv. GmbH v. Corinthian*

1  *Colleges*, *Inc.*, 540 F.3d 1049, 1061, 1070 (9th Cir. 2008).  Defendants are not required to respond to

2  each misleading and false claim in the Amended Complaint;  Plaintiffs have yet to file a complaint

3  that passes muster under the PSLRA and Federal Rule of Civil Procedure 9, and the burden of proof

4  remains with the Plaintiffs.[1]

5      The Amended Complaint is no different from its predecessors:  it pleads ***no additional facts***

6  that support a strong inference of scienter.  Because Plaintiffs remain unable "to connect any of the

7  Individual Defendants, or any particular person at Cadence, with the 1Q and 2Q agreements, except in

8  remote and speculative ways that may or may not have entailed knowledge of the ***specific facts*** that

9  rendered the accounting classifications incorrect," those claims should now be dismissed with

10  prejudice.  Order at 25 (emphasis added).

## II.      ARGUMENT

**A.      Plaintiffs' "New" Scienter Allegations Omit Facts Necessary To Plead Defendants' Knowledge Of Relevant Facts And Are Based On Unreliable CW Statements.**

The FAC adds two types of additional confidential witness ("CW") allegations: (1) allegations

based on new—but equally unreliable—confidential witness statements; and (2) additional generic,

non-specific allegations like those the Court previously rejected.  Although the Opposition tries to

weave together statements attributed to CWs to form a coherent basis for attributing scienter to

Defendants, mischaracterizing its own CWs' statements along the way, the FAC still does not allege

any ***facts*** showing that any Individual Defendant had access to or actual knowledge of the specific

details and circumstances of the Q1 and Q2 Contracts that, when discovered, led to the Company's

restatement.  Nor does it specify any direct contact or communication between any of the CWs and

any of the Individual Defendants regarding the Q1 or Q2 transactions at issue.  Because there is still

nothing that ties any Defendant to the facts underlying the accounting determinations at issue, the

Amended Complaint is properly dismissed with prejudice.  *See* Order at 18.

---

[1]  The Opposition is replete with claims that Defendants "admitted" matters to which they chose not to respond, no matter how outlandish and false the claim.  Plaintiffs have not filed a legally adequate complaint, and no answer is required.  Defendants cannot respond to each and every misstatement in Plaintiffs' 96-page complaint in a 25-page motion to dismiss.  "The PLSRA and the Supreme Court's opinion in *Tellabs* make clear that the burden of proof, at this stage of the proceedings, rests with the investors."  *Konkol v. Diebold*, *Inc.*, 2009 U.S. App. LEXIS 28194, *27 (6th Cir. Dec. 22, 2009).

2

1    Even if the claimed CW statements adequately linked senior management to knowledge of

2    facts that would affect the underlying accounting judgments—which they do not—the Amended

3    Complaint offers insufficient basis to credit the CWs with personal knowledge of the facts alleged.

4    To be probative of scienter, CW allegations (1) "must be supported by 'sufficient detail about [the]

5    confidential witness's *position within the defendant company* to provide a basis for attributing the

6    facts reported by that witness to the witness's personal knowledge" and (2) "must themselves be

7    indicative of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009)

8    (emphasis added). In analyzing the first prong, courts must consider a variety of factors, including

9    "the coherence and plausibility of the allegations, the number of sources, the reliability of the sources,

10   and similar indicia." *In re Daou Sys. Sec. Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005). Plaintiffs must

11   include "sufficient detail" regarding "how the witness came to know the information he or she

12   describes." *See* Opp. at 10 (citing *In re Adaptive Broadband Sec. Litig.*, 2002 U.S. Dist. LEXIS 5887,

13   *37 (N.D. Cal. Apr. 2, 2002)). Plaintiffs repeatedly fail to demonstrate that their CWs have personal

14   knowledge of the statements allegedly made to Plaintiffs' attorneys/agents, and those statements must

15   therefore be disregarded.

16       1.    **No Facts Are Plead That CW12 Has Personal Knowledge Of His/Her Alleged
                Claims, And Those "Statements" Should Be Disregarded.**

17       Plaintiffs' desperation and the inadequacies of their CW allegations to support an inference of

18   scienter are most obvious in their use of claims allegedly made by CW12, who held no "position

19   within the . . . company" as *Zucco* requires, but instead is allegedly a "consultant in the EDA

20   industry" who advises unidentified third-party "clients" on matters such as "design methodologies."

