GIBSON, DUNN & CRUTCHER LLP
TIMOTHY K. ROAKE, SBN 99539
TRoake@gibsondunn.com
SALLY J. BERENS, SBN 218880
SBerens@gibsondunn.com
1881 Page Mill Road
Palo Alto, California 94304
Telephone: 650.849.5300
Facsimile: 650.849.5333

ETHAN D. DETTMER, SBN 196046
EDettmer@gibsondunn.com
MATTHEW S. KAHN, SBN 261679
MKahn@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone: 415.393.8200
Facsimile: 415.393.8306

Attorneys for Defendants
CADENCE DESIGN SYSTEMS, INC., MICHAEL
J. FISTER, KEVIN S. PALATNIK, WILLIAM
PORTER, and KEVIN BUSHBY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re CADENCE DESIGN SYSTEMS, INC. SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS. | CASE NO. C-08-4966 SC<br><br>CLASS ACTION<br><br>**DEFENDANTS' REPLY ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND FOR JUDGMENT ON THE PLEADINGS AND OPPOSITION TO ALASKA ELECTRICAL PENSION FUND'S RULE 56(f) MOTION**<br><br>*[Declaration of Ethan Dettmer and Supplemental Declaration of John Wall In Support Filed Concurrently Herewith]*<br><br>Date:  June 25, 2010<br>Time:  10:00 a.m.<br>Place: Courtroom 1, 17th Floor<br>         450 Golden Gate Avenue<br>         San Francisco, California<br>Judge: The Honorable Samuel Conti |

# TABLE OF CONTENTS

Page

I. Introduction ................................................................................................................. 1

II. Argument...................................................................................................................... 2

    A. There Is No Genuine Issue Of Material Fact: Cadence Did Not Restate Revenue On An Nvidia Agreement As The First Amended Complaint Alleges. ............................................................................................................. 2

        1. John Wall's Declaration More Than Adequately Establishes That The Q2 2008 Nvidia Transaction Accounting Was Not Restated. ................. 2

        2. Plaintiff Raises No Genuine Dispute Of Material Fact On The Question At Issue. .................................................................................... 4

    B. Alaska Electrical's Request For A Continuance Under Rule 56(f) Should Be Denied. ........................................................................................................ 5

        1. Alaska Electrical Has Not Identified Additional "Essential" Discovery It Needs. ................................................................................ 5

        2. Alaska Electrical Has Not Diligently Pursued—Indeed It Has Resisted—Discovery Relevant To This Motion. ........................................ 7

        3. Defendants Have Not "Stonewalled" Discovery—They Produced And Made Available Early Discovery Regarding The Motion. ............... 8

    C. Without The False Nvidia Allegations, Alaska Electrical's First Amended Complaint Insufficiently Pleads Scienter Under Rule 9(b) And The PSLRA. .......................................................................................................... 9

        1. But For Alaska Electrical's False Representations To The Court, Its First Amended Complaint Should Have Been Dismissed. ................. 10

        2. Restatement Of Financial Statements Is Insufficient To Meet Alaska Electrical's Scienter Pleading Burden Under The PSLRA ................ 12

        3. Allegations About Attempts To Restructure Contracts That Are Not Alleged To Violate GAAP Are Not Relevant To Alaska Electrical's Pleading Burden ...................................................................... 13

    D. The Remainder Of Alaska Electrical's Argument Is Irrelevant................................ 13

        1. The Nvidia Allegations Are Irrelevant To Plaintiff's Complaint. ................. 13

        2. The Proffered Documents Do Not Show That Nvidia Revenue Was Restated. .................................................................................. 14

        3. Alaska Electrical's Arguments Regarding Renegotiation Of Contracts Are Incorrect And Irrelevant. ................................................... 14

III. Conclusion ................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of America, NT & SA v. Pengwin*,
  175 F.3d 1109 (9th Cir. 1999) .................................................................................................. 5

*Cadsoft v. Riverdeep, LLC*,
  2007 WL 1462394 (N.D. Cal. 2007) .................................................................................... 5, 7

*Campo v. Sears Holding Corp.*,
  2010 WL 1292329 (2d Cir. Apr. 6, 2010) ............................................................................... 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .............................................................................................................. 2, 4

*Chance v. Pac-Tel Teletrac Inc.*,
  242 F.3d 1151 (9th Cir. 2001) ............................................................................................... 5, 7

*Continental Maritime of San Francisco, Inc. v. Pacific Coast Metal Trades Dist.
   Council, Metal Trades Dept.*,
  817 F.2d 1391 (9th Cir. 1987) ............................................................................................... 6, 8

*Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*,
  353 F.3d 1125 (9th Cir. 2004) .................................................................................................. 2

*Family Home & Fin. Center, Inc. v. Federal Home Loan Mortg. Corp.*,
  525 F.3d 822 (9th Cir. 2008) .................................................................................................... 5

*Heliotrope General Inc. v. Ford Motor Co.*,
  189 F.3d 971 (9th Cir. 1999) ................................................................................................ 2, 9

*Horizon Asset Mgmt v. H&R Block, Inc.*,
  580 F.3d 755 (8th Cir. 2009) .................................................................................................. 13

*In re Downey Sec. Litig.*,
  2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ....................................................................... 13

