1   ROBBINS GELLER RUDMAN
        & DOWD LLP
2   SHAWN A. WILLIAMS (213113)
    JASON C. DAVIS (253370)
3   DANIEL J. PFEFFERBAUM (248631)
    Post Montgomery Center
4   One Montgomery Street, Suite 1800
    San Francisco, CA 94104
5   Telephone: 415/288-4545
    415/288-4534 (fax)
6   shawnw@rgrdlaw.com
    jdavis@rgrdlaw.com
7   dpfefferbaum@rgrdlaw.com
        – and –
8   JEFFREY D. LIGHT (159515)
    MAUREEN E. MUELLER (253431)
9   655 West Broadway, Suite 1900
    San Diego, CA 92101
10  Telephone: 619/231-1058
    619/231-7423 (fax)
11  jeffl@rgrdlaw.com
    mmueller@rgrdlaw.com
12
    Lead Counsel for Plaintiffs
13
                    UNITED STATES DISTRICT COURT
14
                NORTHERN DISTRICT OF CALIFORNIA
15

| | |
|---|---|
| 16  In re CADENCE DESIGN SYSTEMS, INC.<br>SECURITIES LITIGATION | )  No. C-08-4966 SC<br>) |
| 17  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯<br>This Document Relates To: | )  CLASS ACTION<br>)<br>)  NOTICE OF UNOPPOSED AMENDED<br>)  MOTION AND UNOPPOSED AMENDED |
| 18  | )  MOTION FOR PRELIMINARY APPROVAL |
| 19      Case Nos. 08-4966 SC, 08-5027 SC<br>      and 08-5273 SC | )  OF CLASS ACTION SETTLEMENT AND<br>)  MEMORANDUM OF POINTS AND |
| 20  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | )  AUTHORITIES IN SUPPORT THEREOF |

21                                          DATE:    November 18, 2011
                                            TIME:    10:00 a.m.
22                                          CTRM:    The Honorable Samuel Conti

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ..................................................................................1

II.  SUMMARY OF LITIGATION ...............................................................................3

III. THE SETTLEMENT .............................................................................................4

IV.  THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
     APPROVED ......................................................................................................6

     A.   The Standards for Judicial Approval of Class Action Settlements.......................6

     B.   Reference to Factors Considered by Courts in Granting Final Approval of
          Class Action Settlements Demonstrate that the Settlement Should Be
          Preliminarily Approved ...............................................................................7

          1.   The Settlement Is the Product of Arm's-Length Negotiations and
               Not the Product of Collusion ................................................................7

          2.   The Extent of Discovery Completed and the Stage of the
               Proceedings...........................................................................................8

          3.   The Recommendations of Experienced Counsel .......................................9

          4.   The Risks of Proving Liability and Damages .............................................9

          5.   The Expense and Likely Duration of Further Litigation .........................10

V.   THE PROPOSED NOTICE PROGRAM IS ADEQUATE AND CONSTITUTES
     DUE AND SUFFICIENT NOTICE UNDER RULE 23, DUE PROCESS, AND
     THE PSLRA .....................................................................................................11

VI.  THE COURT SHOULD CERTIFY THE CLASS ...............................................14

     A.   Standard Applicable to Class Certification...............................................14

     B.   The Settlement Meets the Requirements of Rule 23(a) .........................15

          1.   Rule 23(a)(1): Numerosity ...................................................................15

          2.   Rule 23(a)(2):  Questions of Law or Fact Are Common ....................16

          3.   Rule 23(a)(3): Lead Plaintiff's Claims Are Typical ..............................17

          4.   Rule 23(a)(4): The Lead Plaintiff Is Adequate .....................................18

     C.   The Class Meets the Requirements of Rule 23(b)(3).............................20

          1.   Common Questions of Law or Fact Predominate....................................20

          2.   A Class Action Is a Superior Method of Adjudication ............................20

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC                    - i -

1

Page

D.      Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g).................21

VII.    THE REQUESTED AMOUNT OF ATTORNEYS' FEES ARE REASONABLE..........22

VIII.   PROPOSED SCHEDULE OF EVENTS..........................................................................23

IX.     CONCLUSION................................................................................................................24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

Page

3

**CASES**

4

*Amchem Prods. v. Windsor,*
   521 U.S. 591 (1997)...................................................................................20

*Arnold v. United Artists Theatre Circuit, Inc.,*
   158 F.R.D. 439 (N.D. Cal. 1994)...............................................................15

*Backe v. Novatel Wireless, Inc.,*
   No. 08-CV-01689-H (RBB), 2008 U.S. Dist. LEXIS 100622
   (S.D. Cal. Dec. 10, 2008)...........................................................................19

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975) .....................................................................17

*Class Plaintiffs v. City of Seattle,*
   955 F.2d 1268 (9th Cir. 1992) .....................................................................5

*Desai v. Deutsche Bank Sec. Ltd.,*
   573 F.3d 931 (9th Cir. 2009) .....................................................................21

*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) .........7

*Endo v. Albertine,*
   147 F.R.D. 164 (N.D. Ill. 1993)..................................................................17

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) .................................................................7, 20

*Harris v. Palm Springs Alpine Estates, Inc.,*
   329 F.2d 909 (9th Cir. 1964) .....................................................................15

*In re Adobe Systems, Inc. Sec. Litig.,*
   139 F.R.D. 150 (N.D. Cal. 1991)................................................................14

*In re Apple Computer Sec. Litig.,*
   No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991)................10

*In re Bluetooth Headset Prods. Liab. Litig.,*
   No. 09-56683, 2011 U.S. App. LEXIS 17224 (9th Cir. Aug. 19, 2011) ...........22

*In re Cardinal Health Inc. Sec. Litig.,*
   528 F. Supp. 2d 752 (S.D. Ohio 2007) .......................................................18

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC

- iii -

**Page**

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) .................................................................................19

*In re Cirrus Logic Sec.,*
    155 F.R.D. 654 (N.D. Cal. 1994)..........................................................................15

*In re Computer Memories Sec. Litig.,*
    111 F.R.D. 675 (N.D. Cal. 1986)..........................................................................17

*In re Cooper Cos. Sec. Litig.,*
    254 F.R.D. 628 (C.D. Cal. 2009) ................................................................14, 16, 20

*In re Enron Corp. Sec. Litig.,*
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................................18

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
    No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) .........................9

*In re JDS Uniphase Corp. Sec. Litig.,*
    No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...........10

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) ........................................................................7, 8, 9, 10

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
    No. 1023, 1997 U.S. Dist. LEXIS 20835 (S.D.N.Y. Dec. 31, 1997).....................2, 6

*In re Surebeam Corp. Sec. Litig.,*
    No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Jan. 5, 2004)............17

*In re Syncor ERISA Litig.,*
    227 F.R.D. 338 (C.D. Cal. 2005) ..........................................................................17

*In re THQ Inc. Sec. Litig.,*
    No. CV 00-1783AHM (EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002).........14

*In re Tyco Int'l, Ltd.,*
    535 F. Supp. 2d 249 (D.N.H. 2007)........................................................................9

*In re Veeco Instruments Inc. Sec. Litig.,*
    No. 05 MDL 0165 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ................10

*In re Verisign, Inc. Sec. Litig.,*
    No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005).....................14

1

2                                                                          **Page**

3   *In re Warner Commc'ns Sec. Litig.,*
        618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ..................10

4
    *In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
5       720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom.*
        *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................9
6
7   *Lerwill v. Inflight Motion Pictures, Inc.,*
        582 F.2d 507 (9th Cir. 1978) ...................................................................................18
8
    *Linney v. Cellular Alaska P'ship,*
9       No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997),
        *aff'd,* 151 F.3d 1234 (9th Cir. 1998).........................................................................6
10
11  *McPhail v. First Command Fin. Planning, Inc.,*
        247 F.R.D. 598 (S.D. Cal. 2007) ..............................................................................21
12
13  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
        221 F.R.D. 523 (C.D. Cal. 2004) ................................................................................9
14
    *Negrete v. Allianz Life Ins. Co. of N. Am.,*
15      238 F.R.D. 482 (C.D. Cal. 2006) ..............................................................................20
16  *Officers for Justice v. Civil Serv. Comm'n,*
        688 F.2d 615 (9th Cir. 1982) .............................................................................. *passim*
17
18  *Paul, Johnson, Alston & Hunt v. Grautly,*
        886 F.2d 268 (9th Cir. 1989) .....................................................................................22
19
    *Perez-Funez v. Dist. Dir., I.N.S.,*
20      611 F. Supp. 990 (C.D. Cal. 1984) ...........................................................................15
21  *Powers v. Eichen,*
        229 F.3d 1249 (9th Cir. 2000) ...................................................................................22
22
    *Pub. Emps. Ret. Sys. v. Merrill Lynch & Co.,*
23      No. 08 Civ. 10841 (JSR) 2011 U.S. Dist. LEXIS 93222 (S.D.N.Y. Aug. 22, 2011) ...............16
24  *Robbins v. Koger Props.,*
        116 F.3d 1441 (11th Cir. 1997) .................................................................................11
25
    *Rodriquez v. W. Publ'g Corp.,*
26      563 F.3d 948 (9th Cir. 2009) ......................................................................................7

27

28

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR   - v -
         PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC

**Page**

*Sanders v. Robinson Humphrey/American Express,*
    634 F. Supp. 1048 (N.D. Ga. 1986), *aff'd in part and rev'd in part on*
    *other grounds sub nom. Kirkpatrick v. J.C. Bradford & Co.,*
    827 F.2d 718 (11th Cir. 1987) ..................................................................17

