GARRETT J. WALTZER (SBN 130764)
Garrett.Waltzer@skadden.com
RICHARD S. HORVATH, JR. (SBN 254681)
Richard.Horvath@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile:  (650) 470-4570

Attorneys for Director Defendants
MICHAEL J. FISTER, DONALD L. LUCAS,
ALBERTO SANGIOVANNI-VINCENTELLI,
GEORGE M. SCALISE, JOHN B. SHOVEN,
ROGER S. SIBONI, JOHN A.C. SWAINSON
and LIP-BU TAN

DOUGLAS M. SCHWAB (SBN 43083)
douglas.schwab@hoganlovells.com
HOGAN LOVELLS US LLP
4 Embarcadero Center, 22nd Floor
San Francisco, California  94111
Telephone:    (415) 374-2300
Facsimile:    (415) 374-2499

Attorneys for Defendants
JAMES J. COWIE, R.L. SMITH
MCKEITHEN, JAMES S. MILLER, JR.,
KEVIN S. PALATNIK and
WILLIAM PORTER

SHIRLI FABBRI WEISS (SBN 079225)
shirli.weiss@dlapiper.com
NOAH A. KATSELL (SBN 217090)
noah.katsell@dlapiper.com
DLA PIPER LLP (US)
401 B St., Suite 1700
San Diego, CA  92101
Telephone:    (619) 699-2700
Facsimile:    (619) 699-2701

Attorneys for Defendant
KEVIN BUSHBY

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re CADENCE DESIGN SYSTEMS, INC. SECURITIES AND DERIVATIVE LITIGATION | **CASE NO. C-08-4966 SC**<br><br>**INDIVIDUAL DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT**<br><br>**Filed Under Separate Cover:**<br><br>**DECLARATION OF RICHARD S. HORVATH, JR.**<br><br>Hearing Date: November 18, 2011<br>Time:            10:00 a.m.<br>Courtroom:  1, 17th Floor<br>Before:          Hon. Samuel Conti |
| This Document Relates To:<br><br>  Nos. CV-10-01849-SC, CV-10-03607-SC, and CV-10-03627-SC | |

**TABLE OF CONTENTS**

ISSUE TO BE DECIDED (N.D. CAL. CIVIL L.R. 7-4) ..................................................................1

PRELIMINARY STATEMENT AND BACKGROUND .................................................................1

ARGUMENT ......................................................................................................................................2

    I.    THE SETTLEMENT RESOLVES UNCERTAIN DERIVATIVE CLAIMS. ..............................2

        A.    Plaintiffs Face Serious Hurdles On Their Oversight Claims. .....................3

            1.    Cadence employed compliance procedures. ...................................3

            2.    Plaintiffs would face serious challenges in proving the Director Defendants failed to monitor Cadence's compliance procedures. ........................................................................................4

        B.    Plaintiffs Are Unlikely To Show That Cadence's Officers Are Liable For The Accounting Misstatements. .........................................................6

        C.    The Severance Packages Were A Proper Exercise Of Business Judgment. ...................................................................................................7

        D.    The Former Officers' Agreements With Cadence Would Likely Imperil The Unjust Enrichment Claims. ....................................................10

    II.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT. .......11

CONCLUSION ................................................................................................................................14

# TABLE OF AUTHORITIES

**CASES**

Aronson v. Lewis
    473 A.2d 805 (Del. 1984) ............................................................................................... 8

Citron v. Fairchild Camera & Instrument Corp.
    569 A.2d 53 (Del. 1989) ............................................................................................ 8, 9

Cohn v. Nelson
    375 F. Supp. 2d 844 (E.D. Mo. 2005) ..................................................................... 2, 13

Desimone v. Barrows
    924 A.2d 908 (Del. Ch. 2007) ....................................................................................... 4

Frederick v. First Union Secs.
    100 Cal. App. 4th 694 (2002) ..................................................................................... 11

Gagliardi v. Tri-Foods Int'l, Inc.
    683 A.2d 1049 (Del. Ch. 1996) ..................................................................................... 6

Graham v. Allis-Chalmers Mfg. Co.
    188 A.2d 125 (Del. 1963) .............................................................................................. 7

Grimes v. Donald
    673 A.2d 1207 (Del. 1996) ............................................................................................ 8

Grobow v. Perot
    539 A.2d 180 (Del. 1988) ............................................................................................ 10

Guttman v. Huang
    823 A.2d 492 (Del. Ch. 2003) ....................................................................................... 4

In re Accuray, Inc. S'holder Deriv. Litig.
    757 F. Supp. 2d 919 (N.D. Cal. 2010) .......................................................................... 6

In re Am. Int'l Group, Inc. Deriv. Litig.
    700 F. Supp. 2d 419 (S.D.N.Y. 2010) ........................................................................... 5

In re Apple Computer, Inc. Deriv. Litig.
    No. C 06-4128 JF (HRL), 2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ..................... 2

