IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CADENCE DESIGN SYSTEMS, INC. SECURITIES AND DERIVATIVE LITIGATION | ) Case No. C-08-4966 SC )<br>)<br>) ORDER GRANTING FINAL<br>) APPROVAL OF CLASS ACTION<br>) SETTLEMENT AND PLAN OF |
| This Document Relates To:<br>CASE NOS. 08-4966 SC, 08-5027 SC, AND 08-5273 SC | ) ALLOCATION OF SETTLEMENT<br>) PROCEEDS AND GRANTING IN<br>) PART AND DENYING IN PART<br>) MOTION FOR ATTORNEY FEES<br>) AND EXPENSES<br>)<br>)<br>)<br>) |

## I. INTRODUCTION

Lead Plaintiff in the above-captioned matter brings a consolidated securities class action against Defendants Cadence Design Systems, Inc. ("Cadence") and a number of its officers and directors (collectively, "Defendants"), alleging that Defendants made false and misleading public statements concerning Cadence's financial condition. ECF No. 53 ("FAC") ¶¶ 1-3. On May 31, 2011, the parties entered into a stipulated settlement ("the Settlement"), whereby Lead Plaintiff agreed to dismiss its claims against Defendants in exchange for $38 million, plus interest. ECF No. 148 ("Settlement"). Now before the Court is Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of

Allocation of Settlement Proceeds. ECF Nos. 169 ("Settlement Mot."). Lead Plaintiff's counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), have also filed a motion for Attorney Fees and Expenses for 25 percent of the $38 million settlement fund, i.e., $9.5 million, plus interest and $272,008.73 in expenses. ECF No. 170 ("Att'y Fees Mot.").

The Court held a hearing on these motions on February 24, 2012, has reviewed all materials filed in connection with the motions, and has requested and received supplemental briefing from Lead Plaintiff on a number of issues. See ECF Nos. 180, 183, 185. For good cause shown, the Court GRANTS Lead Plaintiff's Motion for Approval of the Settlement. However, the Court finds that Robbins Geller's request for 25 percent of the $38 million settlement fund is excessive in light of the totality of the circumstances. Instead, the Court awards Robbins Geller 25 percent of the first $10 million of the settlement fund, 20 percent of the second $10 million, and 15 percent of the remainder, i.e., $7.2 million. The Court also awards Robbins Geller interest and expenses, as requested.

**II.  BACKGROUND**

On or after October 29, 2008, three securities class actions were filed against Defendants.[1] The Court consolidated these cases on March 4, 2009, appointing Alaska Electrical Pension Fund as Lead Plaintiff and Robbins Geller as Lead Plaintiff's Counsel. ECF No. 36. Lead Plaintiff filed a consolidated complaint on April 24,

---

[1] Hu v. Cadence Design Sys., Inc., C-08-4966; Vyas v. Cadence Design Sys., Inc., C-08-5027; Collins v. Cadence Design Sys., Inc., C-08-5273.

2

2008. ECF No. 39. The consolidated complaint, like the initial complaints, alleged that Defendants made false and misleading statements which artificially inflated the price of Cadence's stock. Id. The consolidated complaint was brought on behalf of the class of persons who had purchased Cadence's publicly traded securities between April 23, 2008 and December 10, 2008 (the "Class Period"). Id. ¶ 1.

Defendants subsequently filed a motion to dismiss, which the Court granted with leave to amend. ECF Nos. 43, 48. On October 14, 2009, Lead Plaintiff filed its First Amended Complaint ("FAC"), alleging additional facts concerning Defendants' conduct. The Court denied Defendants' motion to dismiss the FAC. ECF No. 71. The Court then allowed discovery to proceed and Defendants subsequently filed a Motion for Partial Summary Judgment and a Motion for Judgment on the Pleadings, which Lead Plaintiff opposed. ECF Nos. 84, 96, 111.

Pursuant to a stipulation by the parties, the Court stayed the hearing on Defendants' Motions for Summary Judgment and Judgment on the Pleadings so that the parties could engage in formal mediation. ECF No. 131. The parties then participated in two formal mediation sessions with the Honorable Edward A. Infante ("Judge Infante") presiding and continued settlement negotiations outside of these sessions with the assistance of Judge Infante. As a result of these negotiations, the parties entered into the Settlement on May 31, 2011.

The Settlement provides for the creation of a $38 million settlement fund which will accrue interest at a rate of 4 percent per annum from February 18, 2011 until paid. Settlement § 2.1.

3

Under the Settlement, the funds are to be applied to pay: (1) costs associated with locating and providing notice to the class members, (2) taxes and tax expenses, and (3) Robbins Geller's attorney fees and costs. Id. § 5.2. The remainder of the funds is to be distributed to class members who submit valid proofs of claim. Id. Class members' recovery will vary depending upon how many shares they held during the class period and whether and when they sold those shares. See ECF No. 167-1. Under the Settlement, the Lead Plaintiff and class members are deemed to have fully and forever dismissed each and every claim that has been or could have been asserted in this litigation. Settlement §§ 1.22, 4.1-4.3.