21   FAC ¶ 75(g). Plaintiffs' rely heavily on CW12's alleged statement that "defendant Kevin Bushby . . .

22   negotiated the [Q1] deal at the direction of defendant Michael J. Fister . . . and was fired because of

23   it." Opp. at 9. However, CW12's statements must be disregarded as unreliable because they are

24   based solely on hearsay, not personal knowledge. Unable "to provide a basis for attributing the facts

25   reported by [CW12] to [CW12's] personal knowledge," *Zucco*, 552 F.3d at 995, Plaintiffs allege the

26   following insufficient "facts" in an unsuccessful attempt to establish CW12's reliability:

27   •   CW12 is allegedly "a *consultant in the EDA industry* who *advises clients* including Cadence
         customers *on strategic product analysis and design methodologies*." FAC ¶ 75(g) (emphasis

28       added). Plaintiffs also claim CW12 "corresponds with industry executives and customers of

1
2
3
4

Cadence products."  FAC ¶ 51(*l*).  By Plaintiffs' own admission, CW12 never held any position at Cadence, is not alleged to have had any contact with Cadence or any Individual Defendant, to have had any involvement in the accounting determinations at issue, or to have had access to any internal Cadence documentation.  Accordingly, Plaintiffs have not alleged sufficient facts to show that CW12 accordingly has personal knowledge regarding the statements he allegedly made.  *See Zucco*, 552 F.3d at 995.

5
6
7
8
9
10

- The sole source of CW12's supposed knowledge of the Q1 2008 Contract is what "he learned" from an unnamed "Fujitsu engineer."  Plaintiffs allege that CW12 "learned from [an unidentified] Fujitsu engineer [at some unspecified time and based on some unspecified knowledge] . . . that Bushby negotiated the transaction [at some unspecified level of involvement], and was told by Fister to do it, and that Bushby was fired because of it."  Opp. at 4.  No information is supplied as to what Bushby allegedly negotiated or what "it" Bushby was allegedly told to do, let alone how an engineer at another company would be privy to such internal management matters.  Plaintiffs provide no information about the "Fujitsu engineer" who allegedly provided CW12 with the information, and such second-hand information cannot establish CW12's *personal* knowledge.  This double-hearsay statement is entirely unreliable and should be disregarded.  *See Zucco*, 552 F.3d at 998.

11
12
13
14
15

- Essentially conceding that they have pled insufficient facts to offer a foundation for CW12's statements, Plaintiffs make the ridiculous offer to the Court *ex parte* information regarding CW12's identity *in camera*.  Opp. at 11.  The PSLRA offers no mechanism for allowing plaintiffs to surmount its pleading hurdles without actually pleading the basis for their claim.  *Daou*, 411 F.3d at 1015 (holding that "naming sources is unnecessary so long as the sources are described with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged").

16
17
18
19
20
21
22
23
24

Without supplying a single fact suggesting personal knowledge of Cadence's internal business practices, Plaintiffs allege that CW12—a consultant who worked with others in the "industry"—was privy to internal Cadence information—specifically, that (1) Bushby negotiated the Q1 2008 transaction, (2) at the direction of Fister, and (3) was fired because of it.  One can only speculate as to what Mr. Bushby allegedly "negotiated . . . at the direction of Fister" and whether it related in any manner to the later restatement.  There is not a single fact to suggest that any of CW12's allegations are based on personal knowledge.[2]  It strains credulity that an industry analyst with no direct connection to Cadence would possess detailed internal information, of which apparently none of Plaintiffs' other 14 confidential witnesses (most of whom are alleged to have been Cadence

25
26
27
28

[2] Further diminishing the reliability of these allegations is the nonsensical claim that "Fujitsu had 'backed out of [the 1Q08] deal' sometime in 2Q08 because it was highly likely that the Fujitsu deal was, in fact, the deal that was restated."  FAC ¶ 75(g).  Taken literally, the claim appears to be that, in Q2 2008, Fujitsu backed out of the Q1 2008 transaction because the deal was restated, despite the fact that the accounting errors were not discovered until later in Q3 2008.  The incoherence of this statement fatally undermines the reliability of the claims attributed by Plaintiffs to CW12.

1   employees at the relevant time) were aware.

2       Recognizing the lack of foundation for CW12's claims, Plaintiffs assert that CW12 was

3   proffered not to show the accounting improprieties at Cadence, but rather "to corroborate with five

4   other former employees' accounts that Bushby negotiated the largest licensing deal for 1Q08 at

5   Fister's direction."  Opp. at 10, citing FAC ¶ 74.  Apart from the fundamental problem that Plaintiffs

6   still cannot establish CW12's personal knowledge, *none* of the CWs that CW12 purportedly

7   "corroborates" offers any allegations regarding Bushby's involvement with the Q1 Contract.  *See*

8   FAC ¶ 74 (alleging only that various CWs believed the Q1 Contract was with Fujitsu).

9       Plaintiffs' mischaracterization of their own Amended Complaint is worth repeating:  the only

10  CW statement cited for the alleged "fact" that Bushby negotiated the Q1 2008 Contract at the

11  direction of Fister and was fired because of it comes from a "consultant" for third parties who is not

12  alleged to work for or to have had any contact with anyone at Cadence.  Lacking any indicia of

13  reliability, CW12's purported allegations must be disregarded in their entirety.  *See Zucco*, 552 F.3d at

14  996-1000; *Daou*, 411 F.3d at 1015-16.