*In re The Clorox Co. Sec. Litig.*,
  238 F. Supp. 2d 1139 (N.D. Cal. 2002) ................................................................................ 1, 2

*In re Westinghouse Sec. Litig.*,
  90 F.3d 696 (3d Cir. 1996) ..................................................................................................... 15

*Mackey v. Pioneer Nat'l Bank*,
  867 F.2d 520 (9th Cir. 1989) .................................................................................................... 7

*National Airmotive Corp. v. Cohen*,
  1999 WL 102035 (N.D. Cal. 1999) .......................................................................................... 7

*Nicholas v. Wallenstein*,
  266 F.3d 1083 (9th Cir. 2001) ............................................................................................... 6, 7

*Nidds v. Schindler Elevator*,
  113 F.3d 912 (9th Cir. 1997) .................................................................................................... 7

*Papa John's Int'l, Inc. v. Entertainment Publications, LLC*,
  2010 WL 333709 (W.D. Ky. 2010) .......................................................................................... 5

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ........................................................................................... 12, 15

*Qualls v. Blue Cross of Calif., Inc.*,
  22 F.3d 839 (9th Cir. 1994) ...................................................................................................... 5

# TABLE OF AUTHORITIES
### [Continued]

Page(s)

*SG Cowen Sec. Corp. v. United States Dist. Ct.*,
   189 F.3d 909 (9th Cir. 1999) .................................................................................................. 2

*State of Calif. ex rel. Calif. Dept. of Toxic Substances Control v. Campbell*,
   138 F.3d 772 (9th Cir. 1998) ................................................................................................... 5

*Tatum v. City & County of San Francisco*,
   441 F.3d 1090 (9th Cir. 2006) ................................................................................................. 6

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ................................................................................................. 12

**Statutes**

28 U.S.C. § 1746 ............................................................................................................................ 3

**Rules**

Fed. R. Civ. P. 56(e) ...................................................................................................................... 2

Fed. R. Civ. P. 6(d) ........................................................................................................................ 8

## I.     Introduction

Defendants' motion is simple.  It asks two elementary questions that can be resolved now:

*First*, did Alaska Electrical submit competent evidence to support its claim that in the second quarter of 2008, Cadence Design Systems, Inc. ("Cadence") improperly recognized and later restated $12 million in product revenue for an agreement with Nvidia Corporation, as represented to the Court?  This is a yes-or-no question.  Federal Rule of Civil Procedure 56 allows a party to seek summary judgment on "all or part of the claim," and if Nvidia revenue was not restated, then Defendants are entitled to partial summary judgment on this point.

*Second*, if partial summary judgment is granted and a false claim removed from the pleading, then does the remainder of Alaska Electrical's First Amended Complaint ("FAC") adequately plead scienter?  As a matter of law, either the FAC pleads scienter in the absence of the Nvidia-related allegations, or it does not.  If it does not, Defendants are entitled to judgment on the pleadings.

Alaska Electrical's Opposition ignores these issues and tries to rewrite the motion for partial summary judgment.  The evidence proves that Cadence did *not* restate product revenue relating to Nvidia as repeatedly claimed in the FAC (*see* FAC ¶¶ 18, 110), but Alaska Electrical hides from this evidence, raises a host of issues not before the Court, and refused to take discovery on the issue.  Alaska Electrical misstates the import of the thousands of pages of relevant documents already produced, including documents showing that Cadence did not recognize revenue as alleged in the FAC, declined to take the deposition of the person most knowledgeable about the accounting for the Nvidia transaction, and instead spends the bulk of its argument on matters unrelated to this transaction.  Despite these obfuscations, distractions, and willful failure to engage in discovery, the narrow question at issue here has a clear answer:  Cadence accounted for this transaction just as Alaska Electrical says it should have, and so partial summary judgment is appropriate on this point.

Once the FAC is stripped of the false Nvidia-related allegations, it does not plead scienter any better than the Consolidated Complaint that the Court dismissed, and thus judgment on the pleadings should be granted.  Alaska Electrical cannot file a baseless complaint, easily demonstrated to be false on a fundamental point, to pass the pleading hurdles of Rule 9(b) and the PSLRA.  To do so would allow an improper end run around the statute.  *In re The Clorox Co. Sec. Litig.*, 238 F. Supp. 2d 1139,

1143 (N.D. Cal. 2002), *aff'd sub nom. Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125 (9th Cir. 2004); *see also SG Cowen Sec. Corp. v. United States Dist. Ct.*, 189 F.3d 909, 911 (9th Cir. 1999). The FAC should be dismissed with prejudice.

## II. Argument

### A. There Is No Genuine Issue Of Material Fact: Cadence Did Not Restate Revenue On An Nvidia Agreement As The First Amended Complaint Alleges.

This Court has set out the framework for dealing with a motion for partial summary judgment in a securities case. *Clorox*, 238 F. Supp. 2d at 1141-42. The moving party's burden is discharged upon a showing that there is no genuine evidence to support the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Partial summary judgment is appropriate where the nonmoving party then fails to show particular facts that raise a genuine issue of fact on the claim challenged. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 323-24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims . . . .").