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ...................................................................16

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ...........................................................7, 22, 23

*Util. Reform Project v. Bonneville Power Admin.,*
    869 F.2d 437 (9th Cir. 1989) .....................................................................6

*Wal-Mart Stores, Inc. v. Dukes,*
    __ U.S. __, 131 S. Ct. 2541 (2011)......................................................16, 17

*Yamner v. Boich,*
    No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849 (N.D. Cal. Sept. 15, 1994) .................15


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4 ...........................................................................................11, 13, 19
    §78u-4(a)(3)(B)(i).....................................................................................19
    §78u-4(a)(7) .............................................................................................13

Federal Rules of Civil Procedure
    Rule 23 ....................................................................................14, 15, 20
    Rule 23(a)...................................................................................15, 21
    Rule 23(a)(1) ...........................................................................................15
    Rule 23(a)(2) ...........................................................................................16
    Rule 23(a)(3) ...........................................................................................17
    Rule 23(a)(4) ...........................................................................................18
    Rule 23(b) ...............................................................................................21
    Rule 23(b)(3).....................................................................................19, 20
    Rule 23(b)(3)(A) .....................................................................................21
    Rule 23(b)(3)(B) .....................................................................................21
    Rule 23(b)(3)(C) .....................................................................................21
    Rule 23(b)(3)(D) .....................................................................................21
    Rule 23(c)(2) ...........................................................................................13
    Rule 23(e)........................................................................................1, 6, 11
    Rule 23(e)(1) ...........................................................................................11

652094_1

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC

- vi -

**Page**

Rule 56(f)...........................................................................................................4
Rule 23(g) ........................................................................................................21
Rule 23(g)(1).....................................................................................................21

**LEGISLATIVE HISTORY**

H.R. Conf. Rep. No. 104-369 (1995)............................................................19

**SECONDARY AUTHORITIES**

5 James Wm. Moore, *Moore's Federal Practice* (3d ed. 2010)
§23.165[2]......................................................................................................6
§23.165[3].....................................................................................................11

Dr. Jordan Milev, Robert Patton, and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2011 Mid-Year Review, Filings on the Rise but Settlement Amounts Decline, Ratio of Settlement to Investor Losses is at Record Low* (NERA July 2011) ................22

*Manual for Complex Litigation* (4th ed. 2004)
§13.14............................................................................................................2
§21.632..........................................................................................................6

652094_1

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR   - vii -
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC

1  TO:    ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

2         PLEASE TAKE NOTICE that on November 18, 2011, at 10:00 a.m., or as soon thereafter as

3  the matter may be heard in the Courtroom of the Honorable Samuel Conti, United States District

4  Judge, at the United States District Court for the Northern District of California, 450 Golden Gate

5  Avenue, San Francisco, CA 94102, Lead Plaintiff Alaska Electrical Pension Fund ("Lead Plaintiff"

6  or "Alaska") will respectfully move, pursuant to Fed. R. Civ. P. 23(e), for entry of the [Proposed]

7  Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order"), submitted

8  herewith, which (i) grants preliminary approval of the proposed class action settlement on the terms

9  set forth in the Stipulation of Settlement dated as of May 31, 2011 ("Stipulation" or "Settlement"),

10 which was previously submitted;[1] (ii) certifies the Class for settlement purposes; (iii) approves the

11 form and manner of giving notice of the proposed Settlement to the Class; and (iv) sets a date for

12 final approval of the Settlement.

13        Lead Plaintiff's motion is based on the Stipulation; the following Memorandum in support

14 thereof; the Declaration of Peter Crudo Regarding Notice Plan ("Crudo Decl."), the Declaration of

15 Shawn A. Williams in Support of Plaintiffs' Unopposed Amended Motion for Preliminary Approval

16 of Class Action Settlement ("Williams Declaration"); the Declaration of Gregory R. Stokes; all of

17 the prior pleadings and papers in this action; and such additional information or argument as may be

18 required by the Court.[2]

19                         **MEMORANDUM OF POINTS AND AUTHORITIES**

20 **I.      PRELIMINARY STATEMENT**

21        Lead Plaintiff submits this Memorandum in support of its motion for an order granting

22 preliminary approval of the proposed Settlement of the Class's claims pursuant to the terms of the

23

24 —————————————————

25 [1]     All capitalized terms not defined herein shall have the same meanings set forth in the
26 Stipulation.

27 [2]     This motion addresses the issues raised by the Court's August 26, 2011 Order Re: Motions
   for Settlement.

28

1   Stipulation, so that notice may be given to Members of the Class.[3]  The Settlement resolves all

2   claims against all Defendants in this Litigation and provides for a cash payment of $38 million plus

3   interest at the rate of 4% per annum from February 21, 2011 until paid into an escrow account.  The

4   Settlement is the result of Lead Plaintiff and its counsel's litigation efforts and extensive arm's-

5   length negotiations among the parties, with the substantial assistance of the Honorable Edward A.

6   Infante, a highly respected retired United States Magistrate Judge with significant experience in the

7   mediation of complex class actions.

8         In determining whether preliminary approval is warranted, the issue before the Court is

9   whether the Settlement is within the range of what might be found fair, reasonable, and adequate, so

10  that notice of the Settlement should be given to Class Members, and a hearing scheduled to consider

11  final settlement approval.  "Where the proposed settlement appears to be the product of serious,

12  informed, non-collusive negotiations . . . and falls within the range of possible approval, preliminary

13  approval should be granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, No. 1023, 1997 U.S. Dist.

14  LEXIS 20835, at *22 (S.D.N.Y. Dec. 31, 1997).[4]  The Court is not required at this point to make a

15  final determination regarding the reasonableness of the Settlement.

16        Lead Plaintiff and its counsel believe that the Settlement easily meets the criteria for

17  preliminary approval and is well within the range of what might be approved as fair, reasonable, and

18  _____

19  [3]      "Class" means for purposes of the Settlement, all Persons (other than those Persons who

20  timely and validly request exclusion from the Class) who purchased Cadence Publicly Traded
    Securities during the period from April 23, 2008 to December 10, 2008, inclusive, excluding the

21  Defendants, members of the immediate family of the Individual Defendants, the directors, officers,
    subsidiaries, and affiliates of Cadence, any person, firm, trust, corporation, officer, director or other

22  individual or entity in which any Defendant has a controlling interest, and the legal representatives,
    affiliates, heirs, successors-in-interest or assigns of any such excluded person.  "Cadence Publicly

23  Traded Securities" means Cadence common stock, put and call options of Cadence common stock,
    1.375% Notes due December 15, 2011, and 1.5% Notes due December 15, 2011.

24  [4]      As stated in the *Manual for Complex Litigation* §13.14, at 173 (4th ed. 2004):

25         First, the judge reviews the proposal preliminarily to determine whether it is
26         sufficient to warrant public notice and a hearing.  If so, the final decision on approval
           is made after the hearing.

27

28

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC          - 2 -

1  adequate. Indeed, Lead Plaintiff's counsel, who are well-respected and experienced in prosecuting

2  securities class actions, have concluded that the Settlement is a highly favorable resolution of this

3  complex action and is in the best interest of the Class. This conclusion is based on all the

4  circumstances present here, including the substantial risk, expense, and uncertainty in continuing

5  litigation through summary judgment, trial, and probable appeal, the relative strengths and

6  weaknesses of the claims and defenses asserted, past experience in litigating similar complex

7  actions, and the serious disputes between the parties concerning the merits and damages. As a result,

8  Lead Plaintiff respectfully requests that this Court enter the Notice Order that: (1) grants preliminary

9  approval of the Settlement; (2) certifies the Class for settlement purposes; (3) approves the parties'

10  proposed form and method of giving notice of the Settlement to the Class; (4) directs that the notice

11  be given to Class Members as approved by the Court; and (5) sets the date for the hearing at which

12  the Court considers (i) the parties' request for final approval of the Settlement and entry of the

13  [Proposed] Final Judgment and Order of Dismissal with Prejudice; (ii) the Plan of Allocation of

14  Settlement proceeds; and (iii) Lead Counsel's request for an award of attorneys' fees and expenses.

15  **II.   SUMMARY OF LITIGATION**

16         The following is a summary of the Litigation. For a more detailed procedural history of the

17  Litigation, as well as the factors bearing on the reasonableness of the Settlement, the Court is

18  respectfully referred to the Williams Declaration. This is a securities class action on behalf of all

19  Persons who purchased Cadence Publicly Traded Securities during the period from April 23, 2008 to

20  December 10, 2008, inclusive. Lead Plaintiff alleges that Defendants devised a scheme to manage

21  revenues and earnings, and to misrepresent and conceal the Company's true financial and business

22  conditions. On or after October 29, 2008, the following three class actions were filed in the United

23  States District Court for the Northern District of California: *Hu v. Cadence Design Systems, Inc., et

24  al.*, C-08-4966 SC; *Vyas v. Cadence Design Systems, Inc., et al.*, C-08-5027; and *Collins v. Cadence

25  Design Systems, Inc., et al.*, C-08-5273. On March 4, 2009, the Court entered an Order

26  consolidating these cases and appointing Alaska Electrical Pension Fund as Lead Plaintiff, and