In re Caremark Int'l Inc. Deriv. Litig.
    698 A.2d 959 (Del. Ch. 1996) ............................................................................. passim

In re Dow Chem. Co. Deriv. Litig.
    Civil Action No. 4349-CC, 2010 WL 66769 (Del. Ch. Jan. 11, 2010) ..................... 3, 5

In re Merrill Lynch & Co., Inc. Sec., Deriv., & ERISA Litig.
    773 F. Supp. 2d 330 (S.D.N.Y. 2011) ........................................................................... 9

In re NVIDIA Corp. Deriv. Litig.
    Master File No. C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18,
    2009) ............................................................................................................................ 12

In re Rambus Inc. Deriv. Litig.
   No. C 06-3513 JF (HRL), 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) .................................... 13

In re Silicon Graphics Inc. Litig.
   183 F.3d 970 (9th Cir. 1999) .................................................................................................... 3

In re Verisign, Inc., Deriv. Litig.
   531 F. Supp. 2d 1173 (N.D.Cal. 2007) ................................................................................... 10

In re Walt Disney Co. Deriv. Litig.
   907 A.2d 747 (Del. Ch. 2005) ................................................................................................... 8

Janus Capital Group, Inc. v. First Deriv. Traders
   131 S. Ct. 2296 (June 13, 2011) ................................................................................................ 7

Kanter v. Barella
   388 F. Supp. 2d 474 (D.N.J. 2005) ........................................................................................ 4, 5

Levine v. Smith
   591 A.2d 194 (Del. 1991) .......................................................................................................... 9

Nemec v. Shrader
   Civil Action Nos. 3878-CC, 3934-CC, 2009 WL 1204346 (Del. Ch. Apr. 30, 2009) ................ 11

Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines
   534 F. 3d 779 (D.C. Cir. 2008) ........................................................................................... 8, 10

Sherman v. Ryan
   911 N.E.2d 378 (Ill. App. Ct. 2009) ........................................................................................ 11

Stone ex rel. AmSouth Bancorp. v. Ritter
   911 A.2d 362 (Del. 2006) ............................................................................................. 3, 4, 5, 9

Wagner v. Selinger
   No. 16740, 2000 WL 85318 (Del. Ch. Jan. 18, 2000) ............................................................. 10

White v. Panic
   783 A.2d 543 (Del. 2001) ........................................................................................................ 10

Wixon v. Wyndham Resort Dev. Corp.
   No. C. 07-02361 JSW, 2010 WL 3630124 (N.D. Cal. Sept. 14, 2010) ................................... 13

Wood v. Baum
   953 A.2d 136 (Del. 2008) .......................................................................................................... 4

**STATUTES**

8 Del. C. §102(b)(7) ........................................................................................................................ 9

8 Del. C. § 145 .............................................................................................................................. 12

**ISSUE TO BE DECIDED**
**(N.D. CAL. CIVIL L.R. 7-4)**

1. Whether the proposed derivative settlement is within the range of what is fair, reasonable and adequate to Cadence Design Systems, Inc. ("Cadence" or the "Company"), and its shareholders such that the Court should grant preliminary approval of the settlement?

**PRELIMINARY STATEMENT AND BACKGROUND**

Defendants Michael J. Fister, Donald L. Lucas, Alberto Sangiovanni-Vincentelli, George M. Scalise, John B. Shoven, Roger S. Siboni, John A.C. Swainson, and Lip-Bu Tan (collectively, the "Director Defendants"[1]), present or former directors of Cadence, and Kevin Bushby, James J. Cowie, R.L. Smith McKeithen, James Miller, Kevin Palatnik and William Porter, present or former senior officers of Cadence (the "Officer Defendants," and together with the Director Defendants, the "Individual Defendants") respectfully submit this memorandum in support of preliminary approval of the Stipulation of Settlement of the derivative actions dated June 7, 2011 (the "Settlement"). On August 26, 2011, the Court invited supplemental briefing addressing the fairness and reasonableness of the Settlement to Cadence where the Settlement consideration consists of substantial enhancements to Cadence's corporate governance. The Court also invited supplemental briefing regarding the adequacy of the proposed notice to Cadence's shareholders. Plaintiffs filed their re-noticed motion in support of preliminary approval of settlement in the derivative actions on September 26, 2011.

The Individual Defendants join in the arguments made by Cadence in support of Plaintiff's re-noticed motion. The Individual Defendants also would accept whatever notice the Court orders as adequate for this action. To avoid repetition, the Individual Defendants refer to the papers submitted by Cadence for the details of the background of the derivative actions, the events that led to the proposed Settlement and the specific terms of the Settlement.

---

[1] Mr. Fister was also the former Chief Executive Officer of Cadence. He resigned from the Cadence Board on October 14, 2008, and resigned from his position as CEO on October 15, 2008 – both events occurring before the derivative actions were filed.