On October 15, 2011, the Court issued an order preliminarily approving the Settlement. ECF No. 167 ("Oct. 15, 2011 Order"). In the October 15, 2011 Order, the Court certified the class for settlement purposes, set a fairness hearing for February 24, 2012, appointed the firm of Gilardi & Co. LLC ("Gilardi") as the claims administrator, and approved the form and content of the class notice and claims process proposed by Lead Plaintiff. Id.

Pursuant to the Court's order, the claims administrator attempted to identify all purchasers of Cadence stock during the Class Period and, on December 2, 2011, mailed notice claim packages to 998 potential members of the class. Sylvester Decl. ¶ 3.[2] The notice set forth the formula for the calculation of claims under the Settlement. The claims administrator also sent claims packages

---

[2] Several Gilardi employees filed declarations in support of the proposed settlement, including Carole K. Sylvester ("Sylvester") and Matthew S. Kahn ("Kahn"). ECF Nos. 172 ("Sylvester Decl."), 174 ("Kahn Decl."). Peter Crudo ("Crudo"), Chief Executive Officer of Gilardi, also submitted a declaration in response to a Court order requesting additional infomation concerning the number of claims submitted. ECF No. 184 ("Crudo Decl.").

4

and cover letters to a list of 236 brokerages, custodial banks, and other institutions that hold Cadence securities in "street name" and mailed 4,878 claim packages and cover letters to institutions included on the Securities and Exchange Commission's ("SEC") list of active brokers and dealers. Id. ¶¶ 4, 6. The claims administrator also acted as a repository for shareholder inquiries and communications in this action and established a toll-free number to accommodate potential class member inquiries. Id. ¶¶ 8, 11. Additionally, Cadence posted the notice to its website, filed it with the SEC on a Form 8-K, and published it in Investor's Business Daily. Kahn Decl. ¶ 2.

A substantial number of investors responded to the notice by filing claims. As of April 2, 2012, the claims administrator had received 7,768 claims, representing over 523 million total common stock shares. Crudo Decl. ¶ 5. The average number of Cadence shares held by those 7,768 class members is 67,366. Id. The claims administrator estimates that the average loss per share resulting from the alleged fraud was $0.49, and that the average recovery per share, using the gross settlement amount as the numerator, is $0.26. Id. ¶¶ 4, 6. In other words, if no attorney fees or other expenses were taken out of the settlement fund, claimants would recover about 50 percent of their alleged losses through the Settlement.

Only one potential class member, the Lau Family Trust ("Lau"), has objected to the settlement.[3] Lau asserts that the start date for the class period should be moved back to some date prior to

---

[3] The objection was filed with the Court but has not been posted to ECF.

5

April 23, 2008 and that the class definition should extend to persons who held Cadence stock during this earlier period. Lau does not specify what, if any, misrepresentations were made in connection with Cadence stock during this earlier time.

Lead Plaintiff has filed a Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and Robbins Geller has filed a Motion for Attorney Fees and Expenses. In the Attorney Fees Motion, Robbins Geller seeks 25 percent of the settlement fund of over $38 million, about $9.5 million. Att'y Fees Mot. at 6. Robbins Geller has spent 5,706.25 hours on this litigation for a total lodestar amount of $2,529,340.[4] Light Decl. ¶ 1.[5] Thus, the requested attorney fees are about 3.7 times greater than the lodestar. Additionally, Robbins Geller incurred $272,008.73 in expenses in connection with this litigation, the majority of which are associated with experts, consultants, and investigators.

The Court held a hearing on the fairness of the proposed settlement on February 24, 2012. No objectors appeared at the hearing.

///
///

---

[4] The lodestar is "the number of hours reasonably expended multiplied by the reasonable hourly rate." Grolsche Bierbrouwerij Nederland, B.V. v. Dovebid, Inc., C 11-00763 SC, 2011 U.S. Dist. LEXIS 124104, at *10 (N.D. Cal. Oct. 25, 2011). Under the lodestar approach, "[t]he court may . . . enhance the lodestar with a 'multiplier', if necessary, to arrive at a reasonable fee in light of all the circumstances of the case." Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995).

[5] Jeffrey D. Light ("Light"), an attorney at Robbins Geller, filed a declaration in support of the Motion for Attorney Fees and Expenses. ECF No. 178 ("Light Decl.").

6

## III. DISCUSSION

### A. The Proposed Settlement and Plan of Allocation

Having reviewed all of the arguments submitted concerning the Settlement, the Court finds that it is fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e). The Court concludes that due and adequate notice was directed to class members, advising them of the plan of allocation and of their right to object, and a full and fair opportunity was accorded to all class members to be heard with respect to the plan of allocation. The Court also finds that the formula for the calculation of the claims of authorized claimants, which is set forth in the notice sent to class members, provides a fair and reasonable basis upon which to allocate the proceeds of the settlement fund. See ECF No. 167-1.