15          **2.      CW14 Is Not Sufficiently Identified And Is Thus Unreliable.**

16      Plaintiffs also claim to have added "detailed" claims they attribute to CW14.  *See* FAC ¶ 78(h)

17  (claiming that Bushby "was intimately involved in the review of sales . . . in any given quarter"),

18  ¶ 78(i) (claiming that Bushby held weekly calls with "his direct reports" during which "participants

19  discussed the status and details of pending contracts and product discounts that needed to be offered");

20  Opp. at 11-12.  Plaintiffs do not allege, however, that CW14 "participated" on the calls he/she

21  describes and, if he/she did not, where, when and how CW14 came to know the facts that he/she

22  allegedly claims.   FAC ¶ 78(i) (providing no information on whether or not CW14 personally

23  participated in the "weekly calls"); ¶ 113 (providing no information regarding whether or not CW14

24  personally attended the "weekly meetings").  Nor do Plaintiffs allege *when* CW14 allegedly worked at

25  Cadence,[3] and they therefore cannot establish the basis for his/her supposed knowledge of the "facts"

26  _____

27  [3]  Significantly, Plaintiffs provide the employment period for 11 of the 14 former employee CWs.
    Their failure to do so for CW14 and CW3—the two witness upon whom the Amended Complaint

28  relies most heavily—is, as Plaintiffs are wont to say, "highly suspicious."  *See* Motion, Ex. A.

1   underlying these allegations. *Rudolph v. UTStarcom*, 560 F. Supp. 2d 880, 890 (N.D. Cal. 2008).

2   Without even this minimal foundation, the allegations about CW14's claimed statements are

3   unreliable and cannot support any inference of scienter. *Zucco*, 552 F.3d at 995.

4         **3.      Plaintiffs Have Failed to Allege Facts Sufficient To Establish That CW15 Has Personal Knowledge Of His/Her Claimed Statements.**

5

6         Plaintiffs rely heavily on CW15 to offer "facts" regarding the restated Q2 Contract. But the

7   Amended Complaint does not indicate that CW15 has relevant personal knowledge of those alleged

8   statements. In fact, CW15 provided Plaintiffs with nothing more than unreliable hearsay regarding

9   what Defendant Bushby supposedly told someone (who then allegedly told others). FAC ¶ 110; Opp.

10   at 13. At no point do Plaintiffs explain how CW15 came to know the facts that he/she is alleging.

11   They do not claim that CW15 was present during the alleged Bushby statement, and no foundation for

12   personal knowledge is offered. Instead, Plaintiffs awkwardly allege a game of telephone: CW15

13   allegedly told them that Bushby "gave instructions to Mike Ellow who communicated Bushby's

14   instructions to Chris Cronk and Neil Zaman . . . to re-structure the transaction with Nvidia."[4] FAC

15   ¶ 110. Bushby is not alleged ever to have spoken with anyone at Nvidia. Even if the claimed

16   statements to Plaintiffs' attorneys/agents were reliable, CW15 provides no information regarding

17   Bushby's involvement in or knowledge of the circumstances of the Q2 2008 deal that resulted in

18   improper accounting.[5] Because Plaintiffs have failed to provide sufficient allegations to establish

19   CW15's personal knowledge or foundation, this statement must be disregarded.

20         **4.      "New" CW Statements Only Restate Generic Scienter Allegations This Court Previously Rejected.**

21         In addition to the new, unreliable statements by CW12, CW14, and CW15, Plaintiffs reiterate

22

23   [4]  Contrary to Plaintiffs' assertion, Defendants dispute that Plaintiffs have pled facts demonstrating that Nvidia was the counterparty to the Q2 Contract. *See* Defendants' Motion to Dismiss at 15. As argued in our Motion, Plaintiffs' Nvidia allegation is both illogical and false.

24

25   [5]  Plaintiffs also argue—misleadingly—that CW15's allegations are corroborated by CW9 and Cadence's subsequent description of the restated contract (Opp. at 14). Neither provides any information regarding the alleged "instructions" Bushby provided to various sales people. In fact, CW9 merely reported that, in 2007, Bushby was concerned about maintaining revenue flow. FAC ¶ 78(b). That concern is not a surprising one for the executive overseeing Cadence's worldwide sales organization (*id.* ¶ 45) and does not imply scienter or "corroborate" CW15.

1   and rephrase generic allegations regarding the Individual Defendants' "involvement" with large deals,

2   which this Court previously rejected. *See* Order at 18-19.  For example, while characterizing this as

3   "new," the CWs continue to make generalized allegations:  "Fister and Bushby were involved in every

4   large deal over $5 million;" Bushby was "intimately involved" in the review of sales; Cadence's "big

5   guns" participated in the "architecting" of deals, defendants had to approve the deals;" "either Porter

6   or Palatnik 'signed off on big stuff;'" and "it seemed implausible that a $24.8 million deal recorded

7   upfront could go through undetected."  ¶ 75(h-*l*).