Alaska Electrical says that the *Clorox* and *Heliotrope* decisions Cadence cited do not apply here, because the fact questions in those cases were "relatively straightforward" questions of whether there was a material misstatement or omission. Opp. at 3-4, 6-7. But it is just as "straightforward" for this Court to determine on the facts presented that there was no restatement of revenue from the contract with Nvidia, and thus no scienter arising from that contract. And without a showing of scienter, the Nvidia-related claims must fail. *Heliotrope General Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999) (granting judgment on the pleadings on scienter grounds).

#### 1. John Wall's Declaration More Than Adequately Establishes That The Q2 2008 Nvidia Transaction Accounting Was Not Restated.

Alaska Electrical suggests that it is difficult to prove the truth: Cadence did not recognize $12 million in "up front" revenue on the Q2 Nvidia transaction, and this transaction was not later restated. But John Wall's testimony easily demonstrates that the restated Q2 agreement involved a different Cadence customer and that ***no revenue was recognized*** in Q2 2008 in connection with the referenced Nvidia agreement. *See* Supplemental Declaration of John Wall in Support of Defendants' Motion for Summary Judgment and Judgment on the Pleadings ("Wall Decl.") ¶ 7. The documents attached in support of Alaska Electrical's Rule 56(f) Motion and Opposition demonstrate that while

Cadence did return $6.9 million to Nvidia in the second quarter, "Cadence deferred revenue on an nVidia hardware agreement because it constituted part of a multiple element arrangement with another hardware transaction that remained undelivered [as of July 21, 2008]." Declaration of Shawn Williams ("Williams Decl."), Ex. 14 at 3. Far from *overstating* revenue on this transaction, as Alaska Electrical concedes and Mr. Wall confirms in his supplemental declaration, "Cadence inadvertently neglected to reverse a $2.4 million cost associated with Nvidia." Opp. at 25; Wall Decl. ¶ 9. That error, which was immaterial to Cadence's financial statements, had the effect of *understating* (rather than *overstating*) Cadence's earnings. Wall Decl. ¶ 9.

Faced with an unambiguous declaration under oath, Alaska Electrical grasps at straws. It says Mr. Wall's declaration has "insufficient foundation" because it "makes no mention of Generally Accepted Accounting Principles (GAAP) in the United States or his familiarity with said procedures" and notes that Mr. Wall's education began in Ireland. Opp. at 15. But Mr. Wall testified that "I personally review and oversee the accounting for all revenue recognized at Cadence throughout each quarter and at quarter-end and year-end." Wall Decl. ¶ 3. He testified that he "implemented the revised revenue accounting reflected in Cadence's restatement of its Forms 10-Q for the first and second quarters of 2008, as announced on December 10, 2008." *Id.* at 4. Mr. Wall testified that he has been "a Fellow of the Association of Chartered and Certified Accountants ('A.C.C.A.')" since 1997. *Id.* at ¶ 2. Mr. Wall offers proper foundation for his testimony, which proves that the restated Q2 agreement was not with Nvidia.[1] Unlike Alaska Electrical's CW15, a former director in sales who reported to a sales vice president (FAC ¶ 41(o)), Mr. Wall is Vice President of Worldwide Revenue Accounting, the person who oversees revenue recognition accounting; he has personal knowledge of what he testifies to.

Furthermore, Wade Loo, the KPMG engagement partner involved in Cadence's 2008 audit

---

[1] In an abundance of caution and to remove a spurious issue, Mr. Wall submits a supplemental declaration with this motion that sets out his familiarity with U.S. GAAP. Wall Decl. ¶ 2. In addition, Alaska Electrical argues that Mr. Wall's initial declaration should have declared that it was made under penalty of perjury "under the laws of the United States of America" because he was in Ireland when he signed it. Opp. at 15. This oversight is easily corrected in his supplemental declaration. Indeed, had Mr. Wall been in San Jose, California, when he signed the declaration, Alaska Electrical would have no complaint. 28 U.S.C. § 1746.

and restatement testified that, based on his personal knowledge, the restated Q2 agreement was with a customer other than Nvidia.[2] Declaration of Wade Loo ¶¶ 1-3. And the documents Plaintiff submits support Defendants' motion. *See*, *e.g.*, Williams Decl., Ex. 14 at 3 ("At the end of the second quarter of 2008, Cadence deferred revenue on an nVidia hardware agreement because it constituted part of a multiple element arrangement with another hardware transaction that remains undelivered.").

### 2. Plaintiff Raises No Genuine Dispute Of Material Fact On The Question At Issue.

Having established that the Q2 Agreement did not involve Nvidia and that Cadence did not restate product revenue from an agreement with Nvidia, the burden shifts to Alaska Electrical to come forward with competent evidence that demonstrates that there is a genuine issue of fact. *Celotex*, 477 U.S. at 323-24. Alaska Electrical has submitted no such evidence.