27  Robbins Geller Rudman & Dowd LLP as Lead Counsel. On April 24, 2009, Lead Plaintiff filed a

28  consolidated complaint. On September 11, 2009, the Court granted Defendants' motion to dismiss

1    the consolidated complaint.  Thereafter, on October 14, 2009, Lead Plaintiff filed its First Amended

2    Complaint for Violations of the Federal Securities Laws ("Complaint") alleging additional facts

3    concerning Defendants' conduct.    On November 20, 2009, Defendants moved to dismiss the

4    Complaint. On March 2, 2010, the Court denied Defendants' motion to dismiss the Complaint.

5        On May 6, 2010, Defendants filed a Motion for Partial Summary Judgment and Judgment on

6    the Pleadings (the "Motion").   On May 7, 2010, the Court held a Case Management Conference. On

7    June 4, 2010, Lead Plaintiff opposed the Motion and requested discovery under Fed. R. Civ. P. 56(f).

8    On July 7, 2010, the Court stayed the hearing on the Motion scheduled for July 9, 2010 and stayed

9    discovery pending mediation.  On August 25, 2010, the parties participated in mediation with the

10   Honorable Judge Infante presiding.  After the August 25 mediation, the Settling Parties continued

11   settlement negotiations with the assistance of Judge Infante.  On February 8, 2011, the Settling

12   Parties participated in another mediation with Judge Infante.  After the February 8, 2011 mediation,

13   the Settling Parties continued settlement negotiations with the assistance of Judge Infante and

14   reached an agreement-in-principle to settle the Litigation. The Settling Parties thereafter continued

15   negotiations resulting in a settlement on the terms and conditions set forth in the Stipulation.

16       Three related derivative actions pending in this Court (*Hamilton v. Fister*, Case No. CV-10-

17   01849 SC, *Samani v. Fister*, Case No. CV-10-03607 SC, and *Powers v. Fister*, CV-10-03627 SC), as

18   well as another related derivative action pending in Santa Clara Superior Court (the "Derivative

19   Actions"), were also settled in connection with the same mediation.   Accordingly, an amended

20   motion requesting preliminary approval of the settlement of the Derivative Actions is being filed

21   with this Court by counsel for the plaintiffs in those cases.  As set forth in paragraph 7.1(f) of the

22   Stipulation, one of the conditions of this Settlement is that the settlement of the Derivative Actions

23   becomes effective, *i.e.* the Court grants final approval of the Derivative Actions.

24   **III.    THE SETTLEMENT**

25       The Settlement, which was extensively negotiated between the parties with the substantial

26   assistance of Judge Infante, provides a cash benefit to the Class in the amount of $38 million plus

27

28

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC          - 4 -

1   interest, for distribution to eligible Class Members after payment of settlement administration costs,

2   Court-approved attorneys' fees and expenses, and taxes (the "Net Settlement Fund").[5]  Based on

3   information currently available to Lead Plaintiff and the analysis performed by its damage

4   consultants, it is estimated that if Class Members submit claims for 100% of the shares eligible for

5   distribution under the Plan of Allocation, the estimated average distribution per share of Cadence

6   common stock from the Net Settlement Fund will be approximately $0.15.  The Net Settlement Fund

7   will be distributed to Authorized Claimants (*i.e.*, Class Members who submit valid proof of claim

8   forms) in accordance with the Plan of Allocation described in the Notice.[6]  The Plan of Allocation,

9   which was drafted with the assistance of Lead Plaintiff's damage consultants, takes into account

10  various alleged disclosure dates and price drops and treats all potential claimants in a fair and

11  equitable fashion.[7]  A Class Member's recovery will depend on the number of valid proof of claim

12  forms submitted by Class Members; when he, she or it purchased and sold Cadence Publicly Traded

13  Securities; and the number and nature of the securities purchased and sold.

14

15

16

_____

17  [5]     As of August 31, 2011, the Settlement Fund's balance is $38,557,007.87.  As a result of Lead
18  Counsel's negotiations, pursuant to the Stipulation, Cadence was required to cause to be paid $38
    million plus interest at the rate of 4% per annum from February 18, 2011 until paid resulting in more
19  than $500,000 in interest which Lead Counsel believe is non-taxable under applicable regulations.
    The Settlement Fund is currently earning $125 per month in interest which is taxable.  As a qualified
20  Settlement Fund, expenses related to notice and claims administration are deducted from any interest
    earned on the Settlement Fund to determine the fund's tax liability.  The estimated costs of notice
21  and claims administration is approximately $186,000 (*see* Crudo Decl., ¶18), which will almost
    certainly exceed any taxable interest earned on the Settlement Fund, resulting in a zero tax liability.
22  Thus, if the Court were to award the requested attorneys' fees of 25% of the Settlement Fund (or
    approximately $9.64 million) plus litigation expenses of $800,000 (the maximum amount Lead
23  Counsel will request), and the costs of notice and administration are deducted from the Settlement
    Fund, the total proceeds available for distribution to eligible Class Members will be approximately
24  $27,931,000.

25  [6]     While the Plan of Allocation is considered separately from the fairness of the Settlement, the
    standard for approval of a Plan of Allocation is governed by the same standards of review applicable
26  to the Settlement – the plan must be fair, reasonable, and adequate.  *Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268, 1284 (9th Cir. 1992).

27  [7]     The Plan of Allocation which is set forth in the Notice is attached hereto as Exhibit A.

28

1

**IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
APPROVED**

2

**A.    The Standards for Judicial Approval of Class Action Settlements**

3

As a matter of public policy, settlement is a strongly favored method for resolving disputes.

4

*See Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  This is

5

especially true in complex class actions.  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

6

615, 625 (9th Cir. 1982).

7

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be

8

dismissed or compromised, notice must be given in the manner directed by the court, and judicial

9

approval must be obtained.  Fed. R. Civ. P. 23(e).  At the final approval hearing, the Court will be

10

asked to make a final determination as to whether the Settlement is fair, reasonable, and adequate

11

after notice to the Class.  At this time, Lead Plaintiff requests only that the Court grant preliminary

12

approval of the Settlement in order to notify Class Members of the terms of the Settlement, their

13

opportunity to be heard, and their options with respect to the Settlement.  The test for granting

14

preliminary approval is whether the proposed settlement is "'at least sufficiently fair, reasonable and

15

adequate to justify notice to those affected and an opportunity to be heard.'"  *NASDAQ*, 1997 U.S.

16

Dist. LEXIS 20835, at *24 (citation omitted).  *See Manual for Complex Litigation, supra*, §21.632,

17

at 320-21.[8]  Lead Plaintiff is now requesting the Court to take the first step in the process and grant

18

preliminary approval of the Settlement.  Here, the Settlement enjoys a presumption of fairness

19

because it is the product of extensive arm's-length negotiations conducted by experienced and

20

capable counsel with a firm understanding of the strengths and weaknesses of their respective

21

client's positions.[9]

22

23

_____

24

[8]    Preliminary approval does not require the court to make a final determination that the
settlement is fair, reasonable, and adequate.  Rather, that decision is made only at the final approval

25

stage, after notice of the settlement has been given to the class members and they have had an
opportunity to voice their views of the settlement or to exclude themselves from the settlement. *See*

26

5 James Wm. Moore, *Moore's Federal Practice* §23.165[2], at 23-586 to 23-587 (3d ed. 2010).

27

[9]    *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal.
July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("the fact that the settlement agreement was

28

reached in arm's length negotiations, after relevant discovery [has] taken place create[s] a

1     **B.     Reference to Factors Considered by Courts in Granting Final
             Approval of Class Action Settlements Demonstrate that the**
2            **Settlement Should Be Preliminarily Approved**

3            The standard for determining whether to grant final approval to a class action settlement is

4     whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *In re Mego Fin.*

5     *Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d

6     1011, 1026 (9th Cir. 1998)) (setting forth fairness and adequacy factors to be considered for approval

7     of class settlement).  As *Mego Fin.* explained:

8            "Assessing a settlement proposal requires a district court to balance a number
             of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and
9            likely duration of further litigation; the risk of maintaining a class action status
             throughout the trial; the amount offered in settlement; the extent of discovery
10           completed and the stage of the proceedings; the experience and views of counsel; . . .
             and the reaction of the class members to the proposed settlement." . . .  In addition,
11           the settlement may not be the product of collusion among the negotiating parties.

12    213 F.3d at 458 (quoting *Hanlon*, 150 F.3d at 1026).  Not all of these factors will apply to every

13    class action settlement.  Under certain circumstances, one factor alone may prove determinative in

14    finding sufficient grounds for court approval. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376

15    (9th Cir. 1993).  The district court exercises its "sound discretion" in approving a settlement. *Ellis*,

16    87 F.R.D. at 18.  As the Ninth Circuit has stated: "Ultimately, the district court's determination is

17    nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'"

18    *Officers for Justice*, 688 F.2d at 625 (citation omitted).

19           **1.     The Settlement Is the Product of Arm's-Length Negotiations
                     and Not the Product of Collusion**
20
21           In approving a class action settlement, the Ninth Circuit "put[s] a good deal of stock in the

      product of an arms-length, non-collusive, negotiated resolution." *Rodriquez v. W. Publ'g Corp.*, 563
22
      F.3d 948 (9th Cir. 2009).  As discussed above, the terms of the proposed Settlement are the product
23
      of extensive arm's-length negotiations between the parties with the substantial assistance of Judge
24
      Infante.   The negotiations were at all times hard-fought and at arm's length.   During these
25

26

27    presumption that the agreement is fair"); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D.
      Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).
28

negotiations, Lead Counsel zealously advanced Lead Plaintiff's positions and were fully prepared to continue to litigate rather than accept a settlement that was not in the best interest of the Class. Indeed, the parties participated in two formal mediation sessions with Judge Infante on August 25, 2010 and February 8, 2011, that involved an extensive analysis of the Class's claims and the defenses that would be asserted by Defendants. It was only after continued settlement negotiations among the parties with the assistance of Judge Infante did the parties reach an agreement-in-principle to settle the Litigation.