The Individual Defendants submit this brief to underscore that the proposed derivative settlement is fair and reasonable because it resolves Plaintiffs' derivative claims that, if not settled, would face substantial hurdles on the merits. Considering the significant corporate governance reforms Cadence stands to receive in exchange for the dismissal of the derivative claims, the terms of the Settlement are fair, adequate and reasonable to Cadence and thus are more than adequate to meet the requirements of preliminary approval. The Individual Defendants acknowledge that Plaintiffs believe their claims are meritorious and no doubt disagree with some of the positions set forth below. The Individual Defendants file this memorandum only to show that the claims are subject to substantial defenses. See, e.g., In re Apple Computer, Inc. Deriv. Litig., No. C 06-4128 JF (HRL), 2008 WL 4820784, at *2 (N.D. Cal. Nov. 5, 2008) (in considering the fairness of a settlement, the "principal factor" the court considered was "the benefit to Apple as compared to the risks posed by derivative litigation"); see also Cohn v. Nelson, 375 F. Supp. 2d 844, 853 (E.D. Mo. 2005) ("The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.") (quotation and citation omitted).

## ARGUMENT

### I. THE SETTLEMENT RESOLVES UNCERTAIN DERIVATIVE CLAIMS.

Plaintiffs do not claim that the Individual Defendants engaged in self-dealing activity or otherwise used their corporate positions to obtain a financial benefit for themselves. Instead, Plaintiffs allege that the Director Defendants failed to prevent certain Cadence employees from misreporting revenue from subscription licenses in the first and second quarters of 2008, and the subsequent overstatement of Cadence's revenue as a result of that misreporting. (See Compl. Counts I- VII.)[2] That misreporting and overstatement of revenue prompted a related federal

---

[2] Unless otherwise noted, references to "Complaint" or "Compl." in this brief are to the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, Professional Negligence, Breach of Contract, and Unjust Enrichment in the action captioned Hamilton v. Fister, et al., No. CV-10-01849-SC (N.D. Cal. Apr. 28, 2010). While there may be some substantive differences between the Hamilton complaint and the complaints filed in the other derivative actions identified in the Settlement, each of the complaints challenges the same underlying conduct alleged in the Hamilton complaint.

securities action, which is also before the Court on a motion to approve a proposed settlement. These kinds of derivative claims are generally referred to as oversight, or Caremark, claims. Plaintiffs also appear to allege that Mr. Fister, acting as Cadence's CEO, and the Officer Defendants either failed to prevent, or participated in, the alleged misreporting of revenue in the first half of 2008.  (Id.)  Finally, Plaintiffs allege that Messrs. Fister, Bushby, McKeithen, Miller and Porter, improperly received severance packages pursuant to their employment agreements when their employment by Cadence ceased.  (See Compl. Counts VIII & IX.)

### A. Plaintiffs Face Serious Hurdles On Their Oversight Claims.

Plaintiffs' Caremark claims allege that the Director Defendants are liable to Cadence for failing to oversee and ensure that lower-level Cadence employees reported Cadence's financial results accurately.  (See Compl. Counts I-VII.)  These oversight claims have been described as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." In re Caremark Int'l Inc. Deriv. Litig., 698 A.2d 959, 967 (Del. Ch. 1996).[3]  Prevailing on Caremark claims requires proof that the Director Defendants acted in "bad faith" in that they "*knew* they were not discharging their fiduciary obligations or that the directors demonstrated a *conscious* disregard for their responsibilities as by failing to act in the face of a *known* duty to act." See In re Dow Chem. Co. Deriv. Litig., Civil Action No. 4349-CC, 2010 WL 66769, *12 (Del. Ch. Jan. 11, 2010) (emphasis added, quotation and citation omitted); see also Stone ex rel. AmSouth Bancorp. v. Ritter, 911 A.2d 362, 367, 369 (Del. 2006) (oversight claims require affirmative facts showing a "sustained or systemic failure of the board to exercise oversight") (quoting Caremark, 698 A.2d at 971).  To establish such bad faith conduct, Plaintiffs must prove facts showing that "(a) the directors *utterly* failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, *consciously* failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems that the directors knew that they were not discharging their fiduciary obligations." Stone, 911 A.2d at 369.

#### 1. Cadence employed compliance procedures.

---

[3] The substantive law of Delaware would apply to Plaintiffs' claims because Cadence is a Delaware corporation. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 990 (9th Cir. 1999).

Here, the Cadence Board had in place an Audit Committee responsible for monitoring Cadence's compliance with its financial reporting obligations.  (Compl. ¶ 68.)  Moreover, Plaintiffs do not allege that there were any prior problems with Cadence's accounting controls or financial statements that alerted the Cadence Board or its Audit Committee to weaknesses with those controls or statements.  The Caremark claims therefore could not be based an utter failure "to implement any reporting or information system or control[]."  Stone, 911 A.2d at 370; see also Kanter v. Barella, 388 F. Supp. 2d 474, 480 (D.N.J. 2005) (dismissing Caremark claim where the complaint acknowledged the MedQuist board of directors had an audit committee).