Further, the Court finds that the only objection filed against the Settlement lacks merit. Lau argues that the start of the Class Period should be pushed back to a date earlier than April 23, 2008, but provides no factual or legal support for this argument. The crux of Lead Plaintiff's allegations is that Cadence's stock price was artificially inflated due to a number of misrepresentations, the first of which was made on April 23, 2008 -- the first day of the Class Period. See FAC ¶ 16. Lau has not identified a single misstatement or misrepresentation that occurred prior to this date. Accordingly, the Court sees no reason to alter the Class Period proposed by Lead Plaintiff.

For these reasons, the Court hereby approves the Settlement and the proposed plan of allocation.

### B. Attorney Fees and Expenses

In class actions, "a litigant or a lawyer who recovers a

common fund for the benefit of [the class] is entitled to a reasonable attorney's fee from the fund as a whole." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). A district court has the discretion to award attorney fees in common fund cases under either the percentage or the lodestar method. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). In selecting a method, the district court must consider the totality of the circumstances. Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989). Courts usually apply the percentage method but then use the lodestar method to cross-check the reasonableness of the percentage to be awarded. See, e.g., Vizcaino, 290 F.3d at 1047, 1050. Regardless of the method selected, when attorney fees are to be paid from a common settlement fund, "the relationship between plaintiffs and their attorneys turns adversarial" and "the district court must assume the role of fiduciary for the class plaintiffs." In re Wash. Pub. Power Supply Sys. Sec. Litig. ("WPPSS"), 19 F.3d 1291, 1302 (9th Cir. 1994).

The benchmark for fee awards in class actions is generally 25 percent of the common fund. See Paul, Johnson, 886 F.2d at 272. "That percentage amount can then be adjusted upward or downward to account for any unusual circumstances involved in th[e] case." Id. The size of the common fund is one relevant circumstance to which courts may refer. See WPPSS, 19 F.3d at 1297. Where the common fund is exceptionally large, the 25 percent benchmark "is of little assistance" since "picking a percentage without reference to all of the circumstances of the case, including the size of the fund, would be like picking a number out of the air." Id. The Ninth Circuit has also approved a number of other factors which may be

8

relevant to an attorney fees determination: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." In re Omnivision Techs., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (citing Vizcaino, 290 F.3d at 1048-50).

Here, Robbins Geller is requesting 25 percent of the $38 million settlement, plus expenses and interest. The Court finds that, in light of the size of the settlement fund and a number of other factors, the 25 percent fee request is unreasonable in the context of the instant action. The Court recognizes the uncertainty of success in securities class actions, especially since the enactment of the Private Securities Litigation Reform Act. The Court also recognizes that a $38 million settlement is no small achievement for Lead Plaintiff. However, awarding Robbins Geller over $9.5 million for surviving a motion to dismiss, conducting some discovery, and participating in settlement negotiations would be inappropriate and unfair to the class members who will share in the proceeds of the settlement fund.[6]

Further, Robbins Geller's lodestar in this action is only about $2.5 million. Light Decl. ¶ 4. Thus, the firm is requesting a lodestar multiplier of approximately 3.8. Such a multiplier is not necessarily outside the norm. See Vizcaino, 290 F.3d at 1051

---

[6] Robbins Geller has pointed to 125 cases in which the award of attorney fees equals or exceeds 25 percent of the fund. Att'y Fees Mot. Appx. A. While the sheer number of cases cited is impressive, the Court notes that the vast majority of these cases involved settlement funds far smaller than the one involved here. For example, at least 70 of the cases cited by Robbins Geller involved settlement funds of $10 million or less. See id. Further, the complexity and risk associated with these other cases is unclear.

9

n.6 ("most" common fund cases apply a multiplier of 1.0-4.0). However, a court may adjust the multiplier using factors similar to those discussed above. See Muniz v. UPS, No. C 09-01987 CW, 2011 U.S. Dist. LEXIS 94364, at *35 (N.D. Cal. Aug. 23, 2011).

Rather than awarding Robbins Geller 25 percent of the total settlement fund, the Court awards the firm 25 percent of the first $10 million in the settlement fund, 20 percent of the second ten million, and 15 percent of the remainder, plus the firm's requested interest and expenses. Under this approach, Robbins Geller will receive $7.2 million in attorney fees, plus interest and expenses -- more than 2.88 times its lodestar amount. This approach provides plaintiffs' attorneys with an incentive to negotiate for larger settlement funds, while still limiting attorney's fees awards in cases where those settlement funds are exceptionally large. The approach is also consistent with attorney fee awards in other areas of the law, such as estate planning and administration.[7]

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds. The Court also GRANTS in part and DENIES in part Robbins Geller's Motion for Attorney Fees and Expenses. The Court awards Robbins Geller 25 percent of the first $10 million in the $38 million settlement fund, 20 percent of the next $10 million, and 15 percent of the

---

[7] For example, under the California Probate Code, attorneys receive compensation based on the value of the estate -- 4 percent for first $100,000, 3 percent for the next $100,000, and 2 percent for the next $800,000, etc. Cal. Prob. Code § 10810(a).

remainder.  The Court also awards Robbins Geller interest as well as $272,008.73 in expenses.

    IT IS SO ORDERED.

Dated: April 23, 2012 
UNITED STATES DISTRICT JUDGE