8         Yet no CW provides any reliable statement indicating that any Individual Defendant ***was***

9   ***actually aware of the information that rendered Cadence's initial accounting determinations for***

10  ***the contracts false***, as is necessary to establish scienter.  Order at 25.  The "new" CW allegations still

11  "do not offer any more than a basis for speculating that Individual Defendants may have worked, at

12  some level, on the [relevant] deals."  Order at 19.  Such "generalized statements cannot substitute for

13  *specific* facts through which a factfinder can strongly infer that the Defendants themselves knew of or

14  recklessly disregarded the falsity of the earnings statements, especially because the majority of the

15  Confidential Witnesses are not identified as having *any* contact or interaction with any of the

16  Defendants."  *Konkol*, 2009 U.S. App. LEXIS 28194, *19-20.

17  **B.    Unable To Bridge The Gap Between Customer Intentions And Knowledge Thereof By**
        **Cadence Senior Management, Plaintiffs Try To Distract The Court With Irrelevancies.**
18

19      **1.    Plaintiffs' Allegations That Defendants "Surreptitiously" Qualified The Internal**
               **Control Representation For Its Q1 2008 10-Q Filing Are Unfounded.**

20         Plaintiffs' allegation that Defendants "surreptitiously" qualified the internal control

21  representation in their Q1 2008 quarterly report is nothing short of absurd, and evidences Plaintiffs'

22  desperation to come up with something—*anything*—to support an inference of scienter.  Cadence's

23  Q1 2008 filing utilizes the same internal control representation as the Company's *eight* previous

24  quarterly reports.  Plaintiffs' allegation that "[t]he insertion of the qualification for the quarter in

25  which the financials were materially manipulated" is simply unsupportable.  FAC ¶ 71.  And

26  allegations of inadequate internal controls do not, without more, create a strong inference of scienter.

27  *See*, *e.g.*, *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp 2d 1142, 1157-58 (C.D. Cal. 2007).

28

Gibson, Dunn &
Crutcher LLP

1

## 2.    Allegations Of "Deliberate Violation Of Regulation S-K" Misstate The Law.

2

Plaintiffs assert that Defendants "violated Regulation S-K, Item 101," which Plaintiffs contend

3

"specifically requires the disclosure of the customers that had more than 10% of the Company's

4

overall revenue recorded during the quarter."  Opp. at 16; FAC ¶ 72(f).  *Not true.*  Regulation S-K,

5

Item 101 requires the disclosure Plaintiffs demand only "[t]o the extent material to an understanding

6

of the registrant's business as a whole," and, even then, only if the "loss of the customer would have a

7

material adverse effect on the company."  17 C.F.R. § 229.101(c)(vii).  There is no suggestion in the

8

FAC that the 10% customer in Q1 2008 met these criteria.  As such, under SFAS No. 131, which

9

Cadence's quarterly filings (like those of its peer firms) cite, Cadence was required to disclose only

10

whether there were any 10% customers—not the identity of the customers.  Because there was no

11

violation of Regulation S-K, the only inference to be drawn from Plaintiffs' allegation is that Plaintiffs

12

are desperate to distract the Court from their failure to plead scienter.

13

## 3.    Plaintiffs' Allegations Regarding The Amendment Of Defendants' Indemnification Agreements Are Yet Another Red Herring.

14

Plaintiffs make the conclusory allegation that the Individual Defendants "rushed to amend

15

their employment agreements to 'clarify' the procedures for indemnification and expense

16

advancement," which Plaintiffs contend, without any factual basis, is "highly suspicious" and was

17

intended "to insulate themselves in case they are sued for fraud."  Opp. at 16.  While the Cadence

18

Board approved amendments to Cadence's form of director and officer indemnification agreement on

19

July 29, 2009, there is nothing suspicious about the timing of this change, which occurred when

20

certain officers executed new employment agreements, and the Board approved amendments to the

21

Company's bylaws.  Ex. 53.  Plaintiffs allege no facts explaining what changes were made to the

22

indemnification agreements or that Defendants' indemnification rights were expanded by such

23

changes.  The routine amendment of indemnification agreements is not indicative of scienter.

24

## 4.    CW14's Whistleblowing Allegations Have Little Force.

25

In response to the Court's suggestion "that 'whistle blowing' allegations may be indicative of

26

scienter," Plaintiffs include a purported whistleblowing claim by CW14.  However, Plaintiffs do not

27

allege any basis for CW14's knowledge of the purported whistleblowing, which supposedly took

28

place in a meeting with Cadence's Board of Directors.  Plaintiffs do not allege that CW14—a former

Gibson, Dunn &
Crutcher LLP

1   Cadence account manager during some unspecified period of time—attended any Board meeting or

2   how CW14 supposedly learned of Mr. Cooley's alleged statements.  Because Plaintiffs do not (or

3   cannot) establish the basic foundation for CW14's alleged statements, CW14's unfounded

4   whistleblowing allegations should be entirely disregarded.[6]

5          Moreover, the whistleblower's alleged report to the Board that "the shift to Term agreement

6   [sic] was cannibalizing the future by pulling contract renewals forward" and Mr. Bushby's resulting

7   termination imply an inference that the Board was unhappy with management strategy, not that Mr.