Nothing in the documents attached to the Williams Declaration indicates that revenue from the Nvidia contract was restated or recognized before Q2 2009. At best, Alaska Electrical points to two documents that contain preliminary discussions regarding revenue for an agreement with Nvidia in Q2 2008, rather than its final treatment. Williams Decl., Exs. 13 & 29. Although, as Mr. Wall explains in his supplemental declaration, there were discussions regarding whether the accounting rules allowed Cadence to recognize the payments it had received from Nvidia as revenue, no revenue related to that transaction was published in Cadence's financial statements until Q2 2009. Wall Decl. ¶ 8, 10; *see also* Williams Decl., Ex. 14 at 3. Alaska Electrical's partial quotations do not hide the obviously preliminary nature of the revenue discussions. Williams Decl., Ex. 13 at 2; Ex. 29.[3]

When these mischaracterizations are put aside, it is plain that no revenue was recognized pursuant to the Q4 2007 multiple element arrangement with Nvidia in Q2 2008. Wall Decl. ¶ 8. The Q2 Nvidia revenue accounting was not subsequently restated. *Id.* ¶ 7. No elaborate evidentiary showing must be made to prove something that did not happen, and Alaska Electrical cannot resist Defendants' motion based on mischaracterizations of documents and bare speculation.

---

[2] Alaska Electrical argues inexplicably that KPMG has "joined" in Defendants' motion. Opp. at 11. KPMG is not a defendant in this case and did not join any Cadence motion.

[3] Likewise, the email referencing "revenue jail" in Exhibit 12 clearly involves an employee complaining that Nvidia revenue is *not* being recognized. Williams Decl., Ex. 12.

### B. Alaska Electrical's Request For A Continuance Under Rule 56(f) Should Be Denied.

The Rule 56(f) request is a red herring. Alaska Electrical argues for broad discovery to prove violations unrelated to the Nvidia transaction accounting, but accounting for that transaction is the *only* subject of Defendants' Motion for Partial Summary Judgment. Alaska Electrical's Rule 56(f) request would have weight if Defendants had brought a broad motion for summary judgment, but Defendants' motion is a rifle shot at allegations about one transaction.

This Court recently explained that a Rule 56(f) application should be denied unless it can "'show (1) that [it has] set forth in affidavit form the specific facts that [it] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion.'" *Cadsoft v. Riverdeep*, *LLC*, 2007 WL 1462394, at *3 (N.D. Cal. 2007) (*quoting State of Calif. ex rel. Calif. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)). Alaska Electrical's Rule 56(f) application must be denied, and Defendants' motion decided, if the additional discovery sought will not "shed any light on any of the issues" relevant to the partial summary judgment motion. *Qualls v. Blue Cross of Calif.*, *Inc.*, 22 F.3d 839, 844 (9th Cir. 1994); *Bank of America*, *NT & SA v. Pengwin*, 175 F.3d 1109, 1118 (9th Cir. 1999); *Papa John's Int'l*, *Inc. v. Entertainment Publications*, *LLC*, 2010 WL 333709, at *3-*4 (W.D. Ky. 2010). The Rule 56(f) continuance must be denied if Alaska Electrical "has failed diligently to pursue" the discovery necessary to respond to Defendants' motion. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

#### 1. Alaska Electrical Has Not Identified Additional "Essential" Discovery It Needs.

"The burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, *and that it would prevent summary judgment*." *Chance*, 242 F.3d at 1161 n.6 (emphasis added). It is not sufficient to point to categories of discovery that have nothing to do with the instant motion. *See Family Home & Fin. Center*, *Inc. v. Federal Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Rather, plaintiff must "explain how any additional discovery will reveal the *essential facts necessary to resist*" Defendants' motion.[4] *Cadsoft*, 2007 WL

---

[4] Plaintiff is wrong to suggest that their Rule 56(f) application should be granted solely because discovery has only been ongoing for a short time. The issue is not the length of discovery, but
[Footnote continued on next page]

1462394, at *3 (emphasis added).

The sole issue presented by Defendants' motion is whether Cadence recognized $12 million in "up front" revenue on an Nvidia transaction in the second quarter of 2008 and later restated it. To succeed on its Rule 56(f) request, Alaska Electrical must "explain how a continuance would [allow it] to produce evidence" regarding this issue in particular. *Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100-01 (9th Cir. 2006). While it generically claims that it "need[s] more discovery to fully address the factual issues raised in defendants' motion" (Williams Decl. ¶ 39), it nowhere explains *what* additional discovery would contradict the evidence Defendants present.

Cadence has produced thousands of pages of documents bearing on this issue. It provided detail on the actual transactions it had during late 2007 and the first half of 2008 with Nvidia. It provided the unequivocal testimony of John Wall, the person who made the revenue recognition decisions: "no revenue was recognized pursuant to that arrangement [with Nvidia] until the second quarter of 2009," and instead "[r]evenue was delayed in connection with that arrangement, because one element of the arrangement was not delivered until June 2009."[5] Defendants offered to make Mr. Wall available for deposition in the Bay Area on an expedited schedule, but the offer was spurned. Declaration of Ethan Dettmer in Support of Reply on Motion for Partial Summary Judgment and for Judgment on the Pleadings and Opposition to Alaska Electrical Pension Fund's Rule 56(f) Motion ("Dettmer Decl.") ¶ 6.