### 2. The Extent of Discovery Completed and the Stage of the Proceedings

While the Settlement comes before the end of the discovery process and dispositive proceedings, both the knowledge of Lead Counsel and the proceeding themselves have reached a stage where an intelligent evaluation of the Litigation and the propriety of settlement could be made. *See Officers for Justice*, 688 F.2d at 625, *Mego Fin.*, 213 F.3d at 458. As discussed above and in the Williams Declaration, Lead Counsel conducted an extensive investigation of the facts alleged, interviewed with the assistance of private investigators some 40 witnesses, consulted with experts in accounting and damages, fully briefed two motions to dismiss by Defendants, demanded and obtained discovery from Defendants and non-parties, including Cadence's outside auditors, and filed a detailed and substantive opposition to Defendants' motion for partial summary judgment and judgment on the pleadings. Almost immediately thereafter, the parties began to discuss potential resolution of the action. The parties also participated in extensive settlement negotiations, including two mediation sessions, that involved an extensive analysis of the Class's claims as well as Defendants' defenses. As a result, Lead Counsel were able to assess the strengths and weaknesses of the claims asserted and resolve the Litigation on a highly favorable basis for the Class. *See Mego Fin.*, 213 F.3d at 459 ("'"formal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement'") (citations omitted).

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC

1          **3.     The Recommendations of Experienced Counsel**

2          Lead Plaintiff through its counsel, having carefully considered and evaluated, *inter alia*, the

3  relevant legal authorities and evidence adduced to date to support the claims asserted, the likelihood

4  of prevailing on these claims, the risk, expense, and duration of continued litigation, and the likely

5  appeals and subsequent proceedings necessary if Lead Plaintiff did prevail against Defendants at

6  trial, have concluded that the Settlement is clearly fair, reasonable, and adequate and in the best

7  interest of the Class.  Lead Counsel have significant experience in securities and other complex class

8  action litigation and have negotiated numerous other class action settlements throughout the country.

9  *See* www.rgrdlaw.com.  It is well established that significant weight should be attributed to the belief

10  of experienced counsel that settlement is in the best interest of the class.  *See Nat'l Rural Telecomms.*

11  *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight is accorded to the

12  recommendation of counsel, who are most closely acquainted with the facts of the underlying

13  litigation.'") (citation omitted).[10]

14          **4.     The Risks of Proving Liability and Damages**

15          To determine whether a class action should be finally approved, the Court must balance the

16  continuing risks of litigation against the benefits afforded to the Class and the immediacy and

17  certainty of a substantial recovery.  *Mego Fin.*, 213 F.3d at 458.  Although Lead Plaintiff and its

18  counsel believe that the Class's claims have substantial merit, they recognize the significant risk and

19  expense necessary to prosecute Lead Plaintiff's claims against Defendants through summary

20  judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex

21  litigation like this entails.  Assuming Lead Plaintiff survived Defendants' summary judgment

22  motion, there was a real risk that a jury would not understand the complex factual and legal issues in

23  this Litigation.  Even if Lead Plaintiff was able to establish liability, the determination of damages,

24  

25  [10]     *See also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. 901, 1992 U.S. Dist.
26  LEXIS 14337, at *12 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed
   settlement represented the most beneficial result for the class a compelling factor in approving
27  settlement); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz.
   1989), *aff'd sub nom. Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992).

28  

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC                    - 9 -

1     like the determination of liability, is a complicated and uncertain process, involving conflicting

2     expert testimony. *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260-261 (D.N.H. 2007) ("Proving loss

3     causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the

4     trial would likely involve a confusing 'battle of the experts' over damages."). The reaction of a jury

5     to such complex and contradictory expert testimony is highly unpredictable, and in such a battle,

6     Lead Counsel recognize the possibility that a jury could be swayed by convincing experts for the

7     Defendants, and find there were no damages or only a fraction of the amount of damages contended.

8     *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798

9     F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any

10    certainty which testimony would be credited, and ultimately, which damages would be found to have

11    been caused by actionable, rather than the myriad nonactionable factors such as general market

12    conditions"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165 (CM), 2007 WL 4115809,

13    at *10 (S.D.N.Y. Nov. 7, 2007) ("The jury's verdict with respect to damages would depend on its

14    reaction to the complex testimony of experts, a reaction which at best is uncertain.").

15                **5.**      **The Expense and Likely Duration of Further Litigation**

16          Another factor courts consider in determining the fairness of a settlement is the complexity,

17    expense, and likely duration of continued litigation. *See Mego Fin.*, 213 F.3d at 459; *Officers for*

18    *Justice*, 688 F.2d at 625. If not for this Settlement, the Litigation would have continued to be

19    fiercely contested by the parties. Continued litigation would be complex, costly, and of substantial

20    duration. Document discovery would need to be completed, depositions would have to be taken,

21    experts would need to be designated and expert discovery completed, Defendants' expected motions

22    for summary judgment after discovery would have to be briefed and argued, and a trial could take

23    weeks to complete. Moreover, any judgment favorable to the Class would be the subject of post-trial

24    motions and appeal, which would prolong the case for years with the ultimate outcome uncertain.

25    Absent settlement, this contest would have ultimately developed into a battle of competing facts and

26    inferences, competing experts, and a credibility toss-up to be decided by the jury. By contrast, the

27

28

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC       - 10 -

1   $38 million settlement is sizeable and immediately realizable by the Class and eliminates all of the

2   risk, delay, and expense of continued litigation.[11]

3          An evaluation of the benefits of settlement must also be tempered by a recognition that any

4   compromise involves concessions on the part of all of the settling parties. Indeed, "the very essence

5   of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"

6   *Officers for Justice*, 688 F.2d at 624 (citation omitted). In sum, the Settlement is the product of

7   informed arm's-length negotiations with the substantial assistance of Judge Infante and well within

8   the range of possible approval. Lead Plaintiff and its counsel firmly believe that the Settlement

9   merits final approval but the Court need not make that determination at this time. The Court is being

10  asked to permit notice of the terms of the Settlement to be sent to the Class and schedule a hearing,

11  pursuant to Federal Rule of Civil Procedure 23(e), to consider any expressed views by Class

12  Members of the fairness of the Settlement, the Plan of Allocation, and Lead Counsel's request for an

13  award of fees and expenses. Moore, *supra*, §23.165[3], at 23-587 to 23-588.

14  **V.    THE PROPOSED NOTICE PROGRAM IS ADEQUATE AND
           CONSTITUTES DUE AND SUFFICIENT NOTICE UNDER RULE 23,**

15  **      DUE PROCESS, AND THE PSLRA**

16         Rule 23(e) governs notice requirements for settlements or "compromises" in class actions.

17  The Rule provides that a class action shall not be dismissed or compromised without the approval of

18  the court, and notice of the proposed dismissal or compromise shall be given to all members of the

19  class in such manner as the court directs. Fed. R. Civ. P. 23(e). In addition, the Rule provides,

20  "[t]he court must direct notice in a reasonable manner to all class members who would be bound by

21  the proposal." Fed. R. Civ. P. 23(e)(1).

22

23

24  [11]    Even if Lead Plaintiff prevailed through summary judgment, risks to the Class remain. Even
        a meritorious case can be lost at trial. *See In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW

25      (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict
        against plaintiffs and the action was dismissed). Further, a successful jury verdict does not eliminate

26      the risk to the class. *See In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist.
        LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (court entered judgment notwithstanding the verdict for the

27      individual defendants and ordered a new trial with respect to the corporation); *Robbins v. Koger
        Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict for securities fraud).

28

652094_1

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC            - 11 -

1        Lead Plaintiff respectfully requests the appointment of Gilardi & Co. LLC ("Gilardi") as

2   Claims Administrator to supervise and administer the notice procedure as well as the processing of

3   claims.  Gilardi is a highly respected and experienced claims administrator, with thousands of cases

4   administered and over $6 billion in assets distributed.  *See* www.gilardi.com.  The comprehensive

5   notice program and procedures  that will be used in this case are detailed in the Crudo Declaration

6   and summarized below.  The number of Class Members in this case, as well as virtually every other

7   securities class action, cannot be definitively ascertained.  While Cadence has a stock transfer agent

8   who maintains a record of transfers of the Company's stock from one name to another, these records

9   "make up a very small percentage of a class, as the vast majority of investors hold their securities

10  through a broker, bank or other financial institution, and do so in what is known colloquially as

11  "'street name.'"  Crudo Decl., ¶5.  In this case, there are 998 names on the records maintained by

12  Cadence's transfer agent.  *Id.*  Here, based on the number of mailings in connection with proxy

13  materials mailed to Cadence shareholders shortly before the Class Period, it is reasonable to expect

14  that there are at least 18,000 potential Class Members and the number of potential Class Members

15  could exceed 50,000.  *Id.*, ¶16.  Mr. Crudo estimates that based on Gilardi's experience "that the

16  combined direct mail and publication program proposed will provide notice to more than ninety-five

17  percent of the investors that are potential class members."  *Id.*, ¶15.