        2.      <u>Plaintiffs would face serious challenges in proving the Director Defendants failed to monitor Cadence's compliance procedures.</u>

Plaintiffs also face a substantial risk in proving the second prong of a Caremark claim:  that the Director Defendants *consciously* failed to monitor Cadence's internal controls or failed to act in the face of known "red flags" showing employee misconduct.  See Stone, 911 A.2d at 370 (where controls have been implemented, Caremark claim requires a showing that directors "*consciously failed to monitor* or oversee its [the Company's] operations") (emphasis added).

Caremark claims cannot succeed on the allegation that the Director Defendants failed to monitor Cadence's recognition and reporting of revenue merely because Cadence was exposed to liability for employee misconduct.  See, e.g., Desimone v. Barrows, 924 A.2d 908, 940 (Del. Ch. 2007) ("Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so.").  Similarly, the Director Defendants cannot have violated their oversight obligations merely because they served in positions tasked with oversight responsibilities and "should have known" about alleged employee misconduct.  See, e.g., Wood v. Baum, 953 A.2d 136, 142 (Del. 2008) (rejecting a claim that membership on an Audit Committee was sufficient to infer knowledge as "contrary to well-settled Delaware law").

Instead, Plaintiffs must prove *affirmative facts* showing that the Director Defendants consciously disregarded their duties.  Plaintiffs do not allege such affirmative facts.  For example, while the Cadence Board had in place an Audit Committee to monitor Cadence's compliance with

4

its financial reporting obligations, the Complaint does not allege that the Audit Committee's efforts were deficient.  See Guttman v. Huang, 823 A.2d 492, 507 (Del. Ch. 2003) (dismissing Caremark claim where the complaint failed to plead facts showing that "the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuance").

In addition, Plaintiffs would face extreme challenges proving that "red flags" showing employee or accounting misconduct were waved at the Cadence Board, which were then ignored. See Stone, 911 A.2d at 362 ("In the absence of red flags, good faith in the context of oversight must be measured by the directors' actions 'to assure a reasonable information and reporting system exists' and not by second-guessing after the occurrence of employee conduct that results in an unintended adverse outcome.") (quoting Caremark, 698 A.2d at 967-68, 971); see also In re Dow, 2010 WL 66769, at *13 (dismissing Caremark claims where plaintiff did not allege "red flags" alerting the Dow board of directors to the alleged employee misconduct).[4]

Finally, the Complaint acknowledges that the Director Defendants immediately conducted an investigation and took corrective action when they learned of the accounting errors.  (See Compl. ¶¶ 151, 157-63.)  As detailed in the Company's brief in support of the Settlement, that investigation revealed that any accounting misstatements occurred because certain lower-level

---

[4]   The only implied "red flag" is a drafting issue created by the SEC's objection to the use of the word "sufficiently" in the following passage from Cadence's Form 10-Q filed with the SEC on April 25, 2008:

> Based on their evaluation as of March 29, 2008, our CEO and CFO have concluded that our disclosure controls and procedures were sufficiently effective to ensure that the information required to be disclosed by us in our reports filed or submitted under the Exchange Act is recorded . . . .  (Compl. ¶¶82-84.)

This issue is a red herring, because Cadence had used the qualifier "sufficiently" in its SEC filings since 2005 – well before the accounting misstatements that Plaintiffs challenge in the derivative actions.  (See, e.g., Horvath Decl. Exs. B at 54, C at 40 & D at 36.)  In addition, it is unclear how the use of this single word in SEC filings (which was later removed) should have alerted the Director Defendants to the alleged accounting misstatements.  See In re Am. Int'l Group, Inc. Deriv. Litig., 700 F. Supp. 2d 419, 436 (S.D.N.Y. 2010) (that directors may have known of a handful of alleged "red flags" fell far short of pleading that the directors faced a substantial risk of liability for a "sustained or systematic failure … to exercise oversight").

employees operating overseas failed to report side agreements in contravention of Cadence's policies. (See Cadence Br. at 1.) Those employees were terminated. (Id.) The investigation further concluded that the Individual Defendants did not know of any of the side agreements or the accounting misstatements as they occurred, and did not personally profit from those side agreements or misstatements. (Id.) As a result of the investigation, the Company announced both an earnings restatement and that it was correcting a material weakness in the Company's financial reporting. (See Compl. ¶¶ 158, 163; see also Cadence Br. at 2.) These facts and admissions "paint[] a picture of a board of directors that acted responsively given the circumstances." Kanter, 388 F. Supp. 2d at 481 (dismissing Caremark claims for plaintiff's failure to plead a substantial likelihood of liability where MedQuist's board conducted an investigation and took corrective action upon learning of improper billing practices).