8   Bushby or any other member of senior management was aware of the underlying facts that gave rise

9   to the restatement.  *See* Order at 24-25.

10          **5.     Plaintiffs Mischaracterize Facts And Misinterpret Controlling Law Regarding
                Individual Defendants' Supposed "Admissions."**

11

12          Plaintiffs look to statements made *after* the investigation and resulting restatement and

13   speciously allege that Defendants' "multiple admissions . . . demonstrate defendants' scienter."  Opp.

     at 19.  Controlling law and the definition of "admission" do not support such a bold claim.

14
          First, a restatement is ***not*** an admission of scienter.  "The Ninth Circuit has repeatedly held
15
     that 'the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without
16
     more, does not establish scienter.'"  Order at 15 (citing *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th
17
     Cir. 1996)).[7]  "Such violations, even significant ones requiring large or multiple restatements, must be
18
     augmented by other specific allegations that defendants possessed the requisite mental state."  *In re*
19
     *Downey Sec. Litig.*, 2009 U.S. Dist. LEXIS 83443, *36 (C.D. Cal. Aug. 21, 2009).
20
          Plaintiffs also try to synthesize an "admission" by mischaracterizing a second-hand account of
21
     comments allegedly made by the new Cadence CEO Lip-Bu Tan.  They disingenuously claim that Mr.
22
     Tan "suggested the restatement was necessitated by the improper revenue recognition practice at the
23

24   [6]  Although Plaintiffs allege that CW14 reported to Tom Cooley, the FAC does not allege that CW14
     was informed of the alleged meeting *by* Cooley.  Absolutely no basis for the statement is alleged.
25   [7]  Plaintiffs cite *In re Sipex* for their argument that a company's identification and correction of
     internal controls weaknesses "raise[s] a strong inference of scienter."  Opp. at 19.  However, *Sipex*
26   holds that a company's "public admission that its financial reports for the period in question should
     not be relied upon and would be 'restated' . . . do[es] not alone raise a strong inference of scienter,"
27   because "[f]inancial reporting errors, even material ones, can result from innocent mistakes or mere
     negligence."  *In re Sipex Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 30854, *2 (N.D. Cal. 2005).
28

1    direction of the old management under Fister, Porter, Bushby, and Palatnik." Opp. at 19-20. That

2    exhibit does not claim that Mr. Tan "suggested" any such thing. Rather, the article (written several

3    months after Cadence's restatement was announced) summarizes Mr. Tan's generic statements about

4    Cadence's restatement and separately discusses whether future revenue might be affected because of

5    license terms previously offered. Mr. Tan purportedly stated that "restatements had been necessary;"

6    "there had been differences in the past from the 90/10 licensing model Cadence now employs;" and

7    "the company was going to exercise discipline about these matters in the future." *See* FAC, Ex. 55 at

8    1.[8] A statement that the Company had been required to restate certain license-related earnings, and

9    would seek to avoid such problems in the future is hardly the damning "admission" Plaintiffs make it

10   out to be, and in no way admits that that "old management . . . were [*sic*] at least deliberately reckless

11   in straying from the rules."[9] Opp. at 19-20. Even accepting the paraphrasing of Mr. Tan's comments

12   as true, the statements say nothing about the knowledge (or deliberate recklessness) of the Defendants

13   at the time that the accounting errors at issue were made and do not support an inference of scienter.

14   **C.    Plaintiffs' New Allegations Are Like Their Old Allegations:  They Do Not Create An Inference Of Scienter.**

15            **1.    Allegations Regarding The Alleged Terminations Do Not Plead Scienter.**

16            This Court previously held that "the resignations [of certain Cadence officers] were not, in and

17   of themselves, strongly indicative of scienter." Order at 25. Nothing in the FAC alters this

18   conclusion. The "industry consultant" CW12 alleges that Bushby was fired because of the Q1

19   Contract (FAC ¶ 75(h)), while CW14 alternatively implies that Bushby was terminated following the

20   supposed whistleblowing "on senior management's practice of cannibalizing Cadence's future

21   pipeline." *Id.* ¶ 78(h). These contradictory explanations for Bushby's supposed termination cannot

22

23   [8]  Significantly, Exhibit 55 does not purport to contain direct quotations from Mr. Tan, but is instead a reporter's summary of a discussion he claims to have had with the new Cadence CEO. *See* Ex. 55.