Instead, Alaska Electrical lists documents relevant only to *other*, often irrelevant, issues. *See*, *e.g.*, Williams Decl. ¶¶ 39-41. For example, Alaska Electrical complains that Defendants "did not produce any documents from the files of the individuals specifically alleged to have been involved in the negotiation and renegotiation of the Nvidia transaction." Williams Decl. ¶ 39. But regardless of

---

[Footnote continued from previous page]
whether there has been sufficient time for discovery necessary to respond to the motion for summary judgment. The Ninth Circuit has affirmed denials of Rule 56(f) applications even where the discovery period is short. *See Nicholas v. Wallenstein*, 266 F.3d 1083, 1088-89 (9th Cir. 2001); *Continental Maritime of San Francisco, Inc. v. Pacific Coast Metal Trades Dist. Council, Metal Trades Dept.*, 817 F.2d 1391, 1395 (9th Cir. 1987). Moreover, Alaska Electrical refused a reasonable extension of time. Dettmer Decl. ¶ 5-6.

[5] That testimony was corroborated by the engagement partner at Cadence's outside auditor, who supplied a Declaration that the restated transaction was "not with Nvidia." Loo Decl. ¶ 4.

how the Nvidia agreement was negotiated or renegotiated, the only question relevant to this motion is whether Cadence recognized revenue from the Nvidia transaction improperly or restated that revenue. Alaska Electrical's irrelevant showing is insufficient, because Alaska Electrical cannot and does not show how the discovery it purportedly needs would "preclude[] summary judgment." *See Chance*, 242 F.3d at 1161 n.6; *see also National Airmotive Corp. v. Cohen*, 1999 WL 102035, at *5 (N.D. Cal. 1999) (denying 56(f) motion because the "information sought by Plaintiff, even if it supports Plaintiff's arguments, will not overcome" defendant's basis for summary judgment).

Just as in this Court's decision in *Cadsoft*, Alaska Electrical's Rule 56(f) request should be denied because it "has not asserted that documents demonstrating [that second quarter revenue from the Nvidia transaction was restated] exist." *Cadsoft*, 2007 WL 1462394, at *3.

### 2. Alaska Electrical Has Not Diligently Pursued—Indeed It Has Resisted—Discovery Relevant To This Motion.

Alaska Electrical has deliberately refused to engage in discovery relevant to this motion, although it concedes that where a party has not "diligently pursued its previous discovery opportunities," a Rule 56(f) application may be denied. Opp. at 5:19-20; *Chance*, 242 F.3d at 1161 n.6; *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523-24 (9th Cir. 1989). Alaska Electrical's counsel's sworn statement that Alaska Electrical has "not had an opportunity to take depositions of any of the key individuals" is simply not true. Williams Decl. ¶ 9. Alaska Electrical *refused* to take the deposition of John Wall, even though Defendants have offered since May 13 to make Mr. Wall available for deposition as soon as possible, and even though Mr. Wall knows the facts relevant to this motion. Dettmer Decl. ¶ 6. Alaska Electrical simply chose not to take his deposition. This profound lack of diligence supports denial of Alaska Electrical's Rule 56(f) application and ruling on Defendants' motion. *See Nidds v. Schindler Elevator*, 113 F.3d 912, 920-21 (9th Cir. 1997); *Nicholas*, 266 F.3d at 1088-89.

Similarly, Defendants offered to continue this motion for a reasonable period of time in the event Alaska Electrical thought it needed additional time to engage in discovery. Dettmer Decl. ¶ 5. Alaska Electrical declined this offer, instead demanding withdrawal of the motion or an indefinite continuance. *Id.*

It is evident why Alaska Electrical refuses to engage in this discovery: it does not want the truth established. No second quarter 2008 "up front" revenue from Nvidia was restated, and either Alaska Electrical's confidential witnesses lacked personal knowledge or supplied Alaska Electrical's lawyers with false information. If Alaska Electrical can ignore the true facts, it believes it can prolong this case. But that is not how Rule 56(f) works. "The mere hope that further evidence may develop prior to trial is an insufficient basis for a continuance." *Continental Maritime of San Francisco*, *Inc. v. Pacific Coast Metal Trades Dist. Council*, *Metal Trades Dept.*, 817 F.2d 1391, 1395 (9th Cir. 1987). This Court can and should rule on Defendants' motion now.

### 3. Defendants Have Not "Stonewalled" Discovery—They Produced And Made Available Early Discovery Regarding The Motion.

Contrary to Alaska Electrical's repeated statements, Defendants have complied fully with their discovery obligations and orders of this Court. Alaska Electrical states that despite this Court's "crystal clear orders, as of 6:00 p.m., June 4, 2010, Cadence has yet to provide a shred of evidence in response to Alaska Electrical's document requests, 30(b)(6) deposition notice or interrogatories. Nothing." Opp. at 7:24-8:1. But Defendants *have* produced documents (some of which Alaska Electrical submitted to the Court in support of its Opposition), and as of June 4, 2010, *Defendants' discovery responses were not yet due*.[6] Defendants served timely responses to Alaska Electrical's discovery demands, in keeping with this Court's direction, and produced documents bearing on this motion well *before* they were due.

By the time Alaska Electrical filed its motion, Defendants had produced over 1,200 documents responsive to Alaska Electrical's document requests, and have produced 3,864 documents since then. Dettmer Decl. ¶¶ 3-4. Although Defendants were not obligated to begin producing documents until June 7, and the massive quantities of documents requested will require rolling production of documents, Defendants voluntarily produced documents *early*, prioritizing those documents relevant to these issues. *Id.* at 2. Although Alaska Electrical did not request his deposition, on May 13 and repeatedly thereafter, Defendants offered John Wall for deposition on the

---

[6] Alaska Electrical says that Defendants' document production was due on June 4, but because they were served electronically, Defendants' responses were due on June 7 and 9. Fed. R. Civ. P. 6(d).