18       Initially, Gilardi will mail the Notice of Proposed Settlement of Class Action ("Notice") and

19  Proof of Claim and Release form (combined, the "Notice Package") by first class mail to those

20  persons and entities identified by Cadence's transfer agent as potential Class Members.[12]  Gilardi

21  will also send the Notice Package with an appropriate cover letter to brokers, banks or other

22  institutions that actually hold the securities for the benefit of their clients (the "Nominee Holders"),

23  including each institution registered with the Securities and Exchange Commission ("SEC") as a

24

25

---

[12]     The Notice and the Proof of Claim and Release form are attached to the Stipulation as
Exhibits A-1 and A-2.  On the same day or earlier that the Notice package gets mailed to Class
Members by Gilardi, Lead Counsel will post the Stipulation, Notice, Proof of Claim and the
executed preliminary approval order on its website.

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC                    - 12 -

1   potential Nominee Holder.[13]  The cover letter will inform the Nominee Holders of the settlement of

2   this Litigation and their obligation to either provide the names and addresses of clients who may be

3   Class Members to Gilardi or request copies of the Notice Package to provide directly to their clients.

4   Gilardi will then forward the Notice Package to the names and addresses provided by the Nominee

5   Holders or send to the Nominee Holders the number of Notice Packages requested for them to

6   forward to their clients.[14]  In addition, Gilardi will also cause the Summary Notice to be published by

7   the Depository Trust Corporation ("DTC") on the DTC Legal Notice System and will email the

8   Notice Package to approximately 700 institutions that monitor securities class actions for their

9   investor clients.  Crudo Decl., ¶¶11-12.  To supplement the mailed Notice Package, the parties also

10  agreed to publish the Summary Notice in the *Investor's Business Daily* national edition, which is a

11  national newspaper primarily read by securities investors and investment professionals.  Gilardi will

12  also post the Summary Notice on the *Business Wire*.  Crudo Decl., ¶10.

13         As required by Federal Rule of Civil Procedure 23(c)(2) and the Private Securities Litigation

14  Reform Act of 1995 ("PSLRA") (15 U.S.C. §78u-4(a)(7)), the Notice describes the nature of the

15  Litigation; sets forth the definition of the Class; states the Class's claims; and discloses the right of

16  Class Members to exclude themselves from the Class, as well as the deadline and procedure for

17  doing so and warns of the binding effect of the settlement approval proceedings on Class Members

18  who do not exclude themselves.  In addition, the Notice describes the Settlement; the Settlement

19  Amount, both in the aggregate and on an average per-share basis; explains the proposed Plan of

20  Allocation; states the parties' disagreement over damages and other issues; sets out the amount of

21  attorneys' fees and expenses that counsel for Lead Plaintiff intend to seek in connection with final

22  settlement approval, including the amount of the requested fees and expenses determined on an

23  average per-share basis; provides contact information for Lead Counsel, including a toll-free

24  ───────────────────────

25  [13]     A copy of the proposed cover letter is attached as Exhibit A to the Crudo Declaration.

26  [14]     Gilardi will also use reasonable efforts to make sure that addresses for Class Members are
    current, that there are no duplicative addresses, and for mail that is returned as undeliverable to find
27  the current mailing address and re-mail the Notice Package to potential Class Members.  Crudo
    Decl., ¶9.

28

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC            - 13 -

1   telephone number; and summarizes the reasons the parties are proposing the Settlement.  The Notice

2   also discloses the date, time, and place of the formal fairness hearing, and the procedures for

3   objecting to the Settlement, the Plan of Allocation, or counsel's request for attorneys' fees and

4   expenses and appearing at the hearing.  The contents of the Notice therefore satisfy all applicable

5   requirements.

6   **VI.    THE COURT SHOULD CERTIFY THE CLASS**

7       **A.    Standard Applicable to Class Certification**

8           Lead Plaintiff requests that the Court certify a Class defined as all Persons (other than those

9   Persons who timely and validly request exclusion from the Class) who purchased Cadence Publicly

10  Traded Securities during the period from April 23, 2008 to December 10, 2008, inclusive, excluding

11  the Defendants, members of the immediate family of the Individual Defendants, the directors,

12  officers, subsidiaries, and affiliates of Cadence, any person, firm, trust, corporation, officer, director

13  or other individual or entity in which any Defendant has a controlling interest, and the legal

14  representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person.[15]

15          Within the Ninth Circuit, courts have repeatedly endorsed the use of class action procedures

16  to resolve claims under the federal securities laws.  This Court has previously recognized that "the

17  Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In*

18  *re Adobe Systems, Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re THQ Inc.*

19  *Sec. Litig.*, No. CV 00-1783AHM (EX), 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) ("'the

20  law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally

21  construed in favor of class action cases brought under the federal securities laws'") (citation

22  omitted); *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("'Rule 23 is . . .

23  liberally construed in a securities fraud context because class actions are particularly effective in

24  serving as private policing weapons against corporate wrongdoing.'") (citation omitted); *In re*

25

26  [15]    Cadence Publicly Traded Securities is defined as Cadence common stock, put and call
27  options of Cadence common stock, 1.375% Notes due December 15, 2011, and 1.5% Notes due
    December 15, 2011.

28

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC                - 14 -

*Verisign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438, at *31-*32 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

### B.    The Settlement Meets the Requirements of Rule 23(a)

The requirements of Federal Rule of Civil Procedure 23 and relevant case law demonstrates that this case should be certified.  Under Rule 23(a), a class may be certified if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### 1.    Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted).  There is no fixed number of class members which either compels or precludes the certification of a class.  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994); *see also In re Cirrus Logic Sec.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994) (classes consisting of as few as 25 members have been held large enough to justify certification).  The exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large. *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984).  Indeed, courts in this district have assumed that the numerosity requirement is satisfied in securities cases involving nationally traded stocks. *Yamner v. Boich*, No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *7-*8 (N.D. Cal. Sept. 15, 1994).

Here, there can be no dispute that the Class satisfies numerosity and consists of hundreds, if not thousands, of investors. Cadence common stock was actively traded on the NASDAQ National Market System throughout the Class Period and there were approximately 260 million shares outstanding as of February 2, 2008. *See* Definitive Proxy Statement (Schedule 14A) (Mar. 25,

652094_1

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC                          - 15 -

1   2008).  Moreover, there were $250 million worth of both the 1.375% Notes and 1.5% Notes which

2   were issued in $1,000 increments which translates into 250,000 notes for each offering.  In addition,

3   based on the trading volume of Cadence common stock during the Class Period there were likely

4   tens of thousands of option contracts traded during the Class Period.  Common sense dictates that

5   Cadence Publicly Traded Securities were purchased by many thousands of investors, making joinder

6   impracticable.

7               2.       Rule 23(a)(2):  Questions of Law or Fact Are Common

8        Federal Rule of Civil Procedure 23(a)(2) requires that there be questions of law or fact

9   common to the class.  The nature of the misrepresentations detailed in the Complaint – the most

10  crucial issue in a securities fraud case – presents questions of fact and law common to all Members

11  of the Class.  Complaint, ¶¶52-156.  To satisfy the commonality requirement, it is not necessary that

12  all questions of law and fact be common to the entire class; instead, "'"[e]ven a single [common]

13  question"' will do."  *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2556 (2011)

14  (citations omitted).

15       Lead Plaintiff alleges that Defendants' public statements in press releases, analyst conference

16  calls, and quarterly reports filed with the SEC regarding the Company's financials were materially

17  misleading and did not fairly present the financial condition of the Company, thereby deceiving each

18  purchaser as to the Company's true business condition and the value of Cadence's Publicly Traded

19  Securities during the Class Period.[16]  As a result, Lead Plaintiff's Released Claims[17] against

20  Defendants arise out of "'shared legal issues'" and a "'common core of salient facts.'"  *Cooper*, 254

21  F.R.D. at 634 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003)).

22

23  ———————————

24  [16]    The recent Supreme Court decision in *Wal-Mart* did not affect the common questions of fact
    and law analysis in securities class actions because the common questions of fact and law in
25  securities cases are "essentially, whether the [statements] were false or misleading in one or more
    respects [and] are clearly susceptible to common answers."  *See Pub. Emps. Ret. Sys. v. Merrill
26  Lynch & Co.*, No. 08 Civ. 10841 (JSR) 2011 U.S. Dist. LEXIS 93222, at *26 (S.D.N.Y. Aug. 22,
    2011).

27  [17]    Released Claims are specifically defined in the Stipulation.  Dkt. No. 148.

28

1    Common questions of fact and law are clear from Lead Plaintiff's allegations, including: (i)
2    whether Defendants violated the Securities Exchange Act of 1934; (ii) whether Defendants'
3    statements omitted and/or misrepresented material facts; (iii) whether Defendants' statements
4    omitted material facts necessary in order to make the statements made, in light of the circumstances
5    under which they were made, not misleading; (iv) whether Defendants knew or recklessly
6    disregarded that their statements were false and misleading; and (v) whether the price of Cadence's
7    Publicly Traded Securities were artificially inflated.  Underlying these basic common questions is a
8    common nucleus of operative facts pertaining to Defendants' scheme to artificially inflate and
9    maintain the price of Cadence securities, thereby deceiving the investing public and causing
10   Members of the Class to purchase Cadence's securities at inflated prices for which there are clearly
11   common contentions that are susceptible to common answers.  *Wal-Mart*, 131 S. Ct. at 2551.  *See*
12   *generally* Complaint.  *See also Blackie v. Barrack*, 524 F.2d 891, 903 n.19 (9th Cir. 1975) ("Thus,
13   even when unrelated misrepresentations are alleged as part of a common scheme, class members
14   may share common factual questions, and trial in the same forum avoids duplicative proof.  That is a
15   major purpose of a class action; the 'common question' requirement should be interpreted to obtain
16   that objective.").