### B. Plaintiffs Face Risk In Proving That Cadence's Officers Are Liable For The Accounting Misstatements.

Plaintiffs also face significant obstacles in showing that Mr. Fister and the Officer Defendants breached their fiduciary duties as officers of Cadence by allegedly issuing, or failing to prevent the issuance of, the false financial statements in the first half of 2008. (See, e.g., Compl. ¶¶ 21, 23, 82, 107 & Count I.) Such breach of fiduciary duty claims would be barred absent a showing that Mr. Fister and the Officer Defendants engaged in self-dealing, had an improper motive or acted in bad faith in making statements about the Company's financial position. See Gagliardi v. Tri-Foods Int'l, Inc., 683 A.2d 1049, 1051 (Del. Ch. 1996) ("in the absence of facts showing self-dealing or improper motive, a corporate officer or director is not legally responsible to the corporation for losses that may be suffered as a result of a decision that an officer made or that directors authorized in good faith"); see also In re Accuray, Inc. S'holder Deriv. Litig., 757 F. Supp. 2d 919, 934 (N.D. Cal. 2010) (dismissing derivative claims for breach of fiduciary duty that officers submitted false financial statements with the SEC on behalf of Accuray where the complaint did not allege that officers deliberately disregarded or were recklessly indifferent to alleged inaccuracies in the statements).

Plaintiffs face significant risk in making this showing for a number of reasons, including:

- As revealed by the Company's internal investigation, Mr. Fister and the Officer Defendants did not know of the side agreements or the accounting misstatements and did not personally profit from those side agreements or misstatements. (See Cadence Br. at 1.)

- The Company's internal investigation showed the accounting misstatements arose because lower-level Cadence employees in a foreign office violated Cadence policies by failing to report side agreements. (See Cadence Br. at 1.)

- The derivative complaints do not allege any deficiencies in Cadence's revenue recognition controls or errors in its financial statements before the 2008 accounting misstatements; hence, there is an absence of any "red flags."

- Just as the SEC's objection to the use of the word "sufficiently" in describing the effectiveness of Cadence's disclosure controls and procedures cannot be taken as a "red flag" that alerted the Director Defendants to a weakness in internal controls (see above at 5, n.4), this language is not an admission that Mr. Fister or the Officer Defendants were aware of accounting misstatements or control weaknesses.

- Neither Mr. Fister nor the Officer Defendants had reason to doubt the integrity of lower-level Cadence employees. See Caremark, 698 A.2d at 969 (citing Graham v. Allis-Chalmers Mfg. Co., 188 A.2d 125, 130-31 (Del. 1963)) ("absent grounds to suspect deception, neither corporate boards nor senior officers can be charged with wrongdoing simply for assuming the integrity of employees and the honesty of their dealings on the company's behalf").

- The positions of Messrs. Cowie, McKeithen and Miller meant they would not have had any involvement in the alleged accounting misstatements. (See Compl. ¶¶ 51 & 53 (Mr. Miller was Vice President in the Products and Technologies Organization and Mr. McKeithen was in charge of community and governmental relations); see also Verified Shareholder Derivative Complaint, Samani v. Fister et al., 10-cv-3607 (N.D. Cal. Aug. 16, 2010) ¶ 22 (Mr. Cowie is Cadence's current General Counsel and was its General Counsel during the class period) ("Samani Compl.").

- Mr. Bushby is not alleged to have made or have "ultimate authority" over any of the statements challenged in the securities action and therefore has a strong defense to those claims. See Janus Capital Group, Inc. v. First Deriv. Traders, 131 S. Ct. 2296, 2300, 2302 (June 13, 2011) (only the "maker" of a misstatement could face liability under Section 10(b) of the Exchange Act and Rule 10b-5, where to be a "maker" of a statement one must have "ultimate authority over the statement, including its content and whether and how to communicate it").

C. **Plaintiffs Face A Significant Hurdle In Proving That The Severance Packages Were Not A Proper Exercise Of Business Judgment.**

Plaintiffs allege that Director Defendants Lucas, Sangiovanni-Vincentelli, Scalise, Shoven, Siboni, Swainson and Tan breached their fiduciary duties when they decided that former officers Fister, Bushby, McKeithen, Miller and Porter should be terminated, but not for cause. (See Compl. ¶ 144 & Count VIII.) The decision not to terminate for cause led to the payment of severance

7

**INDIVIDUAL DEFENDANTS' MPA ISO APPROVAL OF DERIVATIVE SETTLEMENT**   **CASE NO. C-08-4966 SC**

benefits, which Plaintiffs allege the seven Director Defendants should pay to Cadence as damages. But Plaintiffs would face a high hurdle in proving that the seven Director Defendants' decision is not protected by the business judgment rule. See Grimes v. Donald, 673 A.2d 1207, 1215 (Del. 1996) ("If an independent and informed board, acting in good faith, determines that the services of a particular individual warrant large amounts of money, whether in the form of current salary or severance provisions, the board has made a business judgment."); see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines, 534 F. 3d 779, 791 (D.C. Cir. 2008) (business judgment rule protected decision by board of directors to approve severance packages for executives even if board had arguable grounds to terminate executives for cause).  Moreover, Mr. Fister could not have improperly approved, and did not approve, his own severance package because Mr. Fister resigned as a director before the Cadence Board approved his package and accepted his resignation as Cadence's CEO.  (See Compl. Count VIII; see also Samani Compl. ¶ 100.)  Similarly, there are no allegations that any of the Officer Defendants participated in any of the termination decisions.