24

25   [9]  The FAC also references Mr. Tan's explanation of the Company's 2008 decision to write-down the value of goodwill, intangible assets, and fixed assets (a move that is "neither unusual nor a sign of trouble"), as "a good time to get rid of old baggage." FAC ¶ 157, Ex. 55. A write-down is a separate issue than revenue recognition, and is (a) unrelated to the restated financial statements at issue, and (b) says nothing about Defendants' knowledge of the relevant facts that rendered the Q1 2008 and Q2 2008 accounting inaccurate at the time such accounting determinations were made. A summary of an interview with Cadence's post-restatement CEO adds nothing to the scienter issue.

26

27

28

Gibson, Dunn & Crutcher LLP

1    support an inference of scienter.   Furthermore, as explained above, the confidential witnesses

2    providing the "source" for such allegations are unreliable and lack personal knowledge of their

3    claimed statements.   CW3 purportedly adds an additional contradictory claim that the officers were

4    asked to resign "in part because of the false financials in 1Q08 and 2Q08 that gave rise to the need to

5    restate." *Id*. ¶ 131.   As this Court previously held, it is "quite plausible to infer that the resignations,

6    however forced, were the result of the company's poor performance and management," which "could

7    have been accentuated by the discovery of an innocent or negligent accounting failure, just as it could

8    have followed the exposure of fraud."   Order at 24-25.

9           **2.      Generic Allegations Regarding Access To Sales Data Do Not Plead Scienter.**

10          Although Plaintiffs contend that they answered the Court's directive to provide the "level of

11   detail the Individual Defendants would have likely been exposed to," a cursory review of the FAC's

12   "new" allegations demonstrates that their allegations give no indication that any Defendant had

13   sufficient visibility to have learned the subjective intent of the customers whose contracts' accounting

14   later led to the restatement.   For example, CW7 now alleges that the Siebel system, which Defendants

15   allegedly had access to, reported "(1) a potential value of the contract, and (2) when the contract

16   would be expected to close."   FAC ¶ 75(*l*).   Even if true, neither fact offers any insight into the

17   information relevant to the accounting errors at issue, *i.e.*, *that the Q1 2008 Contract was negotiated*

18   *in contemplation of a third quarter contract or that the Q2 customer did not intend to cancel its*

19   *subscription rights*.   Likewise, allegations that Cadence's computer systems contained general

20   information about contracts such as the "full dollar amount of a contract," "the number of months

21   remaining," or the "prices of the products contracted," or that certain Defendants "plan the

22   [Company's] pipeline . . . in some appreciating detail" (¶¶ 77, 78(*l*), (m)) or conducted "weekly

23   telephone calls" (¶ 78(i)) or reviewed "how much each customer was going to pay upfront and how

24   much would be paid ratably" (¶ 78(h)) shed no light on whether Defendants actually knew the

25   relevant facts that would result in subsequent restatement of the two contracts at issue at the relevant

26   time, which the Court previously held was required to establish scienter in this case. *See* Order at 16.

27          Finally, Plaintiffs disingenuously claim to have addressed the Court's previous comment that

28   no CW alleged that Cadence's booking and financial reporting systems "reflected that either of the

1  licenses at issue were or should have been subscription licenses at any time." Order at 19. Plaintiffs

2  now allege that such systems "kept track whether contracts were 'Term' or 'Subscription'" (Opp. at

3  21). As the Court previously recognized, even if Cadence's systems indicated whether a contract was

4  "Term" or "Subscription," Plaintiffs do not allege that such systems contained any information about

5  (1) why such a determination was made, (2) whether the Q1 Contract was negotiated in contemplation

6  of a Q3 agreement, or (3) the Q2 customer's subjective intent. *See* Order at 16, 19. Plaintiffs'

7  "access" allegations remain inadequate to support a strong inference of scienter.

8  ### 3.    Allegations of GAAP Violations Are Still Insufficient To Plead Scienter.

9        Alleging that Individual Defendants knew the accounting rules at issue does not establish

10  scienter. Opp. at 20. Knowledge of the relevant accounting rules is not the issue, but rather Plaintiffs

11  must (and fail to) allege knowledge of the relevant facts that rendered Cadence's accounting

12  determinations incorrect, pursuant to those rules, *when such determinations were first made*.[10] Order

13  at 25. "[T]o plead fraudulent intent based on GAAP violations, plaintiffs must allege facts showing

14  that . . . the *defendants knew specific facts at the time* that rendered their accounting determinations

15  fraudulent." *Rudolph*, 560 F. Supp. 2d at 889.[11]

16  ### 4.    Motive Allegations Are Still Insufficient To Plead Scienter.