1 revenue accounting for the Nvidia transaction alleged by Alaska Electrical. Alaska Electrical refused to take his deposition. *Id.* at 6. Defendants offered Alaska Electrical a reasonable extension of time to take the necessary discovery and respond to the motion. *Id.* at 5. Alaska Electrical spurned that offer too.

Thus the discovery Defendants have provided and offered to date includes substantial discovery relevant to the narrow issue raised by Defendants' motion: Did Cadence recognize $12 million in "up front" revenue on an Nvidia transaction in the second quarter of 2008 and later restate it? Defendants have produced discovery on the accounting details of the Nvidia transaction, the revenue associated with it, and whether and how such revenue was recognized in the second quarter of 2008. These documents all come from the files of Cadence accounting personnel—the people who know the relevant facts regarding revenue recognition and revenue restatement. Alaska Electrical's willful blindness to this discovery cannot give it a pass to escape Defendants' motion.

**C. Without The False Nvidia Allegations, Alaska Electrical's First Amended Complaint Insufficiently Pleads Scienter Under Rule 9(b) And The PSLRA.**

As the Court noted in its March 2, 2010 Order [Dkt #71] dismissing Defendants' motion to dismiss (the "March 2, 2010 Order"), "[n]o single new allegation in the FAC constitutes a 'smoking gun' that, taken alone, supports a strong inference of scienter." *Id*. at 6. Instead, it required a combination of allegations to overcome the PSLRA's pleading hurdle. Stripped of the false allegations regarding one of only two transactions Alaska Electrical alleged was incorrectly accounted for, the FAC's allegations are insufficient, and Defendants are entitled to judgment on the pleadings.

Even after a motion to dismiss is denied, the Court can grant a motion on the pleadings where it becomes apparent that the complaint fails to "state facts that create a strong inference of the required degree of intent" under the PSLRA. *Heliotrope*, 189 F.3d at 979-80. Realizing that its core allegations regarding the Q2 2008 Agreement have been exposed as false, Alaska Electrical makes four arguments to avoid judgment on the pleadings on what remains of its complaint.

*First*, it argues incorrectly that the discovery provided shows that the Nvidia transaction was restructured and revenue was recognized up front, which would support Alaska Electrical's theory

that Cadence had a secret practice of restructuring contracts improperly. As discussed above, that is incorrect.[7]

*Second*, Alaska Electrical contends that, even if the Nvidia allegations in the FAC are false, it should survive judgment on the pleadings because the March 2, 2010 Order did not rely on those false Nvidia allegations. But the March 2, 2010 Order shows that Alaska Electrical's factually inaccurate Nvidia allegations were essential to the conclusion that the FAC sufficiently plead scienter under the PSLRA. As the Court stated in its September 11, 2009 Order [Dkt #48] granting Defendants' motion to dismiss (the "September 11, 2009 Order"), reliance on broad allegations related to restatements of financials and restructuring of contracts is insufficient. Dkt #48 at 15. Where, as here, a complaint fails adequately to plead scienter under Rule 9(b) and the PSLRA, it must be dismissed.

*Third*, Alaska Electrical claims that even if its Nvidia allegations are excised from the FAC, it still meets the PSLRA's pleading standards because Cadence restated its financials in 2008. This Court has already recognized that a financial restatement is not sufficient on its own to plead scienter. *Id.* Instead, Alaska Electrical must make specific allegations indicating that Defendants knew accounting determinations were incorrect when made. *Id.* at 16. When the Nvidia allegations are stricken from the FAC, it fails to "bridge the gap" between Defendants, senior members of Cadence management, and contemporaneous knowledge of any improper accounting.

*Fourth*, Alaska Electrical tries to resurrect its now discredited Nvidia allegations and repackage them as general scienter evidence implicating Defendants in accounting decisions regarding the Q2 agreement that was actually restated. Such speculative, non-specific claims were precisely the sort the Court rejected in its September 11, 2009 Order. *Id*. at 18-26. The inescapable reality is that the FAC, without its false scienter allegations regarding the Nvidia agreement, is now as inadequate under the PSLRA as was the Consolidated Complaint dismissed by the Court.

### 1. But For Alaska Electrical's False Representations To The Court, Its First Amended Complaint Should Have Been Dismissed.

---

[7] Alaska Electrical colorfully contends that the motion for partial summary judgment "is truly a sideshow which cannot defeat plaintiffs' securities fraud claims, even if it were factually correct." Opp. at 25.

Alaska Electrical claims that the Court's March 2, 2010 Order did not rely on false allegations about restatement of the Q2 2008 Nvidia transaction, but those false allegations were essential to Plaintiff's efforts to address the scienter flaws identified in the Court's September 11, 2009 Order.