17              **3.      Rule 23(a)(3): Lead Plaintiff's Claims Are Typical**

18   Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from
19   the same course of conduct that gives rise to the claims of the other class members, and where the
20   claims are based on the same legal theory.  *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675,
21   680 (N.D. Cal. 1986).  Rule 23(a)(3) does not require plaintiffs to show that their claims are identical
22   on every issue to those of the class, but merely that significant common questions exist.  *In re Syncor*
23   *ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005).  "'[D]ifferences in the amount of damages, the
24   size or manner of [stock] purchaser, the nature of the purchaser, and even the specific document
25   influencing the purchase will not render a claim atypical in most securities cases.'"  *See In re*
26   *Surebeam Corp. Sec. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *18 (S.D.
27   Cal. Jan. 5, 2004) (citation omitted); *see also Sanders v. Robinson Humphrey/American Express*, 634
28   F. Supp. 1048, 1057 (N.D. Ga. 1986) ("When plaintiffs have alleged such a common course of

1 │ conduct, courts consistently have found no bar to certification even though members of a class may

2 │ have purchased different types of securities or interests, or purchased similar securities at different

3 │ times."), *aff'd in part and rev'd in part on other grounds sub nom. Kirkpatrick v. J.C. Bradford &*

4 │ *Co.*, 827 F.2d 718 (11th Cir. 1987); *Endo v. Albertine*, 147 F.R.D. 164, 167 (N.D. Ill. 1993) ("a class

5 │ of plaintiffs who purchased different types of securities may properly be certified with a

6 │ representative party who only purchased one type of security").

7 │        Here, Lead Plaintiff's claims arise from the same course of conduct that gives rise to the

8 │ claims of other claims of Class Members and is based on the same legal theory. The Lead Plaintiff,

9 │ like all Members of the Class, purchased Cadence Publicly Traded Securities at allegedly artificially

10 │ inflated prices during the Class Period and claims to have suffered damages because of Defendants'

11 │ alleged material misstatements and omissions.

12 │                    **4.    Rule 23(a)(4): The Lead Plaintiff Is Adequate**

13 │        Rule 23(a)(4) entails two showings: (i) class counsel must be qualified, experienced, and

14 │ generally able to conduct the litigation; and (ii) there must be no antagonism or disabling conflict

15 │ between the interests of the named class representatives and the members of the class. *See, e.g.,*

16 │ *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

17 │        First, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), the Court-appointed Lead

18 │ Counsel for Lead Plaintiff and the proposed Class, are amply qualified, experienced, and able to

19 │ conduct this Litigation vigorously and effectively, and have ably represented Lead Plaintiff and the

20 │ proposed Class in this Litigation. Robbins Geller has a strong record of successfully litigating

21 │ numerous class actions as lead counsel on behalf of major institutional investors in cases throughout

22 │ the country. *See, e.g., In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 790 (S.D. Tex. 2008)

23 │ ("This Court considers Coughlin Stoia 'a lion' at the securities bar on the national level. Lead

24 │ Counsel's outstanding reputation, experience, and success in securities litigation nationwide were a

25 │ major reason why the Regents selected the firm."). As the court in *In re Cardinal Health Inc. Sec.*

26 │ *Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007) stated:

27 │                The quality of representation in this case was superb. Lead Counsel, Coughlin
   │                Stoia Geller Rudman & Robbins LLP, are nationally recognized leaders in complex
28 │                securities litigation class actions. The quality of the representation is demonstrated

by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action. Lead Counsel defeated a volley of motions to dismiss, thwarting well-formed challenges from prominent and capable attorneys from six different law firms.

*Id.* at 768. Thus, the adequacy of Lead Plaintiff's counsel is beyond reproach.

Second, there is no genuine conflict or antagonism between the claims of the proposed Class representative and those of the other members of the proposed Class. Lead Plaintiff and each Member of the Class have a strong and identical interest in establishing Defendants' liability and obtaining the maximum amount of damages. Moreover, Lead Plaintiff has demonstrated its ability and willingness to pursue the Litigation on behalf of the Class. Lead Plaintiff was actively involved in the Litigation and approved the Settlement. Furthermore, in enacting the PSLRA, Congress encouraged courts to place institutional investors (such as Lead Plaintiff here) in charge of securities fraud class actions. *In re Cavanaugh*, 306 F.3d 726, 737 (9th Cir. 2002). Congress favors institutional investors based on its determination that institutional investors would exercise more control over the litigation than if attorneys who filed such actions were permitted simply to select a lead plaintiff for reasons more related to the attorneys' interest in the outcome of the litigation than the plaintiff's. *See, e.g., id.* at 738 ("the requirement that the plaintiff with the largest stake in the outcome of the case serve as lead plaintiff ***will doubtless promote the goal of attracting institutional investors***") (emphasis added).

Lead Plaintiff is exactly the type of institutional investor Congress envisioned when it drafted the PSLRA. Lead Plaintiff suffered significant losses as a result of Defendants' fraud and have and had every incentive to actively litigate this case on behalf of the Class. *See Backe v. Novatel Wireless, Inc.*, No. 08-CV-01689-H (RBB), 2008 U.S. Dist. LEXIS 100622, at *12 (S.D. Cal. Dec. 10, 2008) (stating that "'increasing the role of institutional investors in class actions will ultimately benefit the shareholders and assist courts by improving the quality of representation in securities class actions'") (quoting H.R. Conf. Rep. No. 104-369, at 34); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i) ("the court shall . . . appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members . . . the 'most adequate plaintiff'").

652094_1

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC                - 19 -

1

### C.   The Class Meets the Requirements of Rule 23(b)(3)

2

#### 1.   Common Questions of Law or Fact Predominate

3   Rule 23(b)(3) sets forth two requirements, the first being that the questions of law or fact

4   common to the members of the class must "predominate" over any questions affecting only

5   individual members. Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed

6   classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v.*

7   *Windsor*, 521 U.S. 591, 623 (1997). "'When common questions present a significant aspect of the

8   case and they can be resolved for all members of the class in a single adjudication, there is clear

9   justification for handling the dispute on a representative rather than on an individual basis.'" *Hanlon*

10  *v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citation omitted). As the Supreme Court has

11  observed, the predominance requirement is "a test readily met" in securities class actions. *Amchem*,

12  521 U.S. at 625. *See also Cooper*, 254 F.R.D. at 632 ("As the Ninth Circuit has so aptly stated,

13  securities fraud cases fit Rule 23 'like a glove.'") (citation omitted).

14  The common questions of law and fact noted above clearly predominate over individual

15  questions because Defendants' alleged fraudulent statements and omissions affected Class Members

16  (*i.e.*, through public statements made to the market and documents publicly filed with the SEC).

17  Predominance of common questions generally will be found where, as here, "'many purchasers have

18  been defrauded over time by similar misrepresentations, or by a common scheme to which alleged

19  non-disclosures related.'" *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal.

20  2006) (citation omitted). Generalized proof will be necessary with respect to the issues of whether:

21  (1) Defendants' alleged misstatements and omissions were false and material to Cadence investors;

22  (2) Defendants possessed the requisite scienter; and (3) how Defendants' alleged misstatements and

23  omissions impacted the price of Cadence's Publicly Traded Securities.

24

#### 2.   A Class Action Is a Superior Method of Adjudication

25  Finally, Rule 23(b)(3) also requires that the action be superior to other available methods for

26  the fair and efficient adjudication of the controversy. The rule lists several matters pertinent to this

27  finding:

28

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC                    - 20 -

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *see Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 937 (9th Cir. 2009). Each factor counsels in favor of class certification. *See, e.g., McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 615 (S.D. Cal. 2007) (class action is superior to individual suits when to allow individual suits would "'clog[] the federal courts with innumerable individual suits litigating the same issues repeatedly'" and the plaintiffs assert complex claims that would "be very costly to litigate" and each claim is for a relatively small amount) (citation omitted). Moreover, certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

For all of the foregoing reasons, this Court should find, for settlement purposes only, that the Class meets the requirements for the certification of a class pursuant to Federal Rule of Civil Procedure 23(a) and at least one of the factors enumerated in Rule 23(b). Certification of the Class is therefore warranted.

### D.   Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Rule 23(g)(1) of the Federal Rules of Civil Procedure states that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Lead Plaintiff respectfully requests that Robbins Geller be appointed Lead Counsel for the Class. As discussed above, Robbins Geller has been and will continue to fairly and adequately represent the Class. Counsel are knowledgeable about the applicable law, extremely experienced in handling class actions, have performed substantial work in pursuing the Class's claims here and in reaching a settlement, and have committed the necessary resources to representing the Class. Robbins Geller is among the nation's preeminent law firms in this area of practice.