The business judgment rule presumes that the seven Director Defendants approved the severance packages "on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." Citron v. Fairchild Camera & Instrument Corp., 569 A.2d 53, 64 (Del. 1989) (quoting Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).  To overcome this presumption, facts would have to be proven showing that each director breached his fiduciary duty of loyalty or good faith, failed to exercise due care, or that the challenged action constituted waste. See Citron, 569 A.2d at 64 ("The burden falls upon the proponent of a claim to rebut the presumption by introducing evidence either of director self-interest, if not self-dealing, or that the directors either lacked good faith or failed to exercise due care."); see also In re Walt Disney Co. Deriv. Litig., 907 A.2d 693, 747 (Del. Ch. 2005) ("When a plaintiff fails to rebut the presumption of the business judgment rule, she is not entitled to any remedy, be it legal or equitable, unless the transaction constitutes waste.").  If the presumption of the business judgment rule is not overcome, then the seven Director Defendants and their approval of the severance packages are shielded from further review by the Court. See Citron, 569 A.2d at 64 ("as a substantive rule of law," the

8

business judgment rule "protect[s] the directors and the decisions they make"); see also Levine v. Smith, 591 A.2d 194, 207 (Del. 1991) ("If a board's decision can be attributed to any rational business purpose, . . . a court will not substitute its judgment for that of a board.") (quotation and citation omitted).

Moreover, claims related to the severance packages could only proceed if the seven Director Defendants acted disloyally or in bad faith when they approved those packages. This is because, as with many public companies incorporated in Delaware, Cadence's Certificate of Incorporation contains a provision under section 102(b)(7) of the Delaware General Corporations law shielding the Company's directors from liability for monetary damages for a breach of their duty of care. (Horvath Decl. Ex. A at Art. VII.) See, e.g., Stone, 911 A.2d at 367 (exculpatory charter provision shielded directors from monetary liability for a breach of the duty of care); 8 Del. C. §102(b)(7) (permitting a company to adopt through charter amendment a clause exculpating directors from monetary liability for breaches of the duty of care).

It cannot be shown that the seven Director Defendants acted disloyally when they approved the severance packages. No Director Defendant, sitting on the Board when the packages were approved, had a personal or financial interest in the severance packages that would have compromised his loyalty to the Company. See In re Merrill Lynch & Co., Inc. Sec., Deriv., & ERISA Litig., 773 F. Supp. 2d 330, 341 (S.D.N.Y. 2011) (dismissing challenge to board approval of officer compensation and noting that "a lack of diligence without a personal interest in the bonus payments is insufficient to establish a breach of duty subjecting any member of the BofA Board to liability").

It is equally unlikely that facts can be proven showing that the seven Director Defendants approved the severance packages in bad faith. First, the assertion that the former officers should have been terminated for cause is flawed because their employment was terminated before the alleged accounting misstatements came to light. These officers still would have been entitled to their severance benefits assuming that the accounting misstatements were discovered before the former officers' departures because the Company's investigation revealed that those officers did not know of the accounting misconduct while it was occurring. (See above at 6-7.) In addition, the

seven Director Defendants' good faith in approving the severance packages is shown by the fact the packages let Cadence avoid costly litigation with the departing officers over whether a termination without severance payments would have violated the officers' employment agreements. (See Compl. ¶ 32.)  See also Pirelli, 534 F.3d at 791 (business judgment rule protected directors' approval of severance packages for former officers, where the packages avoided potentially costly post-employment litigation with the officers).  As further support for the seven Director Defendants' good faith approval of the severance packages, the "supplemental agreements" gave Cadence the right to receive post-termination services from Messrs. Bushby, Miller and Porter while the Company searched for their replacements.  (Compl. ¶ 32.)  Their commitment to provide such services is sufficient to justify any additional monthly salaries for these officers under their "supplemental agreements."  See also Wagner v. Selinger, No. 16740, 2000 WL 85318, **2-3 (Del. Ch. Jan. 18, 2000) (business judgment rule protected grant of severance benefits to departing CEO that exceed those in his employment agreements where CEO agreed, in part, to provide consulting services at the company's request after his termination).[5]