17        Although Plaintiffs' Opposition cites the Court's prior conclusion that Plaintiffs have

18  "articulate[d] a coherent explanation for why Defendants may have committed fraud," Plaintiffs omit

19  the remainder of the quoted sentence, in which the Court explicitly held that "this is not enough to

20  state a claim for securities fraud under the PSLRA." Order at 23; *see*, *e.g.*, *In re Silicon Graphics Sec.*

21  *Litig.*, 183 F.3d 970, 973 (9th Cir. 1999). Notwithstanding the Court's previous holding, Plaintiffs

22  now argue that additional allegations regarding the very same motives (*i.e.*, to meet Wall Street

23  expectations and Cadence's own guidance, present a "rosy picture" for the attempted Mentor Graphics

24  _____

25  [10] Plaintiffs repeatedly mischaracterize Defendants' argument that accounting for software contracts requires a complicated analysis of the underlying factual circumstances of the transaction. Opp. at 20.

26  The process is fact-specific and cannot be properly accomplished without knowledge of the underlying facts—precisely the knowledge that Plaintiffs have not and cannot plead Defendants had.

27  [11] *Compare Adaptive Broadband*, 2002 U.S. Dist. LEXIS 5887, at *39, 41; *In re UTStarcom*, *Inc.*

28  *Sec. Litig.*, 2009 U.S. Dist. LEXIS 36864, at *27, 29 (N.D. Cal. Mar. 27, 2009).

Gibson, Dunn &
Crutcher LLP

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT          CASE NO. C-08-4966

1   acquisition, and conceal a supposed revenue and bookings bubble) now support a strong inference of

2   scienter.  *Compare*, *e.g.*, CAC ¶¶ 7, 35(c), 60, *with* FAC ¶¶ 4, 7, 12, 78(c), (d), 80.

3           As before, such facts at best "make the inference of scienter more compelling than it otherwise

4   would have been, but they do not suffice to make a strong showing of scienter."  Order at 23.  The

5   allegations in the FAC still leave a significant gap between the accounting errors at issue and

6   Individual Defendants' knowledge of the relevant facts, which might have alerted them to errors at the

7   time the challenged statements were made.  As this Court previously held "motive and opportunity"

8   allegations are insufficient "to bridge" this gap.  Order at 25.

9   **D.      The *South Ferry* Exceptions Do Not Apply, And Scienter Cannot Be Established Through
            The Core Operations Inference.**

10          Once again, Plaintiffs fail to provide particularized allegations that "suggest that the

11  [Individual Defendants] had actual access to the disputed information . . . ."  *Zucco*, 552 F.3d at 1000;

12  *see also* Order at 21.  Plaintiffs still allege no facts establishing that "any defendant was deeply

13  involved in the details of any particular transaction, or was involved with the customers in question,

14  such that they were likely to know first hand the facts that were key to categorizing the 1Q and 2Q

15  agreements."  Order at 22.  To the contrary, the only allegations purporting to tie any Defendant

16  directly to the transactions at issue are based on unreliable and conclusory hearsay from CWs, offered

17  without foundation.  The remaining "new" allegations simply restate (in various formulations)

18  Plaintiffs' earlier allegations that Defendants "'spent time' with customers," and "describe the general

19  roles that Individual Defendants had within the approval process," which this Court previously

20  rejected.  *See* Order at 21.

21          Plaintiffs also fail to allege that "the nature of the relevant fact is of such prominence that it

22  would be absurd to suggest that management was without knowledge of the matter."  *Zucco*, 552 F.3d

23  at 1000-01; Order at 22.  Plaintiffs plead *no new facts* to place this case into the "exceedingly rare

24  category of cases," where the second "narrow exception" applies.  *South Ferry LP v. Killinger*, 542

25  F.3d 776, 785 n.3 (9th Cir. 2008); *Zucco*, 552 F.3d at 1001.  Plaintiffs' bluster, distraction, and

26  specious arguments notwithstanding, the Amended Complaint did not alter the fundamental nature of

27  the case.  As this Court previously held, "this is a case in which the details of licensing negotiations,

28  and the relationship of license agreements with other arrangements, affect the way that the agreements

1  should have been accounted for." Order at 22. Because the alleged "'misrepresentations are largely

2  definitional, . . . the falsity of the original representations would not be immediately obvious to

3  corporate management' unless they were familiar with the details of the underlying agreements." *Id.*

4  As described above, the FAC does not allege reliable facts suggesting Defendants' knew such details,

5  and—as this Court previously held—"the core operations inference cannot apply here."[12] *Id.*

6  **E.  Plaintiffs' Group-Based Allegations Must Be Rejected, Because The Group-Published Doctrine Did Not Survive The PLSRA.**

7

8         Plaintiffs argue that the "group published doctrine" establishes the liability of Defendant

9  Bushby—an individual who is not alleged to have made any public statements, false or otherwise.

10  *See* Mot. at 10 n.8; Opp. at 24-25. Remarkably, Plaintiffs make this argument despite myriad recent

11  decisions holding that the group published doctrine (which is simply an alternative designation for the

12  "group pleading doctrine") did not survive the PSLRA.[13] *See, e.g.*, *In re Dot Hill Sys. Corp. Sec.*

13  *Litig.*, 2009 U.S. Dist. LEXIS 22022, at *34-36 (S.D. Cal. Mar. 18, 2009). Notably, the primary legal

14  authority Plaintiffs cite for application of the "group published doctrine" is a *1995* Ninth Circuit

15  decision, which predates the adoption of the PSLRA.