The Court dismissed the Consolidated Complaint because it failed to "specifically tie[] any Defendant to the accounting determinations at issue." Dkt #48 at 18. The Court noted that Alaska Electrical did not "provide any concrete allegations that Individual Defendants actually knew about the accounting errors [about the recognition of revenue up front], or that they were familiar with the key details of [the relevant customer agreements], such that they could have identified them as subscription contracts." *Id.* at 20. It concluded that the Consolidated Complaint's scienter allegations were "fatally undermined by Plaintiffs' inability to connect any of the Individual Defendants, or any particular person at Cadence, with the 1Q and 2Q agreements, except in remote or speculative ways that may or may not have entailed knowledge of the specific facts that rendered the accounting classifications incorrect." *Id.* at 20, 25. This left "a gap" that Alaska Electrical provided "little more than motive and opportunity to bridge." *Id.* at 25.

In responding to the Court's concerns about scienter, Alaska Electrical embraced as crucial the new allegations about Nvidia that it now downplays:

> In the [September 11, 2009] Order, the Court asked for concrete allegations that defendants "were familiar with the key details of the 1Q or 2Q agreements" to support a strong inference of scienter. The new allegations in the FAC concerning the 2Q08 restated Nvidia transaction provide just that.

Opposition to Defendants' Motion to Dismiss First Amended Complaint [Dkt #62] at 13. The Court's order relied on these new allegations in concluding that Alaska Electrical satisfied the PSLRA's heightened pleading standards, and in particular the claim that "the FAC identifies Nvidia as the client involved in the 2Q agreement." Dkt #71 at 4.

Alaska Electrical emphasizes the Court's statement that "[n]o single new allegation in the FAC constitutes a 'smoking gun' that, taken alone, supports a strong inference of scienter," as if that somehow makes its pleading stronger. Opposition at 3. But the March 2, 2010 Order identified many Nvidia-specific facts that, "when considered together," indicated that "the inference of fraud or reckless conduct is at least as likely as the inference of negligence or innocent mistake." Dkt #71 at

6. For instance, the Court found that, unlike the Consolidated Complaint, the FAC "ties Bushby—one of Cadence's executive officers—directly to the 2Q agreement" (Dkt #71 at 6), based on CW15's purported statements and the "level of detail" they provided, which, "coupled with the coherence and plausibility of [CW15's] allegations, provide an adequate basis for the reliability at this stage of the litigation." *Id.* But the key details alleged by CW15 have now been shown to be false. When the false claims about the Q2 agreement are excised from the FAC, the remaining facts do not meet the PSLRA's heightened pleading requirements for any claims. *See* Dkt #84 (Defendants' Motion for Partial Summary Judgment And For Judgment On The Pleadings).

### 2. Restatement Of Financial Statements Is Insufficient To Meet Alaska Electrical's Scienter Pleading Burden Under The PSLRA.

Alaska Electrical tries to avoid dismissal by claiming that, because Cadence restated its financial statements, Alaska Electrical is no longer required to plead scienter. But the Court already held that the mere restatement of financials was not sufficient to meet Alaska Electrical's burden of adequately pleading scienter: "[T]he Ninth Circuit has repeatedly held that 'the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter.'" Dkt #48 at 15-16. The Court's conclusion is consistent with Ninth Circuit law that, "[i]n general, the mere publication of a restatement is not enough to create a strong inference of scienter." *Zucco Partners*, *LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009); *see also Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir. 1996) (citation omitted). Instead, the Court held that "Plaintiffs must plead facts that suggest that Defendants were aware that it was inappropriate to classify the 1Q and 2Q agreements as term licenses." Dkt #48 at 16. In reference to the Q2 agreement, the Court held that "Plaintiffs must allege facts that Defendants knew (or at least suspected) that the licensee intended to retain certain rights to use future technology, which it had enjoyed under a subscription licenses that it simultaneously cancelled." *Id.* Without the false claims about Defendants' purported "knowledge" of a fictional restated Nvidia transaction, the FAC contains no allegations that Defendants were aware of any improper accounting related to the Q2 Agreement that was actually restated. Alaska Electrical is now in the same position regarding its scienter allegations for the Q2 agreement as it was when its Consolidated Complaint was dismissed by the Court.

### 3. Allegations About Attempts To Restructure Contracts That Are Not Alleged To Violate GAAP Are Not Relevant To Alaska Electrical's Pleading Burden.

Alaska Electrical claims that its previous Nvidia allegations somehow allege scienter generally, even if they are materially wrong. It claims that, because Defendants may have had knowledge of the negotiations over the Nvidia agreement—an agreement that was accounted for as Alaska Electrical says it should have been[8]—they must have known about the accounting of the Q2 agreement that was restated, because of a practice of being involved in large transactions and attempting to restructure contracts. But the FAC contains no allegations showing Cadence senior management had any knowledge that any accounting decision about the restated contracts was incorrect when made. A motion for judgment on the pleadings must be evaluated using the facts as alleged in the complaint—not some hypothetical set of facts that might potentially be alleged.

### D.   The Remainder Of Alaska Electrical's Argument Is Irrelevant.

Recognizing that, without its false claims, the FAC lacks plausible scienter allegations, Alaska Electrical makes scattershot arguments based on stray documents it believes generally support its claims. Not one of these documents contradicts Mr. Wall's testimony that no revenue from an Nvidia agreement was restated. This sideshow should not distract the Court from the narrow issue presented.