652094_1

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC          - 21 -

1    Robbins Geller has been appointed in lead roles in hundreds of complex class actions and has

2    been responsible for numerous outstanding recoveries on behalf of investors. A few cases include:

3    *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.) (representing the Regents of the University

4    of California and recovering in excess of $7.3 billion for investors); *In re UnitedHealth Group, Inc.*

5    *PSLRA Litig.*, No. 06-CV-1691 (D. Minn.) (recovering over $925 million and representing the

6    California Public Employees' Retirement System); *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-

7    04-575 (S.D. Ohio) (representing Amalgamated Bank and others and recovering $600 million for

8    investors); *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S (N.D. Ala.) (representing

9    Central States SE and SW Areas Pension Fund and others, and obtaining a combined recovery of

10   $671 million); and *In re Dynegy, Inc. Sec. Litig.*, No. H-02-1571 (S.D. Tex.) (representing the

11   Regents of the University of California and recovering $474 million).

12   ## VII.   THE REQUESTED AMOUNT OF ATTORNEYS' FEES ARE REASONABLE

13   

14   While a motion for attorneys' fees is not yet before the Court, Lead Plaintiff's counsel intend

15   to seek an award of 25% of the Settlement Fund plus expenses incurred in the prosecution of the

16   Litigation in an amount not to exceed $800,000. In *Paul, Johnson, Alston & Hunt v. Grautly*, 886

17   F.2d 268, 272 (9th Cir. 1989), the Ninth Circuit established 25% of a common fund as the

18   "benchmark" award for attorneys' fees. *See also Torrisi*, 8 F.3d at 1376 (reaffirming 25%

19   benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)(same); *In re Bluetooth Headset*

20   *Prods. Liab. Litig.*, No. 09-56683, 2011 U.S. App. LEXIS 17224 (9th Cir. Aug. 19, 2011)

21   (reaffirming 25% benchmark in a common fund case). As will be discussed in greater detail in Lead

22   Counsel's motion for an award of attorneys' fees and expenses, the requested fee is fair and

23   reasonable when considered under the applicable standards, including the highly favorable result

24   obtained for Members of the Class, the considerable risks involved in prosecuting this complex

25   litigation, the contingent nature of counsel's representation, and fee awards in other similar cases.

26   Indeed, a recent study conducted by NERA found that in securities cases that settled during years

27   1996-2010 and for proceeds of between $25 million and $100 million, the median award of

28   attorneys' fees was 27.3% of the settlement proceeds. *See* Dr. Jordan Milev, Robert Patton, and

652094_1

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC                    - 22 -

1    Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2011 Mid-Year Review,*

2    *Filings on the Rise but Settlement Amounts Decline, Ratio of Settlement to Investor Losses is at*

3    *Record Low,* at 27, Figure 29 (NERA July 2011).

4    **VIII.   PROPOSED SCHEDULE OF EVENTS**

5           In connection with the preliminary approval of the Settlement, the Court must set a final

6    approval hearing date, dates for mailing the Notice and publication of the Summary Notice,

7    deadlines for objecting to the Settlement, opting out of the Class, and filing papers in support of the

8    Settlement.  Lead Plaintiff proposes the following schedule:

| | |
|---|---|
| Notice and Proof of Claim and Release form mailed to Class Members (Notice Order, ¶5(a)) | 14 days after entry of the Notice Order ("Notice Date") |
| Summary Notice published (Notice Order, ¶5(b)) | Within 10 days after the Notice Date |
| Deadline for filing papers in support of the Settlement, Plan of Allocation, and request for an award of attorneys' fees and expenses (Notice Order, ¶13) | 21 calendar days before deadline for filing objections |
| Deadline for requesting exclusion from the Class (Notice Order, ¶10) and deadline for filing objections to the Settlement, Plan of Allocation, or request for attorneys' fees and expenses (Notice Order, ¶11) | 60 days after the Notice Date |
| Deadline for filing reply papers in support of the Settlement, Plan of Allocation, and request for an award of attorneys' fees and expenses (Notice Order, ¶13) | 7 calendar days prior to final approval hearing |
| Final approval hearing (Notice Order, ¶3) | At the Court's convenience, on or after 75 days after the mailing of the Notice |
| Deadline for submitting Proof of Claim and Release forms (Notice Order, ¶8) | 90 days after the Notice Date |

23          This schedule is similar to those used and approved by numerous courts in class action

24   settlements and provides due process to Class Members with respect to their rights concerning the

25   proposed Settlement.  *See Torrisi*, 8 F.3d at 1374-75.

652094_1

NOTICE OF UNOPPOSED AMENDED MOTION AND UNOPPOSED AMENDED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - C-08-4966 SC                - 23 -

1    IX.    **CONCLUSION**

2          For the reasons set forth above, Lead Plaintiff respectfully requests that the Court

3    preliminarily approve the proposed Settlement and enter the Notice Order.

4    DATED: September 26, 2011                    Respectfully submitted,

5                                                 ROBBINS GELLER RUDMAN
                                                      & DOWD LLP
6                                                 SHAWN A. WILLIAMS
                                                 JASON C. DAVIS
7                                                 DANIEL J. PFEFFERBAUM
                                                 Post Montgomery Center
8                                                 One Montgomery Street, Suite 1800
                                                 San Francisco, CA  94104
9                                                 Telephone: 415/288-4545
                                                 415/288-4534 (fax)
10
                                                 ROBBINS GELLER RUDMAN
11                                                    & DOWD LLP
                                                 JEFFREY D. LIGHT
12                                                MAUREEN E. MUELLER

13

14                                                        s/ Jeffrey D. Light
                                                 JEFFREY D. LIGHT

15
                                                 655 West Broadway, Suite 1900
16                                                San Diego, CA  92101
                                                 Telephone: 619/231-1058
17                                                619/231-7423 (fax)

18                                                Lead Counsel for Plaintiffs

19                                                        .

20

21

22

23

24

25

26

27

28

652094_1

EXHIBIT A

## EXHIBIT A

A "Claim" will be calculated as follows:

The allocation below is based on the following price declines as well as the statutory PSLRA 90-day look-back amount of $3.80:

| | |
|---|---|
| October 23, 2008 Price Decline: | $1.10 |
| December 11, 2008 Price Decline: | $0.89 |

### *COMMON STOCK (CUSIP: 127387108)*

1.      For shares of Cadence common stock **purchased on or between April 23, 2008 through October 22, 2008**, the claim per share shall be as follows:

(a)     If sold prior to October 23, 2008, the claim per share is zero.

(b)     If sold on October 23, 2008 through December 10, 2008, the claim per share shall be the lesser of (i) $1.10 (October 23, 2008 Price Decline), or (ii) the difference between the purchase price and the selling price.

(c)     If retained at the end of December 10, 2008 and sold before March 11, 2009, the claim per share shall be the lesser of (i) $1.99 (October 23, 2008 and December 11, 2008 Price Declines), or (ii) the difference between the purchase price and the selling price, or (iii) the difference between the purchase price per share and the average closing price per share up to the date of sale as set forth in the table below.

(d)     If retained, or sold, on or after March 11, 2009, the claim per share shall be the lesser of (i) $1.99 (October 23, 2008 and December 11, 2008 Price Declines), or (ii) the difference between the purchase price per share and $3.80 per share.

2.      For shares of Cadence common stock **purchased on or between October 23, 2008 through December 10, 2008**, the claim per share shall be as follows:

(a)    If sold prior to December 11, 2008, the claim per share is zero.

(b)    If retained at the end of December 10, 2008 and sold before March 11, 2009, the claim per share shall be the lesser of (i) $0.89 (December 11, 2008 Price Decline), or (ii) the difference between the purchase price and the selling price, or (iii) the difference between the purchase price per share and the average closing price per share up to the date of sale as set forth in the table below.

(c)    If retained, or sold, on or after March 11, 2009, the claim per share shall be the lesser of (i) $1.99 (October 23, 2008 and December 11, 2008 Price Declines), or (ii) the difference between the purchase price per share and $3.80 per share.

## CALL OPTIONS

1.    For call options on Cadence common stock *purchased* from *April 23, 2008 through December 10, 2008*, and

(a)    *held* at the end of October 22, 2008 and/or December 10, 2008, the claim per call option is the difference between the price paid for the call option less the proceeds received upon the settlement of the call option contract;

(b)    *not held* at the end of October 22, 2008 and/or December 10, 2008, the claim per call option is $0.

2.    For call options on Cadence common stock *written* from *April 23, 2008 through December 10, 2008*, the claim per call option is $0.

## PUT OPTIONS

1.    For put options on Cadence common stock *written* from *April 23, 2008 through December 10, 2008*, and

(a)      *held* at the end of October 22, 2008 and/or December 10, 2008, the claim per put option is the difference between the price paid upon settlement of the put option contract less the initial proceeds received upon the sale of the put option contract;

(b)      *not held* at the end of October 22, 2008 and/or December 10, 2008, the claim per put option is $0.

2.      For put options on Cadence common stock *purchased* from *April 23, 2008 through December 10, 2008*, the claim per put option is $0.

Note:  In the case the option was exercised for Cadence common stock, the amount paid, or proceeds received, upon the settlement of the option contract equals the intrinsic value of the option using Cadence common stock's closing price on the date the option was exercised.

Note:  The combined recovery for the put/call options shall not exceed 3% of the Net Settlement Fund.

### *Section 10(b) Claims – 1.375% Notes due December 15, 2011 (CUSIP: 127387AF5)*

1.      For Cadence 1.375% Notes *purchased on April 23, 2008 through October 22, 2008*, and

(a)      sold prior to October 23, 2008, the claim per Note is $0.