### D. The Former Officers' Agreements With Cadence Would Likely Imperil The Unjust Enrichment Claims.

Plaintiffs claim that Messrs. Fister, Bushby, McKeithen, Miller and Porter were unjustly enriched at the expense of the Company because of the severance packages they received.  (See Compl. Count IX.).  But these officers' pre-existing employment agreements with Cadence entitled them to the severance benefits, and Cadence paid Messrs. Bushby, Miller and Porter additional amounts under "supplemental agreements."  (See Compl. ¶ 32.)[6]  All these benefits were paid

---

[5] To the extent the severance payments are challenged on a waste theory, such claims face a practically insurmountable burden.  To prove waste, it must be shown that what Cadence received in return for those packages was "so inadequate in value that no person of ordinary, sound business judgment would deem it worth that which the corporation has paid."  Grobow v. Perot, 539 A.2d 180, 189 (Del. 1988) (quotation and citation omitted); see also White v. Panic, 783 A.2d 543, 554 (Del. 2001) (a waste claim requires defendants to have "irrationally squander[ed] corporate assets").  The benefits of the severance packages to Cadence would likely defeat a waste claim.

[6] It is also noteworthy that the employment agreements for Mr. Fister and the Officer Defendants contained arbitration clauses.  Those clauses are enforceable against derivative plaintiffs.  See In re Verisign, Inc., Deriv. Litig., 531 F. Supp. 2d 1173, 1223-24 (N.D.Cal. 2007) (derivative claims against company's auditor were subject to arbitration according to the company's agreement with the auditor); see also Frederick v. First Union Securities, 100 Cal. App.

*(cont'd)*

under either pre-existing contracts or contracts requiring continuing consulting services. Accordingly, the claims for unjust enrichment face a substantial risk.  See Nemec v. Shrader, Civil Action Nos. 3878-CC, 3934-CC, 2009 WL 1204346, at *6 (Del. Ch. Apr. 30, 2009) (dismissing unjust enrichment claim because "Delaware courts . . . have consistently refused to permit a claim for unjust enrichment when the alleged wrong arises from a relationship governed by contract"). Finally, the claims to recoup the payments from the Officer Defendants themselves are no better than the underlying claims against them, discussed above.[7]

## II. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT.

All of the claims asserted in the derivative actions face substantial obstacles in order to achieve any recovery for Cadence.  In its August 26 Order, the Court noted that under the proposed Settlement, Cadence would alter its corporate governance practices in a manner that would arguably strengthen its internal controls.  (Order at 6.)  As discussed in the Company's brief, the corporate governance procedures agreed to in this Settlement do provide real benefits to the Company directly related to preventing a future occurrence of events like those leading to this litigation.  In the circumstances of this case, there should be no concern whether the Settlement provides an adequate recovery for the Company.  Derivative settlements of this type are routinely approved by courts as fair, adequate and reasonable where, as here, plaintiffs face such substantial hurdles to prevail on their derivative claims.

Caremark, 698 A.2d 959, proves this point.  There, the court approved the settlement of a shareholder derivative action as fair, reasonable and adequate to the company where the only consideration the company received to resolve uncertain oversight claims was corporate

---

*(cont'd from previous page)*
4th 694, 697-98 (2002) (agreement to arbitrate between En Pointe Technologies and the market maker for En Pointe's stock applied to derivative claims brought on behalf of En Pointe against the market maker).  Mr. Fister and the Officer Defendants have not waived their right to arbitration.

[7] Because the Individual Defendants are not likely to be found liable for the accounting misstatements, the Individual Defendants are not likely to be found to have been unjustly enriched by the compensation they received for their service to Cadence while those misstatements occurred. (See Compl. Count IV.)  In addition, it is highly unlikely that facts could be presented supporting that unjust enrichment claim.  See Sherman v. Ryan, 911 N.E.2d 378, 399 (Ill. App. Ct. 2009) (dismissing unjust enrichment claim where plaintiffs did not allege that officers "*performed no work in exchange for their compensation*") (emphasis added).

11

INDIVIDUAL DEFENDANTS' MPA ISO  APPROVAL OF DERIVATIVE SETTLEMENT                                 CASE NO. C-08-4966 SC

governance improvements. Id. at 965 n.13, 972.  At issue in Caremark was whether Caremark's directors breached their fiduciary duties for failing to prevent violations of federal law by Caremark and its employees.  Id. at 960-61, 967.  These violations led to Caremark pleading guilty to a felony charge of mail fraud and paying nearly $250 million in civil penalties, criminal fines and reimbursements to third parties.  Id. at 960-61.  Before the court ruled on any motion to dismiss for the plaintiffs' failure to make a demand on the Caremark board of directors, the court approved a settlement agreement submitted by the parties.  Id. at 965-66, 972.  In approving the settlement, the court held:

> "[t]he changes in corporate practice that are presented as consideration for the settlement do not impress one as very significant.  *Nonetheless, that consideration appears fully adequate to support dismissal of the derivative claims of director fault . . . [which] quite likely were susceptible to a motion to dismiss. . . .*"

Id. at 970-71 (emphasis added).  Indeed, the court approved the settlement providing only for changes in corporate governance even though the corporate liability "that eventuated in this instance was huge.  But the fact that it resulted from a violation of criminal law alone does not create a breach of fiduciary duty by directors."  Id. at 972.