16         The incontrovertible fact is that Defendant Bushby is not alleged to have made *any* public

17  statements, let alone any false statements, and he must therefore be dismissed from the case. The

18  inapplicability of the group-published theory also means that Plaintiffs cannot connect other

19  ───────────────

    [12]  Plaintiffs also cite *In re PMI Group*, *Inc. Securities Litigation*, 2009 U.S. Dist. LEXIS 101582

20  (N.D. Cal. Nov. 2, 2009), to support their "core operations inference argument." *PMI did not* rely on

21  the core operations inference or either *South Ferry* exception. Rather, the Court held that the amended complaint adequately pled *actual knowledge* of the information that rendered the statements false,

22  not—as Plaintiffs attempt to allege here—that defendants must have been aware of the information by virtue of their positions or the nature of the information at issue. *Id.* at *8-9.

23  [13]  Since this Court's 2002 decision in *Adaptive Broadband*, 2002 U.S. Dist. LEXIS 5887, the

24  majority of courts within this Circuit have held that group pleading is incompatible with the PSLRA. In addition, *Adaptive Broadband* involved starkly different allegations: all three defendants were

25  quoted in the challenged press releases and *signed the SEC filings at issue*. As such, group pleading was not necessary because the statements could be *directly* attributed to each of them. *Id.* at *56. *See*

26  *also Kelley v. Rambus*, *Inc.*, 2008 U.S. Dist. LEXIS 100319, at *21 (N.D. Cal. Dec. 9, 2008); *In re New Century*, 588 F. Supp. 2d 1206, 1223 (C.D. Cal. 2008). Group pleading has likewise been

27  rejected by at least three Circuits as inconsistent with the PSLRA. *See Makor Issues & Rights*, *Ltd. v. Tellabs*, *Inc.*, 513 F.3d 702, 710 (7th Cir. 2008); *Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d

28  Cir. 2007); *Southland Sec. Corp. v. INSpire Ins. Solutions*, *Inc.*, 365 F.3d 353, 363-65 (5th Cir. 2004).

1    Individual Defendants to statements they are not particularly alleged to have made. *See In re Hansen*

2    *Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1154 (C.D. Cal. 2007).  Courts routinely dismiss

3    defendants who are not alleged to have made a false or misleading statement. *See*, *e.g.*, *In re Gilead*

4    *Scis. Sec. Litig.*, 2009 U.S. Dist. LEXIS 95072, *14-17 (N.D. Cal. Oct. 13, 2009); *Downey*, 2009 U.S.

5    Dist. LEXIS 83443, *12 n.1.  Further, to Defendants' knowledge, no court in this Circuit has adopted

6    the Fifth Circuit's novel "silent adoption" theory cited by Plaintiffs (Opp. at 25), and such a theory

7    was recently rejected by this Court. *Gilead*, 2009 U.S. Dist. LEXIS 95072, *14-17.

8         Even assuming that the group pleading doctrine remains applicable post-PSLRA, despite the

9    weight of contrary authority, Plaintiffs still fail to satisfy it.  Plaintiffs fail to plead that *any* relevant

10   Cadence employee—the Individual Defendants, senior management, or anyone responsible for

11   accounting decisions—knew the facts about the Q1 and Q2 transactions at the time they were initially

12   recorded. *In re Citigroup*, *Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004).

13   **F.    A Holistic Review Mandates Dismissal.**

14        This Court previously determined that the inference of scienter was undermined by Plaintiffs'

15   inability to connect the Individual Defendants or other senior management with knowledge that the

16   Q1 and Q2 agreements were incorrectly accounted for in Q1 and Q2, respectively.  Order at 25.

17   Plaintiffs' additional "support" for the very same allegations this Court previously rejected, coupled

18   with a handful of new, but wholly irrelevant or unsupported allegations, does not change the analysis.

19                          **III.    CONCLUSION**

20        Plaintiffs have not alleged facts from which the Court could "infer that any Defendant had

21   knowledge of the facts that rendered the recognition of revenue improper." Order at 25.  Plaintiffs

22   again request leave to amend their complaint, but a third bite at the apple would not result in a

23   demonstration of scienter where none exists.  The FAC should be dismissed without leave to amend.

24   DATED: January 19, 2010                    Respectfully submitted,
                                                GIBSON, DUNN & CRUTCHER LLP
25
                                                By: _____/s/ Sally J. Berens_____
26                                                           Sally J. Berens
                                                Attorneys for Defendants
27                                              CADENCE DESIGN SYSTEMS, INC., MICHAEL J.
                                                FISTER, KEVIN S. PALATNIK, WILLIAM PORTER
28                                              and KEVIN BUSHBY