#### 1.   The Nvidia Allegations Are Irrelevant To Plaintiff's Complaint.

Alaska Electrical argues that, even if CW15 was wrong in claiming that an Nvidia agreement was restated, the Court should still credit his supposed statements as a basis for the Court to infer scienter. Opposition at 16-18. This reasoning is faulty for two reasons. *First*, any defendant's involvement in an agreement *that was properly accounted for* is irrelevant to any claim of scienter in connection with financial statements that were subsequently restated. *Second*, the credibility of CW15's purported statements is hopelessly undermined by his misidentification of the contract at issue in the restatement. Courts properly consider inconsistent, inaccurate, or unreliable allegations

---

[8] This Court noted that "there would be nothing wrong with renegotiating an agreement in order to alter its accounting treatment, so long as the form and substance of the agreement is successfully renegotiated. If this was the purpose of the 1Q and 2Q agreement negotiations, this is not, in and of itself, indicative of fraud." Dkt #48 at 15.

of confidential witnesses in assessing whether a plaintiff has adequately pled scienter under the PSLRA.  *See Horizon Asset Mgmt v. H&R Block*, *Inc.*, 580 F.3d 755, 764 (8th Cir. 2009); *see also In re Downey Sec. Litig.*, 2009 WL 2767670, at *9-11 (C.D. Cal. Aug. 21, 2009); *Campo v. Sears Holding Corp.*, __ F.3d __, 2010 WL 1292329, at *3 n.4 (2d Cir. Apr. 6, 2010).

Plaintiff's scienter allegations are not supported by an alleged restructuring where no revenue was recognized in connection with that restructuring.  And Plaintiff has alleged no facts showing that any member of Cadence senior management was contemporaneously aware of the facts that led to the restatement of the accounting for the actual Q2 agreement that was subsequently restated.

### 2. The Proffered Documents Do Not Show That Nvidia Revenue Was Restated.

Alaska Electrical claims that certain documents are evidence that various defendants were involved in high level revenue recognition decisions.  But this does not "bridge the gap" between Defendants and knowledge of any accounting misstatements at the time made.  Nothing in these documents indicates that any Defendant or other member of senior management knew that the accounting for the Q1 or Q2 agreements was improper when first published.  Instead, Alaska Electrical again returns to arguing that "Bushby was involved in negotiating and structuring deals, and in particular all deals above $5 million."  Opposition at 18.  As the Court has already held, management's involvement at some level does not show scienter.  Dkt #48 at 25.  Indeed, the involvement of any Defendant in reviewing Cadence's accounting is a far cry from an inference that that Defendant was aware at the time of facts indicating that any particular transaction was misstated.  Dkt #71 at 5.

### 3. Alaska Electrical's Arguments Regarding Renegotiation Of Contracts Are Incorrect And Irrelevant.

Alaska Electrical claims that the Nvidia negotiation was an example of a broader practice of renegotiating contracts to recognize revenue up front and therefore supports its claims.  But this argument ignores the fact that *no revenue was recognized* "because one element of the arrangement was not delivered until June 2009."  Wall Decl. ¶ 8.  Unsurprisingly, Cadence had internal discussions about how and when revenue should be recognized for the relevant agreements according to the accounting rules, but no revenue from Nvidia was recognized before the actual product was

1    delivered, just as Alaska Electrical claims should happen.  Wall Decl. ¶¶ 8, 10.

2          Moreover, as the Court has recognized, there is nothing wrong with restructuring an agreement, provided the accounting treatment is consistent with GAAP.  Dkt #48 at 15-16.  To the extent Alaska Electrical now argues that the restructuring itself was somehow improper, it is wrong.  *See Provenz*, 102 F.3d at 1487; *see also In re Westinghouse Sec. Litig.*, 90 F.3d 696, 712 (3d Cir. 1996).  Alaska Electrical cannot show that Cadence failed to comply with GAAP in its accounting for the Nvidia transaction or that it misled investors with regard to any restructuring of the Nvidia contract.  Indeed, Cadence's public filings disclose that customer contracts were restructured.  *See*, *e.g.*, Dkt #40-7 [2007 Form 10-K] at 70 ("In the event that a subscription license arrangement is terminated by mutual agreement and a new term license arrangement is entered into either concurrently with or subsequent to the termination of the subscription license arrangement, the revenue associated with the new term license arrangement is recognized upon the later of the effective date of the arrangement or delivery of the software product, assuming all other criteria in SOP 97-2 have been met."); *id*. at 11; *see also* Dkt #40-15 [Q1 2008 Form 10-Q] at 18, 38; Dkt #40-25 [Q2 2008 10Q] at 23, 46.  In short, Alaska Electrical's attempt to paint restructured transactions as improper lacks any legal or factual basis.

### III.   Conclusion

In order to clear the PSLRA's high pleading bar, Alaska Electrical made false allegations in the FAC.  Allowing such circumvention of the PSLRA's pleading standards invites an end run around the statute.  Without the false Nvidia allegations, the FAC does not plead scienter sufficiently to avoid dismissal under Rule 9(b) and the PSLRA.  The FAC should be dismissed with prejudice.

DATED:  June 11, 2010                                GIBSON, DUNN & CRUTCHER LLP

By:   /s/ Ethan D. Dettmer
        Ethan D. Dettmer

Attorneys for Defendants

CADENCE DESIGN SYSTEMS, INC., MICHAEL J. FISTER, KEVIN S. PALATNIK, WILLIAM PORTER, and KEVIN BUSHBY

100881406_8.DOC