(b)      sold on October 23, 2008 through December 10, 2008, the claim per Note is the purchase price less the sales price.

(c)      retained at the end of December 10, 2008, the claim per Note is the purchase price less $600.00 (December 11, 2008 Price).

2.      For Cadence 1.375% Notes *purchased on October 23, 2008 through December 10, 2008*, and

(a)      sold prior to December 11, 2008, the claim per Note is $0.

(b)      retained at the end of December 10, 2008, the claim per Note is the purchase price less $600.00 (December 11, 2008 Price).

*Section 10(b) Claims – 1.5% Notes due December 15, 2011 (CUSIP: 127387AD0)*

1.      For Cadence 1.5% Notes *purchased on April 23, 2008 through October 22, 2008*, and

(a)      sold prior to October 23, 2008, the claim per Note is $0.

(b)      sold on October 23, 2008 through December 10, 2008, the claim per Note is the purchase price less the sales price.

(c)      retained at the end of December 10, 2008, the claim per Note is the purchase price less $442.50 (December 16, 2008 Price).

2.      For Cadence 1.5% Notes *purchased on October 23, 2008 through December 10, 2008*, and

(a)      sold prior to December 11, 2008, the claim per Note is $0.

(b)      retained at the end of December 10, 2008, the claim per Note is the purchase price less $442.50 (December 16, 2008 Price).

Note:  The combined recovery for the Notes shall not exceed 2% of the Net Settlement Fund.

| Date | Closing Price | Average Closing Price |
|------|---------------|----------------------|
| 12/11/2008 | $3.04 | $3.04 |
| 12/12/2008 | $2.73 | $2.89 |
| 12/15/2008 | $2.61 | $2.79 |
| 12/16/2008 | $3.11 | $2.87 |
| 12/17/2008 | $3.26 | $2.95 |

| Date | Closing Price | Average Closing Price |
|---|---|---|
| 12/18/2008 | $3.18 | $2.99 |
| 12/19/2008 | $3.29 | $3.03 |
| 12/22/2008 | $3.29 | $3.06 |
| 12/23/2008 | $3.22 | $3.08 |
| 12/24/2008 | $3.23 | $3.10 |
| 12/26/2008 | $3.26 | $3.11 |
| 12/29/2008 | $3.28 | $3.13 |
| 12/30/2008 | $3.40 | $3.15 |
| 12/31/2008 | $3.66 | $3.18 |
| 1/2/2009 | $3.84 | $3.23 |
| 1/5/2009 | $3.98 | $3.27 |
| 1/6/2009 | $4.17 | $3.33 |
| 1/7/2009 | $4.03 | $3.37 |
| 1/8/2009 | $4.12 | $3.41 |
| 1/9/2009 | $4.29 | $3.45 |
| 1/12/2009 | $4.12 | $3.48 |
| 1/13/2009 | $4.11 | $3.51 |
| 1/14/2009 | $4.07 | $3.53 |
| 1/15/2009 | $3.94 | $3.55 |
| 1/16/2009 | $3.99 | $3.57 |
| 1/20/2009 | $3.63 | $3.57 |
| 1/21/2009 | $3.79 | $3.58 |
| 1/22/2009 | $3.53 | $3.58 |
| 1/23/2009 | $3.86 | $3.59 |
| 1/26/2009 | $3.90 | $3.60 |
| 1/27/2009 | $4.06 | $3.61 |
| 1/28/2009 | $4.18 | $3.63 |
| 1/29/2009 | $4.01 | $3.64 |
| 1/30/2009 | $3.78 | $3.65 |
| 2/2/2009 | $3.64 | $3.65 |
| 2/3/2009 | $3.68 | $3.65 |
| 2/4/2009 | $3.65 | $3.65 |
| 2/5/2009 | $4.20 | $3.66 |
| 2/6/2009 | $4.50 | $3.68 |
| 2/9/2009 | $4.55 | $3.70 |
| 2/10/2009 | $4.26 | $3.72 |
| 2/11/2009 | $4.30 | $3.73 |
| 2/12/2009 | $4.35 | $3.75 |
| 2/13/2009 | $4.23 | $3.76 |
| 2/17/2009 | $4.01 | $3.76 |
| 2/18/2009 | $3.86 | $3.77 |
| 2/19/2009 | $3.94 | $3.77 |
| 2/20/2009 | $3.85 | $3.77 |
| 2/23/2009 | $3.79 | $3.77 |

| Date | Closing Price | Average Closing Price |
|---|---|---|
| 2/24/2009 | $3.98 | $3.78 |
| 2/25/2009 | $4.11 | $3.78 |
| 2/26/2009 | $4.25 | $3.79 |
| 2/27/2009 | $4.20 | $3.80 |
| 3/2/2009 | $3.97 | $3.80 |
| 3/3/2009 | $3.83 | $3.80 |
| 3/4/2009 | $3.83 | $3.80 |
| 3/5/2009 | $3.73 | $3.80 |
| 3/6/2009 | $3.70 | $3.80 |
| 3/9/2009 | $3.60 | $3.80 |
| 3/10/2009 | $3.83 | $3.80 |

For Class Members who held Cadence Publicly Traded Securities at the beginning of the Class Period or made multiple purchases or sales during the Class Period, the first-in, first-out ("FIFO") method will be applied to such holdings, purchases, and sales for purposes of calculating a claim. Under the FIFO method, sales of Cadence Publicly Traded Securities during the Class Period will be matched against the same type of security, in chronological order, first against securities held at the beginning of the Class Period. The remaining sales of Cadence Publicly Traded Securities during the Class Period will then be matched, in chronological order, against like Cadence Publicly Traded Securities purchased during the Class Period.

An Authorized Claimant will be eligible to receive a distribution from the Net Settlement Fund only if a Class Member had a net loss, after all profits from transactions in Cadence Publicly Traded Securities during the Class Period are subtracted from all losses. However, the proceeds from sales of Cadence Publicly Traded Securities which have been matched against Cadence Publicly Traded Securities held at the beginning of the Class Period will not be used in the calculation of such net loss.

The Court has reserved jurisdiction to allow, disallow or adjust the claim of any Class Member on equitable grounds.

Payment pursuant to the Plan of Allocation set forth above shall be conclusive against all Authorized Claimants. No Person shall have any claim against Lead Plaintiff, any Plaintiffs' counsel, any claims administrator or other Person designated by Lead Plaintiff's counsel or Defendants and/or the Related Parties and/or the Released Persons and/or their counsel based on distributions made substantially in accordance with the Stipulation and the settlement contained therein, the Plan of Allocation, or further orders of the Court. All Class Members who fail to complete and file a valid and timely Proof of Claim shall be barred from participating in distributions from the Net Settlement Fund (unless otherwise ordered by the Court), but otherwise shall be bound by all of the terms of the Stipulation, including the terms of any judgment entered and the releases given.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2011, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I further certify that I caused this document to be forwarded to the following Designated Internet Site at:  http://securities.stanford.edu.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September .

                                                    s/ Jeffrey D. Light
                                                    JEFFREY D. LIGHT

                                                    ROBBINS GELLER RUDMAN
                                                         & DOWD LLP
                                                    655 West Broadway, Suite 1900
                                                    San Diego, CA  92101-3301
                                                    Telephone:  619/231-1058
                                                    619/231-7423 (fax)

                                                    E-mail:jeffl@rgrdlaw.com

652094_1

## Mailing Information for a Case 3:08-cv-04966-SC

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey A. Berens**
  jeff@dyerberens.com

- **Sally J. Berens**
  sberens@gibsondunn.com

- **Peter Arthur Binkow**
  info@glancylaw.com,pbinkow@glancylaw.com

- **Jason Cassidy Davis**
  jdavis@rgrdlaw.com

- **Ethan D. Dettmer**
  edettmer@gibsondunn.com,mjanky@gibsondunn.com,bsperry@gibsondunn.com

- **Robert J. Dyer , III**
  bob@dyerberens.com

- **Lionel Z. Glancy**
  info@glancylaw.com

- **Michael M. Goldberg**
  info@glancylaw.com

- **Kathleen Ann Herkenhoff**
  kah@weiserlawfirm.com

- **Matthew Stewart Kahn**
  MKahn@gibsondunn.com,jyott@gibsondunn.com,LChiou@gibsondunn.com

- **Jeffrey David Light**
  jeffl@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Matthew Paul Montgomery**
  mattm@csgrr.com,e_file_sf@csgrr.com,e_file_sd@csgrr.com

- **Blair Allen Nicholas**
  blairn@blbglaw.com,denab@blbglaw.com,amyn@blbglaw.com,PaulJ@blbglaw.com,kayem@blbglaw.com,jessica.cuccurullo@blbglaw.com,nikim@blbglaw.com,Ben

- **Brian O. O'Mara**
  bo'mara@csgrr.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Timothy Kevin Roake**
  troake@gibsondunn.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **Karen T. Rogers**
  krogers@milberg.com,schang@milberg.com,cchaffins@milberg.com

- **Jeff S. Westerman**
  jwesterman@milberg.com,cchaffins@milberg.com,ckiyotoki@milberg.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Eric L. Zagar**
  ezagar@ktmc.com,jyemm@ktmc.com,der_filings@ktmc.com,rwinchester@ktmc.com,dtewksbury@ktmc.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Catherine J. Kowalowski
Robbins Geller Rudman & Dowd LLP
655 W Broadway
Suite 1900
San Diego, CA 92101
```