The reasons that prompted the Court of Chancery to approve the settlement in Caremark should give the Court comfort in granting preliminary approval of the Settlement in this case.  The conduct at issue in Caremark involved criminal violations which resulted in the company's payment of $250 million in fines, penalties and reimbursements.  No remotely similar conduct is alleged here.  The conduct here did not involve criminal allegations and the Company has resolved the claims against it for substantially less amounts.

The Settlement would allow the parties to avoid the uncertainties and risks of litigation, as well as the enormous litigation costs (which would be borne by the Company).[8]  In return for the

---

[8] Delaware law mandates that a company indemnify its current or former officers and directors for legal fees and expenses who successfully defend derivative litigation based on their corporate service.  8 Del. C. § 145(c).  In addition, the Individual Defendants could be indemnified by the Company for legal fees and expenses even if they are found liable to the Company.  See 8 Del. C. § 145(b) (a director or officer may be indemnified if he has "been adjudged liable to the corporation" to the extent "the Court of Chancery or the court in which such action or suit was brought shall determine upon application that . . . such person is fairly and reasonably entitled to indemnity for such expenses which the Court of Chancery or such other court shall deem proper").

dismissal of uncertain derivative claims on which Plaintiffs are unlikely to prevail, see In re NVIDIA Corp. Deriv. Litig., Master File No. C-06-06110-SBA (JCS), 2009 U.S. Dist. LEXIS 24973, at *17 (N.D. Cal. Mar. 18, 2009) ("the odds of winning a derivative lawsuit are extremely small because derivative lawsuits are rarely successful") (quotation and citation omitted), the Settlement would enhance Cadence's corporate governance and compliance policies in areas directly implicated in the derivative actions. These governance enhancements (described more fully in Cadence's brief) include, among other things: (i) revised policies and procedures related to revenue recognition, internal controls and financial statements; (ii) additional training for directors and Cadence employees; and (iii) new policies and procedures for senior officer compensation and severance.

These substantial enhancements to Cadence's corporate governance and compliance policies would "provide[] lasting remedial terms that are specifically designed to protect and preserve [the Company] for the benefit of its shareholders, and preserve[] valuable assets of the Company." Cohn, 375 F. Supp. 2d at 853 (approving settlement of Caremark claims where individual defendants did not make an economic contribution, and where the settlement's corporate governance enhancements meant the company was "far less likely to become subject to long and costly securities litigation in the future"). Under these circumstances, it is not surprising that courts routinely approve therapeutic-only settlements in derivative actions where, as here, the prospect of success on the merits is uncertain. See, e.g., In re Rambus Inc. Deriv. Litig., No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) (approving settlement that provided "long term remedial measures that are specifically designed to protect the shareholders", and where "[l]iability was by no means a foregone conclusion"); Wixon v. Wyndham Resort Dev. Corp., No. C. 07-02361 JSW, 2010 WL 3630124, at *3 (N.D. Cal. Sept. 14, 2010) (approving settlement that included only corporate governance reforms where the "proposed settlement provides for immediate changes and relief, and it eliminates . . . risks of continued litigation, including the very real risk of not recovery after several years of litigation") (quotation and citation omitted).

## CONCLUSION

For reasons stated above, the Individual Defendants respectfully request that the Court grant preliminary approval of the Settlement.

DATED: October 11, 2011

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: ___/s/ Garrett J. Waltzer___
GARRETT J. WALTZER
Attorneys for Defendants
MICHAEL J. FISTER, DONALD L. LUCAS,
ALBERTO SANGIOVANNI-VINCENTELLI,
GEORGE M. SCALISE, JOHN B. SHOVEN,
ROGER S. SIBONI, JOHN A.C. SWAINSON
and LIP-BU TAN

I, Garrett J. Waltzer, am the ECF User whose ID and password are being used to file this Joint Memorandum of Points and Authorities in Support of Preliminary Approval of Settlement. In compliance with General Order 45, X.B., I hereby attest that each of the following signatories has concurred in this filing.

HOGAN LOVELLS US LLP

By: ___/s/ Douglas M. Schwab___
DOUGLAS M. SCHWAB
Attorneys for Defendants
JAMES J. COWIE, R.L. SMITH MCKEITHEN,
JAMES S. MILLER, JR., KEVIN S. PALATNIK
and WILLIAM PORTER

DLA PIPER LLP

By: ___/s/ Shirli Fabbri Weiss___
SHIRLI FABBRI WEISS
Attorneys for Defendant
KEVIN BUSHBY